EXHIBIT

B

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



### NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

Exhibit B - 2



# Advisory notice to policyholders regarding the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons." This list can be located on the United States Treasury's web site – http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

U-GU-1041-A (March 2011)
Page 1 of 1

# Integrated Insurance Policy Declarations

**Steadfast Insurance Company**
**Dover, Delaware**



Administrative Offices:
1400 American Lane, Schaumburg, Illinois 60196-1056

Policy Number

| IPR 3757608-04 |
| --- |

**Item 1: First Named Insured**

| The Home Depot, Inc. |
| --- |

Address

| 2455 Paces Ferry Road, NW |
| --- |

| City | State | ZIP code |
| --- | --- | --- |
| Atlanta | GA | 30339 |

**Item 2:** Limits of Liability

| Each **Loss** | Each **Annual Period** | Entire **Policy Period** |
| --- | --- | --- |
| $50,000,000 | $100,000,000 | $150,000,000 |

**Item 3: Policy Period**

| From 12:01 a.m. local time on | to 12:01 a.m. local time on |
| --- | --- |
| February 1, 2013 | March 1, 2016 |

**Item 4: Policy Period** Premium

| **Policy Period** Premium | **Annual Period** Premium | Minimum Earned Premium for each **Annual Period** |
| --- | --- | --- |
| $10,477,821 | $3,492,607 | $3,492,607 |

If the **Policy Period** is for a period greater than 12 months, then the **Annual Period** premium is subject to adjustment in accordance with the attached Premium Adjustment Endorsement.

NOTICE(S):
**In Witness Clause**

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

*Nancy D. Mueller*

President

*[signature]*

Corporate Secretary

Authorized Representative

| *Todd [signature]* | Date |
| --- | --- |
| | 8-20-13 |

STF-IRP-D-100-B (2/09) Page 1 of 1

# INTEGRATED INSURANCE POLICY

SCHEDULES

These Schedules are to be attached to and form a part of Policy Number: IPR 3757608-04
**First Named Insured**: The Home Depot, Inc.

A. Primary Insurance Coverages Provided

| Insurance Coverage Provided | Retained Amount | Sublimit of Liability (if applicable) | | | Coverage Trigger |
|---|---|---|---|---|---|
| | | Per **Loss** | Per **Annual Period** | Per **Policy Period** | |
| Property (Layer 1) See Note 1. Below | $5,000,000 | $20,000,000 | $20,000,000 | $20,000,000 | Occurrence |

B. Excess Insurance Coverages Provided

| Insurance Coverage Provided | **Underlying Insurance Program** Limit of Liability | Sublimit of Liability (if applicable) | | | Coverage Trigger |
|---|---|---|---|---|---|
| | | Per **Loss** | Per **Annual Period** | Per **Policy Period** | |
| Property (Layer 2) *See Note 1. Below | $25,000,000 | 10% or $15,000,000 part of $150,000,000 | N/A | N/A | Occurrence |
| Property (Layer 3) *See Note 1. Below | $150,000,000 | 10% or $10,000,000 part of $100,000,000 | N/A | N/A | Occurrence |
| Employment Practices Liability *See Note 2. Below | $50,000,000 | $25,000,000 | $25,000,000 | $75,000,000 | Claims Made |
| Fiduciary Liability *See Note 3. Below | $40,000,000 | $5,000,000 | $5,000,000 | $15,000,000 | Claims Made |
| Excess Liability *See Note 4. Below | $25,000,000 | $25,000,000 | $25,000,000 | $75,000,000 | Occurrence |
| Texas Employers Excess Indemnity *See Note 5. Below | $30,000,000 Each Accident/Each Employee for Disease | $25,000,000 Each Accident/Each Employee for Disease | $25,000,000 Each Accident/Each Employee for Disease | $75,000,000 Each Accident/Each Employee for Disease | Occurrence |

Note 1. Property Layer 1 is effective March 1, 2013 and expires under this policy March 1, 2014. Property Layers 2 and 3 are for an annual term (March 1, 2013 – March 1, 2014) and to be renegotiated annually.

Note 2. Employment Practices Liability is effective February 1, 2013 and expires under this policy February 1, 2016

Note 3. Fiduciary Liability is effective February 1, 2013 and expires under this policy February 1, 2016

Note 4. Excess Liability, Automobile Liability limits are not aggregated. Coverage is effective March 1, 2013 and expires under this policy March 1, 2016. As respects General Liability including Products & Completed Operations for US, PR, USVI & Guam, the underlying limit of liability is $25,000,000 per occurrence/NIL aggregate.

Note 5. Texas Employers Excess Indemnity is effective March 1, 2013 and expires under this policy March 1, 2016

C. Endorsements to this Policy (Effective at Inception):

| Endorsement # | Title | Coverage Form Applicable to |
|---|---|---|
| 1 | Non Certified Terrorism Exclusion Endorsement | General Terms and Conditions Form |
| 2 | Named Insured Indemnification Endorsement | General Terms and Conditions Form |
| 3 | Nuclear Exclusion Endorsement | General Terms and Conditions Form |
| 4 | Premium Adjustment Endorsement | General Terms and Conditions Form |
| 5 | Exclusion of Loss Resulting from Certified Acts of Terrorism with Exceptions and Sublimits Endorsement | Property Manuscript Form |
| 6 | Standard Mortgage Clause Emdprse,emt | Property Manuscript Form |
| 7 | Insured's Obligation as Insurer Endorsement | Property Manuscript Form |
| 8 | Cancellation Clause Amended Endorsement | Property Manuscript Form |
| 9 | Miscellaneous Unnamed Locations Endorsement | Property Manuscript Form |
| 10 | Mold Fungus Exclusion Endorsement | Property Manuscript Form |
| 11 | Information Hazards Technology Exclusion Endorsement | Property Manuscript Form |
| 12 | Absolute Terrorism Exclusion Endorsement | Property Manuscript Form |
| 13 | International Property Endorsement | Property Manuscript Form |
| 14 | Tidal Wave Endorsement | Property Manuscript Form |
| 15 | Products Liability "Batch" wording Endorsement | Excess Liability Coverage Form |
| 16 | Fungus Exclusion Endorsement | Excess Liability Coverage Form |
| 17 | Incidental Medical Malpractice Endorsement | Excess Liability Coverage Form |
| 18 | Industrial Aid Aircraft Endorsement | Excess Liability Coverage Form |
| 19 | No Drop Down Endorsement | Excess Liability Coverage Form |
| 20 | Watercraft Liability Exclusion Endorsement | Excess Liability Coverage Form |
| 21 | Aircraft Products and Grounding Exclusion Endorsement | Excess Liability Coverage Form |
| 22 | Blended Pollution Endorsement | Excess Liability Coverage Form |
| 23 | Retained Amount Endorsement | Excess Liability Coverage Form |
| 24 | Fiduciary Annual Review Endorsement | Fiduciary Liability Coverage Form |

D. Extended Reporting Period (Applicable to Claims Made Policies Only)

Additional Premium: Per the applicable controlling policy

Coverage Period: One Year

_____
Authorized Representative

_____8-20-13_____
Date

# INTEGRATED INSURANCE POLICY

## GENERAL TERMS AND CONDITIONS

This policy is comprised of this General Terms and Conditions, the **Declarations**, the **Schedules** and a Coverage Form for each coverage provided. No coverage is provided unless such coverage is included in a Coverage Form. The terms and conditions in each Coverage Form apply only to that Coverage Form and shall not be construed to apply to any other Coverage Form of this policy. Words that appear in bold face have special meaning.

In consideration of payment of the premium and subject to the **Declarations** and the limitations, conditions, provisions, and other terms of this policy (including any endorsements hereto), the Underwriter, the **First Named Insured** and the **Insureds** agree as follows:

## I. GENERAL INSURING AGREEMENT

The Underwriter shall provide the **Insureds** with coverage during the **Policy Period** for **Loss** in accordance with this General Terms and Conditions and the terms and conditions contained in each Coverage Form.

## II. DEFINITIONS

When used in this policy:

A. **Annual Period** means the period of 12 consecutive months following the Inception Date of this policy, or any future consecutive 12 month period from an annual anniversary of such Inception Date until the Expiration Date or, if this policy is canceled, the consecutive period which is less than 12 months and which corresponds to the time between the Inception Date or last annual anniversary thereof, and the cancellation date of this policy.

B. **Claim**, as respects certain coverages provided by this policy, means those matters as defined in the Coverage Form for such coverage.

C. **Controlling Policy** means, for each **Excess Coverage** provided, the policy designated as such in the Schedule of Underlying Insurance in the Coverage Form for such coverage.

D. **Declarations** means the Integrated Insurance Policy Declarations.

E. **Defense Costs,** as respects certain coverages provided by this policy, means those costs, charges, fees and expenses as defined in the Coverage Form for such coverage.

F. **Event** means, as respects each coverage provided by this policy, **Event** as defined in the Coverage Form for such coverage.

G. **Excess Coverage** means those coverages included in Item B of the **Schedules**.

H. **First Named Insured** means the organization designated in Item 1 of the **Declarations**.

I. **Insured**, either in the singular or plural, as respects each coverage provided, means those persons or organizations designated as insureds as set forth in the Coverage Form for such coverage.

J. **Insured Entity** means: (i.) the **First Named Insured**; and/or (ii.) the **Insured(s)**.

K. **Interrelated Event** means all **Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

L. **Loss** means the total amount of monetary damages and expenses incurred by the **Insured**, and/or direct physical loss or damage to property insured hereunder, arising from an **Event** for which coverage applies. **Loss** does not include fines or penalties imposed by law or the multiple portion of any multiplied damage award, or matters uninsurable under the law pursuant to which this policy is construed.

M. **Policy Period** means the period of time specified in Item 3 of the **Declarations**, subject to prior termination in accordance with Subsection IV.K. of this policy.

N. **Primary Coverage** means those coverages included in Item A of the **Schedules**.

O. **Retroactive Date** means, for each coverage provided, the date designated in the Declarations page of each Coverage Form.

P. **Schedules** means the Integrated Insurance Policy Schedules.

Q. **Subsidiary**, either in the singular or plural, means any organization in which more than 50% of the outstanding voting securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more **Insured Entities**.

R. **Underlying Insurance Program** means, as respects each coverage provided, collectively, all policy(ies) or self-insured retentions listed in the Schedule of Underlying Insurance in the Coverage Form for such coverage.

## III. EXCLUSIONS

The Underwriter shall not be liable for **Loss:**

(a) on account of any **Event** that is based upon, arising from, or attributable to:

1. any fact, circumstance or situation which has been the subject of any written notice given under any policy of which this policy or any Coverage Form included herein is a direct or indirect renewal or replacement; or

2. any fact, circumstance or situation whenever occurring, which together with a fact, circumstance or situation that has been the subject of such written notice given as noted above would constitute an **Interrelated Event**; or

(b) that is excluded in accordance with the attached Nuclear Exclusion; or

(c) that is based upon, arising from, or attributable to any violation or alleged violation of the Racketeer Influenced and Corrupt Organizations Act (U.S.Code Title 18, Sections 1961 - 1968) or of any regulation issued pursuant to the foregoing; or

(d) that is based upon, arising out of, or attributable to any **Event** which took place prior to the **Retroactive Date** applicable to each coverage.

## IV. GENERAL CONDITIONS AND LIMITATIONS

### A. MAINTENANCE OF UNDERLYING INSURANCE

The Limit(s) of Liability of any **Underlying Insurance Program** shall be maintained by the **Insureds** during the **Policy Period** in full effect with solvent insurers except for any reduction or exhaustion of the aggregate Limit(s) of Liability available under the **Underlying Insurance Program** solely by reason of actual payment of loss(es) thereunder. If any part of an **Underlying Insurance Program** is provided for a period less than the **Policy Period**, then the Limits of Liability of such underlying insurance shall be renewed and reinstated through the end of the **Policy Period**. Failure to comply with the foregoing shall not invalidate this policy but the Underwriter shall not be liable to a greater extent than if these conditions had been complied with. To the extent that any **Underlying Insurance Program** is not so maintained, renewed and reinstated, then the **Insureds** shall be deemed to be self-insured for the amount of the Limit(s) of Liability of any such **Underlying Insurance Program** not renewed, reinstated and maintained.

In the event of a change to any **Underlying Insurance Program** by rewrite, endorsement, renewal or reinstatement with different terms and conditions, or otherwise during the **Policy Period**, this policy shall become subject to such change concurrently with the effective date of such change to such **Underlying Insurance Program,** if such change restricts coverage. However, if such change acts to broaden or liberalize coverage in any way (as determined by the Underwriter in its sole judgment), coverage under this policy shall become subject to such change only if and to the extent the Underwriter's consent to such change is endorsed in writing to this policy. If such consent is not endorsed in writing on to this policy, the Underwriter shall not be liable to a greater extent than it would have been in the absence of such change to the **Underlying Insurance Program**.

### B. RETAINED AMOUNT AND COINSURANCE

As respects each **Primary Coverage**, the Underwriter's liability for **Loss** on account of each **Claim** or occurrence shall apply only to that part of such **Loss** which is in excess of the applicable Retained Amount for such **Primary Coverage** (which Retained Amount is set forth in Item A of the **Schedules**), and such Retained Amount shall be borne by the **Insureds** uninsured and at their own risk.

With respect to the Underwriter's liability for **Loss** (excess of the applicable Retained Amount) on account of all **Claims** first made in any one **Policy Period**, the **Insureds** shall bear uninsured at their own risk that Percentage of all such **Loss** specified as the Coinsurance Percentage in the Declarations of the applicable Coverage Form (if applicable).

### C. REDUCTION/EXHAUSTION OF UNDERLYING LIMITS

As respects each **Excess Coverage**, in the event and only in the event of the reduction or exhaustion of the Limit(s) of Liability of an **Underlying Insurance Program** solely as the result of actual payment of loss covered thereunder and also covered under this policy, this policy shall:

1. in the event of reduction, pay excess of the reduced Limit(s) of Liability of the **Underlying Insurance Program**, and
2. in the event of exhaustion, continue in force as primary insurance excess of the Self Insured Retention and/or Deductible for the **Controlling Policy** shown in the Schedule of Underlying Insurance in the Coverage Form for such coverage, which retentions shall be applied to any subsequent loss as specified in the **Controlling Policy**.

Coverage under this policy for each **Excess Coverage** shall apply in conformance with and subject to the definitions, insuring clause(s), exclusions and conditions of the **Controlling Policy** applicable to the coverage provided by such **Excess Coverage** as in effect on the inception date of such **Excess Coverage**, unless such **Controlling Policy** is changed during the **Policy Period** and this policy becomes subject to such change as determined by the second paragraph of Subsection IV.A. of this policy;

If the definitions, insuring clause(s), exclusions and conditions of any **Controlling Policy** (whether changed during the **Policy Period** or not) are inconsistent with this policy, the definitions, insuring clause(s), exclusions or conditions used in this policy shall govern.

Notwithstanding any of the terms of this policy which might be construed otherwise, coverage under this policy for each **Excess Coverage** shall drop down only in the event of reduction or exhaustion of the Limit(s) of Liability of the **Underlying Insurance Program** by the actual payment of loss and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any **Underlying Insurance Program**. Further, this policy shall not provide coverage for any coverage that is provided with a sublimit in the **Controlling Policy** for any **Underlying Insurance Program**. The risk of uncollectibility of such **Underlying Insurance Program** (in whole or in part) whether because of financial impairment or insolvency of the underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the Underwriter.

In no event shall coverage under this policy for any **Excess Coverage** be broader than coverage under any **Underlying Insurance Program** applicable to the coverage provided by such **Excess Coverage** unless such broader coverage is specifically included in this policy.

D. LIMIT OF LIABILITY

For the purposes of this policy, all **Loss** arising out of the same **Event** and all **Interrelated Events** shall be deemed one **Loss** (whether or not such **Event** gives rise to **Loss** which is covered under more than one coverage provided by this policy) and such **Loss** shall be deemed to have originated in the earliest **Annual Period** in which such **Event** occurs.

The Underwriter's maximum liability for each **Loss,** whether covered under one or more coverages provided by this policy, shall be the Limit of Liability for each **Loss** set forth in Item 2 of the **Declarations**. The Underwriter's maximum liability for all **Loss** occurring during any **Annual Period** shall be the Limit of Liability for each **Annual Period** set forth in Item 2 of the **Declarations**. The Underwriter's maximum aggregate liability under this policy for all **Loss** occurring during the **Policy Period** shall be the Limit of Liability for the **Policy Period** set forth in Item 2 of the **Declarations**.

If any Coverage Provided as specified in Item A or B of the **Schedules** is listed with a Sublimit of Liability, then (i) the Underwriter's maximum liability for each **Loss** with respect to such Coverage Provided shall be the applicable Sublimit of Liability per **Loss** set forth in Item A or B of the **Schedules**, (ii) the Underwriter's maximum liability for all **Loss** occurring during any **Annual Period** with respect to such Coverage Provided shall be the applicable Sublimit of Liability per **Annual Period** set forth in Item A or B of the **Schedules**, and (iii) the Underwriter's maximum liability for all **Loss** occurring during the **Policy Period** with respect to such Coverage Provided shall be the applicable Sublimit of Liability per **Policy Period** set forth in Item A or B of the **Schedules**. Provided however, such sublimit of liability is included in, and not in addition to, the Limits of Liability as otherwise set forth in Item 2 of the **Declarations**.

**Defense Costs** are part of and not in addition to the Limits of Liability set forth in Item 2 of the **Declarations**, and the payment by the Underwriter of **Defense Costs** reduces such Limits of Liability.

E. TERRITORY AND VALUATION

Except as otherwise amended by an **Underlying Insurance Program**, Coverage Form or endorsement attached to this policy, all premiums, limits, deductibles, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

Except as otherwise amended by an **Underlying Insurance Program**, Coverage Form or endorsement attached to this policy, coverage under this policy shall extend anywhere in the world. However, notwithstanding anything expressed to the contrary in this policy or in an **Underlying Insurance Program**, this policy shall not provide any coverage in any jurisdiction, for any person or other entity, or for any goods or property or other interests, for which said coverage is prohibited by applicable laws, regulations, embargoes, or directives or otherwise prohibited by trade restrictions imposed on the Underwriter or on any of its parent(s), subsidiaries or affiliates.

## F. DEFENSE AND SETTLEMENT

Subject to this Subsection IV.F., it shall be the duty of the **Insureds** and not the duty of the Underwriter to defend **Claims** against the **Insureds**.

The **Insureds** agree not to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Underwriter's written consent. The Underwriter shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented in writing.

The Underwriter shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that appears reasonably likely to be covered in whole or in part by this policy.

The **Insureds** agree to provide the Underwriter with all information, assistance and cooperation which the Underwriter reasonably requests and agree that in the event of a **Claim** the **Insureds** will do nothing that shall prejudice the Underwriter's position or its potential or actual rights of recovery.

The Underwriter may make any investigation it deems necessary and may make any settlement of a **Claim** it deems expedient.

The Underwriter shall not unreasonably withhold any consent referenced in this Subsection IV.F.

## G. REPORTING AND NOTICE

The **Insureds** shall give to the Underwriter written notice of any **Event** as soon as practicable. If such written notice of an **Event** concerns any coverage provided with a Claims Made coverage trigger (as indicated in the **Schedules),** then written notice of such **Event** must be given to the Underwriter no later than ninety (90) days after expiration of the **Policy Period** or, if exercised, the Extended Reporting Period.

As respects each coverage provided with a Claims Made coverage trigger, if during the **Policy Period** or Extended Reporting Period (if exercised) the **Insureds** become aware of circumstances which could give rise to a **Claim** against the **Insureds** and if the **Insureds** give written notice of such circumstances to the Underwriter during the **Policy Period** or Extended Reporting Period (if exercised), then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period** or the Extended Reporting Period in which the circumstances were first reported to the Underwriter.

The **Insureds** shall:

(1) include within any notice of an **Event** a description of the **Event**, the nature of the alleged or potential damage, the names of actual or potential claimants (if applicable), and the manner in which the **Insureds** first became aware of the **Event**, and

(2) specify under which of the coverages provided the notice of **Event** is being submitted for coverage; and

(3) give to the Underwriter such information and cooperation as it may reasonably require.

All notices under any provision of this policy shall be in writing and given by prepaid express courier, U.S. mail, certified mail or fax properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **First Named Insured** at the address as shown in Item 1 of the **Declarations**. Notice to the Underwriter of any **Event** shall be given to Steadfast Insurance Company, 1 Liberty Plaza, 32nd Floor, New York, New York 10006, Fax (212) 225-7226, Attention: Zurich Global Corporate Strategic Risk Solutions Group Claims. All other notices to the Underwriter under this policy shall be given to the same addressee but to the attention of Zurich Global Corporate Strategic Risk Solutions Group Underwriting. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is sent, whichever is earlier.

## H. CHANGES IN EXPOSURE

1. Acquisition or Creation of Another Organization

   If before or during the **Policy Period** any **Insured**:

   (a) acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**, or

   (b) acquires any organization by merger into or consolidation with the acquiring **Insured**,

then, as respects each Insurance Coverage Provided which is **Primary Coverage**, such organization shall be covered under this policy according to the terms set forth in the Coverage Form attached to this policy for such Coverage Provided. As respects each Insurance Coverage Provided which is **Excess Coverage**, such organization shall be covered under this policy according to the terms set forth in the **Controlling Policy** for such Coverage Provided.

Provided, however, if the fair value of all cash, securities, assumed indebtedness and other consideration paid by the said acquiring **Insured** for any such acquisition during the **Policy Period** exceeds 10% of the total assets of the said **First Named Insured** as reflected in the said **First Named Insured's** most recent audited consolidated financial statements, or if any **Insured's** total annual revenues as reflected in the said **First Named Insured's** most recent audited financial statements increase by $1,000,000,000 or more through one or several acquisitions during the **Policy Period**, the **First Named Insured** shall give written notice of such acquisition to the Underwriter as soon as practicable together with such information as the Underwriter may require and shall pay any additional premium required by the Underwriter.

2.  Acquisition of First Named Insured

    If during the **Policy Period**:

    (a) the **First Named Insured** merges into or consolidates with another organization, or
    (b) another organization, or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **First Named Insured**,

    the **First Named Insured** shall give written notice of such merger, consolidation or acquisition to the Underwriter as soon as practicable together with such information the Underwriter may require and the Underwriter may charge additional premium and require new terms and conditions under this policy, to reflect such change(s) in the nature of operations which may be insured hereunder.

3.  Change in the nature of operations of any **Insured Entity**, or in expected severity of **Loss(es)**

    If during the **Policy Period,** the nature of the operations of any **Insured Entity** is changed (through any means) to include any activities outside of the scope of activities of that same **Insured Entity** as of the inception date of the **Policy Period**, then the **First Named Insured** shall give written notice of such change(s) to the Underwriter as soon as practicable together with such information the Underwriter may require and the Underwriter may charge additional premium and require new terms and conditions under this policy, to reflect such change(s) in the nature of operations which may be insured hereunder.

4.  Premium Adjustment

    The **Annual Period** premium designated in Item 4 of the **Declarations** is the initial premium for the first **Annual Period**. If the **Policy Period** is longer than 12 months, the premiums for the subsequent **Annual Periods** will be adjusted in accordance with the attached Premium Adjustment Endorsement. If the **Policy Period** is 12 months or less, the premium for this policy will not be subject to an annual adjustment, except that such premium will otherwise remain subject to adjustment pursuant to Subsection IV.H.3. of this policy.

I.  EXTENDED REPORTING PERIOD

If the Underwriter cancels or refuses to renew this policy for reasons other than the **Insureds'** non-payment of premium or non-compliance with the terms and conditions of this policy, then as respects each coverage provided by this policy which is provided on a Claims Made basis (as set forth in the **Schedules**), the **First Named Insured** shall have the right, upon payment of the additional premium set forth in Item D of the **Schedules**, to an extension of such coverage provided for the period set forth in Item D of the **Schedules** following the effective date of such termination or nonrenewal, but only with respect to any **Event** taking place prior to the effective date of such termination or nonrenewal.

Provided, however, the Extended Reporting Period (for any coverage which is part of the **Excess Coverage**) will only apply hereunder to that coverage if:

(1) an extended reporting period (or similar provision) is provided by each policy providing that coverage as part of the **Underlying Insurance Program**; and
(2) such extended reporting period (or similar provision) is elected and purchased by the **First Named Insured**; and
(3) such coverage is provided on a Claims Made basis by each policy referenced in (1) hereinabove.

The Extended Reporting Period hereunder for any coverage which is part of the **Excess Coverage** will not be for a period longer than the period provided by the **Controlling Policy** applicable to such coverage.

This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **First Named Insured** to the Underwriter within thirty (30) days following the effective date of termination or nonrenewal. Any **Loss** during the Extended Reporting Period shall be deemed to have

occurred during the immediately preceding **Annual Period**. The Extended Reporting Period shall not operate to increase or extend the limits of liability as set forth in Item 2 of the **Declarations**.

The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. No Extended Reporting Period is available for any coverage provided under this policy that is not provided on a Claims Made basis.

J. ALTERATION

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the Underwriter. If the **First Named Insured** does not provide the Underwriter with complete copies of the **Underlying Insurance Program** until after execution of this policy, then the Underwriter reserves the right to amend the terms and conditions of this policy based upon its review of the **Underlying Insurance Program**.

K. POLICY OR COVERAGE FORM TERMINATION

This policy or any Coverage Form shall terminate at the earliest of the following times:

1. the effective date of termination specified in written prior notice by the **First Named Insured** to the Underwriter,
2. upon expiration of the **Policy Period** as set forth in Item 3 of the **Declarations**,
3. ten (10) days after receipt by the **First Named Insured** of a written notice of termination from the Underwriter for failure to pay a premium when due, or
4. at such time as may be agreed upon in writing by the Underwriter and the **First Named Insured**.

The Underwriter shall refund the unearned premium computed at customary short rates if the policy is terminated by the **First Named Insured**, subject to the minimum earned premium as explained below. Under any other circumstances the refund shall be computed pro rata.

The premium shown in the third space of Item 4 of the **Declarations** is the minimum premium for each **Annual Period** and is fully earned upon the first day of an **Annual Period**.

Notwithstanding anything expressed in this policy to the contrary, if the **First Named Insured** is acquired as described in Subsection IV.H.2., then the Minimum Earned Premium shall not apply. In such case, the premium due will be calculated on a pro-rata basis from the most recent annual anniversary date of this policy to the time this policy is cancelled by the **Insured**.

L. INSPECTIONS AND SURVEYS

The Underwriter has the right, but is not obligated, to inspect any **Insured's** premises and operations at any time. Such inspections:

1. do not warrant that the premises are safe or healthful, or that they comply with laws, regulations, codes or standards;
2. relate only to the insurability of the premises and operations and the premium to be charged; the Underwriter may give an **Insured** reports and recommend changes based on the conditions found; and
3. do not undertake to fulfill the duty of any person or organization to provide for the health or safety of workers or the public.

M. AUDITS OF BOOKS AND RECORDS

The Underwriter may examine and audit any **Insured's** books or records anytime during the **Policy Period**, or extensions thereof, within 3 years after the final termination of this policy, and during any extended reporting period if exercised by the **Insured**, as far as they relate to the subject matter of this insurance.

N. APPEALS

The Underwriter can appeal any judgment brought against any **Insured** if:

1. the judgment is in excess of the Retained Amount as set forth in Item A of the **Schedules**, or is in excess of the limit of the **Underlying Insurance Program** as set forth in Item B of the **Schedules**; and
2. neither the **Insured** nor any insurer providing coverage within the Retained Amount and/or the **Underlying Insurance Program** elects to appeal.

If the Underwriter appeals, the Underwriter will pay the costs of the appeal plus any incidental interest, but in no event will the Underwriter pay out more than is provided by the applicable Limits of Liability plus costs and interest of the appeal.

O. OTHER INSURANCE

If other valid and collectible insurance with any other insurer is available to the **Insured** covering a **Loss** or **Claim** also covered by this policy, other than insurance that is specifically stated to be excess of the insurance afforded by this policy, the insurance afforded by this policy shall be excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions, and limitations of the other insurance.

### P. OUR RIGHT TO RECOVER PAYMENT

If the Underwriter makes payment under this insurance, the **Insured** will assist the Underwriter and any other insurer providing insurance to the **Insured** in recovering what the Underwriter paid using the **Insured's** rights of recovery. Reimbursement will be made in the following order:

1. first, to any interest (including the **Insured**) who has paid any amount in excess of the limits of this policy;
2. next, to the Underwriter; and
3. then to any interest (including the **Insured**) as are entitled to claim the remainder, if any.

A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests, according to the ratio of their respective recoveries.

### Q. ACTION AGAINST THE UNDERWRITER AND BANKRUPTCY

No person, organization or entity has a right under this policy to join the Underwriter as a party or otherwise bring the Underwriter into a suit asking for damages from any **Insured**, or to bring suit under this policy, unless all of the policy terms and conditions have been fully complied with. Bankruptcy or insolvency of any **Insured** will not relieve the Underwriter of its obligations nor deprive the Underwriter of its rights or defenses under this policy.

### R. CONFORMITY TO STATUTES AND REGULATIONS

If any of the terms or conditions of this policy do not comply with any applicable statutes or regulations, this policy will be interpreted in such a way as to comply to the extent required by law.

### S. SERVICE OF SUIT

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

### T. TITLES AND HEADINGS

The titles and any headings in this policy and its endorsements are solely for convenience and form no part of the terms and conditions of coverage.

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

**PARTICIPATION PAGE**

**Named Insured: THE HOME DEPOT, INC.**

AND ITS AFFILIATED, SUBSIDIARY, AND ASSOCIATED
COMPANIES AND/OR CORPORATIONS AND THE INSURED'S INTEREST IN PARTNERSHIPS AND JOINT
VENTURES
AS NOW EXIST OR MAY HEREAFTER BE CONSTITUTED OR ACQUIRED AND
ANY PARTY IN INTEREST WHICH THE
INSURED IS RESPONSIBLE TO INSURE

HEREINAFTER REFERRED TO AS "THE INSURED"

**Term of Insurance**:

March 1, 2013 to March 1, 2014, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy(ies) replaced or renewed by this policy.

In consideration of the premium charged, the subscribers hereto, hereinafter referred to as the insurers, do severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy.

Provided that:

1. The collective liability of Insurers shall not exceed the Limit of Liability or any appropriate Sublimit of Liability or any Annual Aggregate limit.

2. The liability of each of the Insurers shall not exceed the Limit to the pro-rata percentage of liability sat against its name.

Policy Limit: Subject to all the terms and conditions of the attached Policy and the Endorsements

| Insurer | Policy Number | Participation (excess of deductibles per attached policy) | Authorized Signature |
|---|---|---|---|
| ACE American Insurance Company | GPAD37837994 003 | 8% of Primary $50,000,000 | |
| ACE Bermuda Insurance Limited | HOMD00225P10 | 20% of $250,000,000 excess of $250,000,000 | |
| Allied World Assurance Company, Ltd. | P013346/004 | 7.5% of Primary $100,000,000 | |
| Alterra Bermuda Ltd. | 93890-5575-PRMAN-2013 | 5.5% of Primary $175,000,000 | |
| Arch Insurance (Bermuda) | PRP0020158-06 | 5% of $125,000,000 excess of $50,000,000 | |
| Aspen Specialty Insurance Company | PRA57RR13 PXA54PL13 | 3% of Primary $50,000,000 5% of $50,000,000 excess of $125,000,000 | |
| Axis Specialty Limited (Bermuda) | 2100170113UP | 10% of $250,000,000 excess of $250,000,000 | |
| Axis Specialty Limited Europe | DP947613 | 15% of $75,000,000 excess of $100,000,000 | |
| General Security Indemnity Company of Arizona (SCOR) | 2013 10F153561-1 | 5% of $50,000,000 excess of $125,000,000 | |

| Insurer | Policy Number | Participation (excess of deductibles per attached policy) | Authorized Signature |
|---|---|---|---|
| Landmark American Insurance Company | LHT380436 LHT380437 | 10% of $75,000,000 excess of $100,000,000 20% of $250,000,000 excess of $250,000,000 | |
| Lexington Insurance Company | 017728003 017728153 | 15% of Primary $100,000,000 20% of $250,000,000 excess of $250,000,000 | |
| Liberty Mutual Fire Insurance Company | MQ2-L9L-550905-053 | 10% of $75,000,000 excess of $175,000,000 | |
| Liberty Surplus Insurance Corporation | LIUESP10234099P | 6% of Primary $100,000,000 | |
| Lloyd's of London | DP947413(1) DP983613(1) | 2% of Primary $50,000,000 12.5% of Primary $100,000,000 5% of $125,000,000 excess of $50,000,000 9% of $75,000,000 excess of $100,000,000 | |
| HomeRisk Assurance Ltd. (Reinsured by Maiden Reinsurance Company) | S4CPR0265107S | 2% of Primary $100,000,000 5.5% of $50,000,000 excess of $125,000,000 9% of $250,000,000 excess of $250,000,000 | |
| HomeRisk Assurance Ltd. (Reinsured by R+V Versicherungs AG | 68646 | 5% of $75,000,000 excess of $175,000,000 | |
| Montpelier Reinsurance Limited | B13FZ66926-10 B13FZ66926-20 | 5% of Primary $100,000,000 8% of $250,000,000 excess of $250,000,000 | |
| QBE  Insurance Corporation | CFE3967770 | 10% of $75,000,000 excess of $175,000,000 | |
| Sompo Japan Insurance Company of America | PEP40110K0 | 45% of $75,000,000 excess of $175,000,000 8% of $250,000,000 excess of $250,000,000 | |
| **Steadfast Insurance Company** | **IPR 3757608-04** | **10% of Primary $250,000,000** | |
| Tokio Marine Europe Insurance Company, Ltd. | DP947513(5) | 1.5% of Primary $100,000,000 | |
| Tokio Marine & Nichido Fire Insurance Company | LCP 6480045-02 | 2% of Primary $50,000,000 5% of $250,000,000 excess of $250,000,000 | |
| Westport Insurance Corporation | 31-3-75635 | 20% of $150,000,000 excess of $100,000,000 | |
| XL Insurance (Bermuda) Ltd. | XL PRP 605418 13 | 5% of $125,000,000 excess of $50,000,000 | |

**Policy Language Applicable to the Individual Company(ies) Noted**

It is hereby understood and agreed that the following change is made to this policy:

In addition to each Company(ies)'s Declaration's Page (excluding any pre-printed terms and conditions), Price, Renewal Date, Premium Credits, Premium Payment Conditions, State Statue Amendatory Endorsements and Producer Compensation Notices / Disclosures, if applicable; the following Company(ies)'s endorsements, forms, exclusions, etc... are added and apply only towards the individual Company(ies) to which such is noted. No other Company(ies) may claim such wording as their own, whether more or less restrictive, in the event of loss to apply against all recovery.

The terms and conditions contained within this policy shall supersede those of any General Policy Conditions; General Property Conditions; terms and conditions within a Policy Jacket; Fire Policy Form; terms and conditions of the Declarations Page which conflict with the policy; and any other endorsements or conditions added by the Company(ies) upon policy's issuance or thereafter which are not noted in the above paragraph or listed below or have not been previously advised and agreed to by the Insured.

Engineering fees, loss prevention fees, object certificates fees, plan reviews and subsequent services / products, surplus lines taxes and fees, US FET Taxes and various state and local taxes and fees such as the Florida Fire College Trust Fund and Florida Emergency Mgmt, Preparedness & Assist. Fund Trust for the State of Florida and/or other state assessments should be viewed as unequal as charged on an individual Company basis separately from premium.

ACE American Insurance Company
- ☐ Form No. N/A – Asbestos, Asbestos Containing Products, or Asbestos Containing Material Exclusion
- ☐ Form No. N/A – Electronic Data/Media Exclusion Endorsement
- ☐ Form No. N/A – Terrorism Exclusion Endorsement
- ☐ Form No. N/A – Cap on Losses from Certified Acts of Terrorism
- ☐ Form No. N/A – Disclosure Pursuant to Terrorism Risk Insurance Act
- ☐ Form No. N/A – Biological, Chemical or Nuclear Exclusion
- ☐ Form No. N/A – State Mandatory Endorsements
- ☐ Form No. N/A – Capping of Limits Endorsement
- ☐ Form No. N/A – Trade or Economic Sanctions Endorsement
- ☐ Form No. N/A – Certificates of Insurance
- ☐ Form No. N/A – Non-Admitted Exclusion Endorsement
- ☐ Form No. N/A – Computer Data Recognition Exclusion
- ☐ ACE USA reserves the right of appointment of loss representative for its own interest at its own expense with full cooperation of the Insured
- ☐ Endorsement No. 3 – Cancellation Clause Amended Endorsement is deleted in its entirety

ACE Bermuda Insurance Limited
- ☐ Form No. N/A – Asbestos Material Endorsement
- ☐ Form No. N/A – Electronic Data and Media Endorsement
- ☐ Form No. N/A – Microorganism Exclusion (MAP)
- ☐ Form No. N/A – Terrorism Endorsement
- ☐ Form No. N/A – Biological, Chemical, Nuclear, Radiological Endorsement
- ☐ Form No. N/A – London Arbitration Clause
- ☐ Form No. N/A – Excess Clause

- ☐ ACE reserves the right of appointment for loss representative for Company's interest at its own expense with full cooperation of the Insured
- ☐ Clause 30. Appraisal deleted
- ☐ Clause 37. Suit Against the Company deleted
- ☐ Clause 44. Full Waiver is amended to read as follows: The terms and conditions of this form and endorsement attached thereto replace those of the policy to which it is attached, all terms, conditions and endorsement of the latter being waived. This waiver shall no apply to endorsements agreed to and accepted by the Insured at inception of this policy or subsequent thereto or the ACE Declaration page accepted prior to binding

Allied World Assurance Company, Ltd.
- ☐ Form No. NMA2914 – Electronic Data Endorsement
- ☐ Form No. N/A – Microorganism Exclusion (MAP) (Absolute)
- ☐ Form No. NMA2920 – Terrorism Exclusion
- ☐ Form No. N/A – Nuclear Exclusion
- ☐ Form No. NMA2962 – Chemical or Biological Exclusion
- ☐ Form No. N/A – Bermuda Arbitration and England & Wales Choice of Law Clause
- ☐ Form No. N/A – Premium Adjustment Clause
- ☐ Form No. N/A – Professional Fees Clause
- ☐ Form No. PPC1 4/86 – Premium Payment Warranty (Time on Risk) – 45 Days
- ☐ Form No. WEH711PDP000204 - WEH Asbestos Endorsement

Alterra Bermuda Ltd.
- ☐ Form No. N/A – WEH Asbestos Exclusion (1994)
- ☐ Form No. N/A – Cyber Risk Exclusion
- ☐ Form No. N/A – Mold Exclusion
- ☐ Form No. N/A – Microorganism Exclusion (MAP)
- ☐ Form No. NMA 2920 – Terrorism Exclusion
- ☐ Form No. NMA 2962 –Biological or Chemical Materials Exclusion
- ☐ Form No. NMA 1191 – Radioactive Contamination Exclusion Clause
- ☐ Form No. NMA 2914 – Electronic Data Endorsement A
- ☐ Form No. N/A – London Arbitration Clause
- ☐ Form No. N/A – Service of Suit

Arch Insurance (Bermuda)
- ☐ Form No. NMA2914 – Electronic Data Endorsement
- ☐ Form No. NMA2802 – Electronic Date Recognition Exclusion
- ☐ Form No. NMA2918 – War & Terrorism Exclusion
- ☐ Form No. NMA2962 – Biological or Chemical Materials Exclusion
- ☐ Form No. NMA1622 – Radioactive Contamination and Nuclear Exclusion Clause
- ☐ Form No. N/A – WEH Asbestos Endorsement
- ☐ Form No. N/A – Microorganism Exclusion (MAP) (Absolute)
- ☐ Form No. LMA5130 – Application of Sublimits Endorsement
- ☐ Notwithstanding any other provision, Arch retains the right, at its expense, to instruct adjusters or other experts to investigate and adjust any claim that potentially reaches their layer of insurance
- ☐ All clauses addressing suit, service, appraisal arbitration or law controlling interpretation of contracts (including but not limited to Clauses 30. Appraisal and 37. Suit Against the Company) are deleted and replaced with London Arbitration and NY Governing Law and Interpretation
- ☐ All clauses addressing waiver of insurer provisions, deemed policy authorship and paramount application (including but not limited to Clause 42. Full Waiver) are deleted.

Aspen Specialty Insurance Company
- ☐ Form No. NMA2915 01/01 – Electronic Data Endorsement
- ☐ Form No. ASPPR003 02/04 – Exclusion of War, Military Action & Terrorism
- ☐ Form No. NMA2962 06/03 – Biological or Chemical Materials Exclusion
- ☐ Form No. ASPCO002 01/10 – General Service of Suit
- ☐ Form No. IL0935 07/02 – Exclusion of Certain Computer Related Losses

Axis Specialty Limited (Bermuda)
- ☐ Form No. N/A – WEH Asbestos Clause
- ☐ Form No. NMA2915 – Electronic Data Endorsement B
- ☐ Form No. NMA2802 – Electronic Date Recognition Exclusion (EDRE)
- ☐ Form No. NMA464 – War and Civil War Exclusion
- ☐ Form No. NMA2920 – Absolute Terrorism Exclusion
- ☐ Form No. NMA2962 – Biological and Chemical Exclusion
- ☐ Form No. NMA1191 – Radioactive Contamination Exclusion Clause
- ☐ Form No. N/A - OFAC
- ☐ Form No. NMA2738 – Claims Control Clause
- ☐ Form No. N/A – London Arbitration Clause

Axis Specialty Limited Europe
- ☐ Form No. N/A – Law and Jurisdiction Clause
- ☐ Form No. LMA5130 – Application of Sublimits

Home Risk Assurance Ltd. (Reinsured by R+V Versicherungs AG)
- ☐ Form No. N/A – WEH Asbestos Exclusion
- ☐ Form No. N/A – Exclusion of Cyber Risks
- ☐ Form No. N/A – MAP Mold Exclusion
- ☐ Form No. N/A – Exclusion of Terrorism

Landmark American Insurance Company
- ☐ Form No. RSG 94030 10/03 – Exclusion and Limited Additional Coverage – Electronic Data
- ☐ Form No. RSG 96005 01/08 – Exclusion of Terrorism
- ☐ Form No. RSG 96014 05/04 – Exclusion of Pathogenic or Poisonous Biological or Chemical Materials

Lexington Insurance Company
- ☐ Form No. LX9512 08/02 – Mold/Fungus-Resulting Damage Exclusion Endorsement
- ☐ Form No. PR9014 08/06 – Occurrence Limit of Liability Endorsement – item 2.b. deleted
- ☐ Form No. NMA2918 08/01 – War Risk and Terrorist Exclusion
- ☐ Form No. PR9885 11/05 – OFAC Endorsement
- ☐ Form No. PR9015 08/06 – Pollution, Contamination, Debris Removal Endorsement
- ☐ Form No. Y69813 02/98 – Combined Property/Boiler & Machinery Millennium Endorsement
- ☐ Form No. PR9514 09/02 – Property Endorsement (Data Corruption Endorsement)
- ☐ Form No. PPFIRS 01/91 – Fire Schedule
- ☐ Form No. PRPDEC 01/91 – Property Declarations
- ☐ Form No. PR9885 11/05 – Coverage Territory Endorsement
- ☐ Form No. PR9019 01/94 – Standard Property Conditions
- ☐ Form No. NMA2918 08/02 – International Terrorism Exclusion
- ☐ Form No. N/A – Anti Stacking Endorsement
- ☐ Form No. 96554 04/08 – Terrorism Exclusion

Liberty Mutual Fire Insurance Company
- ☐ Form No. N/A – Computer Virus and Denial of Access Exclusion
- ☐ Form No. N/A – Date or Time Failure Endorsement
- ☐ Form No. N/A – Fungus Exclusion Endorsement
- ☐ Form No. N/A – Exclusion of Certified Acts of Terrorism
- ☐ Form No. N/A – Terrorism Exclusion Endorsement
- ☐ Form No. N/A – Pollution Amendatory Endorsement
- ☐ Form No. N/A – Excess of Loss Amendatory Policy Conditions

Liberty Surplus Insurance Corporation
- ☐ Form No. N/A – Terrorism Exclusion
- ☐ Form No. CPP001-1210 – Commercial Property Conditions
- ☐ Form No. CPE006-1210 Pollutant Exclusions
- ☐ Form No. SC-9 10/08 – Service of Suit Endorsement
- ☐ Form No. N/A – Claims Notification

Lloyd's of London
- ☐ Form No. LMA 5019 – Asbestos Endorsement
- ☐ Form No. NMA2914 – Electronic Data Endorsement A
- ☐ Form No. NMA2802 – Electronic Date Recognition Exclusion
- ☐ Form No. NMA5018 – Microorganism Exclusion (Absolute)
- ☐ Form No. NMA2920 – Terrorism Exclusion
- ☐ Form No. NMA2962 – Biological or Chemical Materials Exclusion
- ☐ Form No. N/A – Pollution Exclusion
- ☐ Form No. LMA5062 – Fraudulent Claims Clause
- ☐ Form No. LSW3000 – Several Liability Notice
- ☐ Form No. NMA1998 – Service of Suit
- ☐ Form No. LMA5130 – Application of Sublimits

Maiden Reinsurance Company
- ☐ Form No. N/A – Terrorism Exclusion

Montpelier Reinsurance Limited
- ☐ Form No. N/A – Electronic Data Endorsement
- ☐ Form No. N/A – Terrorism Exclusion Endorsement
- ☐ Form No. N/A – Mold Exclusion Endorsement
- ☐ Form No. N/A – Nuclear Exclusion
- ☐ Form No. N/A – Chemical or Biological Exclusion Endorsement
- ☐ Form No. N/A – Premium Payment Condition
- ☐ Form No. N/A – UK Arbitration Clause
- ☐ Form No. N/A – Claims Settlement Clause (if applicable) to Reinsurance business only

QBE Insurance Corporation
- ☐ Form No. NMA2914 – Electronic Data Exclusion – Cyber Clause
- ☐ Form No. NMA2918 – War and Terrorism Exclusion
- ☐ Form No. NMA 2802 – Electronic Date Recognition Exclusion (EDRE)
- ☐ Form No. N/A – Microorganism Exclusion (MAP)
- ☐ Form No. N/A – Asbestos Exclusion
- ☐ Form No. 2962 – Nuclear, Biological or Chemical Materials
- ☐ Form No. N/A – Mold, Mildew and Fungus Clause

Sompo Japan Insurance Company of America
- ☐ Form No. SHPR 02 009 – Exclusion of Certified Acts of Terrorism
- ☐ Form No. SHPR 02 059 – Disclosure Pursuant to Terrorism Risk Insurance Act
- ☐ Form No. YIL 01 053 – Signature Page

Steadfast Insurance Company
- ☐ Form No. NMA2928 – Information Technology Hazards (Risk) Exclusion Clause
- ☐ Form No. N/A – Absolute Terrorism Exclusion
- ☐ Form No. N/A – International Property Endorsement
- ☐ Form No. N/A – Certified Acts of Terrorism and other Acts of Terrorism Exclusion
- ☐ Form No. N/A – Tier 1 Wind Endorsement
- ☐ Form No. N/A – NMA2956 Fungi Coverage Limitation Endorsement
- ☐ Form No. IPR 3757608-03 – Property Endorsements

Tokio Marine Europe Insurance Company, Ltd.
- ☐ Form No. LMA 5019 – Asbestos Endorsement
- ☐ Form No. NMA2914 – Electronic Data Endorsement A
- ☐ Form No. NMA2802 – Electronic Date Recognition Exclusion
- ☐ Form No. NMA5018 – Microorganism Exclusion (Absolute)
- ☐ Form No. NMA2920 – Terrorism Exclusion
- ☐ Form No. NMA2962 – Biological or Chemical Materials Exclusion
- ☐ Form No. N/A – Pollution Exclusion
- ☐ Form No. LMA5062 – Fraudulent Claims Clause
- ☐ Form No. LSW3000 – Several Liability Notice
- ☐ Form No. NMA1998 – Service of Suit

Tokio Marine & Nichido Fire Insurance Company, Ltd.
- ☐ Form No. N/A – TMG OFAC Endorsement
- ☐ Form No. N/A – TMG Privacy Protection Endorsement
- ☐ Form No. N/A – Terrorism Exclusion
- ☐ Form No. N/A – Notice to Policyholder
- ☐ Form No. N/A – Cap on Losses from Certified Acts of Terrorism

Westport Insurance Corporation
- ☐ Form No. N/A – Cyber Risk wording
- ☐ Form No. N/A – Terrorism Exclusion
- ☐ Form No. N/A – Chemical, Biological and Radiological Exclusion
- ☐ Form No. N/A – Conformance to Statutes Provision
- ☐ Form No. N/A – Effective Time wording
- ☐ Form No. N/A – IRI Participation Language
- ☐ Pollution is excluded from Demolition and Increased Cost of Construction
- ☐ Form No. N/A – Westport Economic or Trade Sanctions or United Nations Resolutions Endorsement

XL Insurance (Bermuda) Ltd.
- ☐ Form No. NMA1994 – WEH Asbestos Endorsement
- ☐ Form No. N/A – Computer Virus Exclusion
- ☐ Form No. NMA2915 – Electronic Data Endorsement
- ☐ Form No. NMA2802 – Electronic Date Recognition Exclusion
- ☐ Form No. N/A – Microorganism Exclusion (MAP)
- ☐ Form No. NMA2918 – War and Terrorism Exclusion
- ☐ Form No. NMA2962 – Biological or Chemical Materials Exclusion

- ☐ Form No. N/A – London Arbitration Clause
- ☐ Form No. N/A – XL Insurance Follow Form Jacket
- ☐ At XL's own expense, XL may retain independent claims adjusters and/or legal council to represent our interest and to provide oversight on claims adjustment for losses that penetrate our layer(s)
- ☐ Form No. N/A – Consorcio/Calamidad Nacional Exclusion (Spain)
- ☐ Form No. N/A – Catastrophes Naturelles Exclusion (France)
- ☐ Form No. N/A – German Sturmflut Exclusion
- ☐ Form No. N/A – Netherlands Flood Exclusion
- ☐ Form No. N/A – South Africa and Namibia Exclusion
- ☐ Section 30. Appraisal is deleted and replaced with London Arbitration
- ☐ Section 37. Suit Against the Company is deleted and replaced with London Arbitration
- ☐ Section 42. Full Waiver is deleted in its entirety

**THE HOME DEPOT, INC.**

**AND ITS AFFILIATED, SUBSIDIARY, AND ASSOCIATED
COMPANIES AND/OR CORPORATIONS AND THE INSURED'S INTEREST IN PARTNERSHIPS AND JOINT
VENTURES
AS NOW EXIST OR MAY HEREAFTER BE CONSTITUTED OR ACQUIRED AND
ANY PARTY IN INTEREST WHICH THE
INSURED IS RESPONSIBLE TO INSURE**

**HEREINAFTER REFERRED TO AS "THE INSURED"**

1. **TERM OF INSURANCE**

   In consideration of the annual premium shown on the **Participation Page**, this policy attaches and covers for a period of twelve months from March 1, 2013 to March 1, 2014, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

   The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy(ies) replaced or renewed by this policy.

2. **PARTICIPATION**

   This policy covers for the percent interest shown on the **Participation Page**, and the Company shall not be liable for more than that percentage of the limits of liability set forth herein.

3. **LIMITS OF LIABILITY**

   This Company shall not be liable in a single occurrence, regardless of the number of locations or coverages involved, for more than its proportion of the Policy Limit of $500,000,000. Coverage shall not apply until the loss, damage or expense arising out of any one occurrence exceeds the applicable Deductible except:

   A. With respect to the peril of Flood, the Underwriters shall not be liable, per occurrence and in any one policy year for more than their proportion of $250,000,000 except with respect to Zones A and V as designated by the Federal Emergency Management Agency (FEMA), $50,000,000 per occurrence and in any one policy year as referred to in Section 13. Even if the peril of Flood is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause A.

   B. With respect to the peril of Earthquake for locations outside the State of California, the Underwriters shall not be liable for more than their proportion of $250,000,000; per occurrence and in any one policy year as referred to in Section 13. Even if the peril of Earthquake is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause B.

   C. With respect to the peril of Earthquake for locations within the State of California, the Underwriters shall not be liable for more than their proportion of $225,000,000; per occurrence and in any one policy year as referred to in Section 13. Even if the peril of Earthquake is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause C.

   D. With respect to Boiler and Machinery Breakdown, the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $100,000,000 for any "accident", except that the

Underwriters liability shall not exceed any of the specific sublimits of liability in any one "accident" as designated below. If an initial "accident" causes other "accidents", the Underwriters shall consider all as one "accident"

| | | |
|---|---|---|
| (1) | Hazardous Substance | $5,000,000 |
| (2) | Expediting Expense | $5,000,000 |
| (3) | Water Damage | $5,000,000 |
| (4) | Refrigeration Interruption (property while In process and/or storage) | $5,000,000 |

E.   With respect to Named Storm, the Underwriters shall not be liability, in any one occurrence, for more than their proportion of $250,000,000

F.   With respect to property in the Course of Construction and property not reported on the statement of values, the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000 as specified in Clause 7.A.(1)

G.   With respect to Leader Property, as specified in Clause 7.E (1) (d), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

H.   $10,000,000 per conveyance as respects property in transit; each railroad car or trailer shall be considered a separate conveyance

I.   With respect to Debris Removal, the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000 or 25% of loss, whichever is greater

J.   With respect to Extra Expense as specified in Clause 7.C., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $100,000,000

K.   With respect to Errors and Omissions as specified in Clause 24, the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000

L.   With respect to Contingent Time Element as specified in Clause 7.E.(1)(b), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000

M.   With respect to Valuable Papers and Records as specified in Clause 12 B. (3), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000 for the cost of gathering and/or assembling information. This sublimit does not apply to any other reproduction costs

N.   With respect to Interruption by Civil or Military Authority as specified in Clause 7.E.(2), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000 or 30 days whichever is less

O.   With respect to Ingress Egress as specified in Clause 7.E.(3), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000 or 30 days whichever is less

P.   With respect to Newly Acquired / Newly Constructed Locations not reported on the statement of values, the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $150,000,000 as specified in Clause 8.O

Q.   With respect to Demolition and Increased Costs of Construction as specified in Clause 8.A., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000

R.    With respect to Accounts Receivables Coverage as specified in Clause 7.H., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

S.    With respect to Service Interruption as specified in Clause 7.E. (1) (a), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $50,000,000

T..    With respect to Loss Adjustment Expenses as specified in Clause 8.D., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $10,000,000

U..    With respect to Leasehold Interest as specified in Clause 7.I., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

V.    With respect to Tenants and Neighbors Liability as specified in Clause 8.J., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $15,000,000

W.    With respect to Devaluation as specified in Clause 8.K., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

X.    With respect to Coinsurance Deficiency as specified in Clause 8.L., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

Y.    With respect to Tax Liability as specified in Clause 8.M., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

Z.    With respect to Tax Treatment of Profits as specified in Clause 8.N., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $25,000,000

AA.    With respect to Defense Costs as specified in Clause 8.F., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $10,000,000

AB.    With respect to Land and Water Contaminant or Pollutant Cleanup, Removal and Disposal as specified in Clause 8.P., the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $5,000,000

AC.    With respect to Decontamination Costs as specified in Clause 8.Q., the underwriters shall not be liable, in any one occurrence, and in any one year, for more than their proportion of $10,000,000

AD.    With respect to damages associated with LEED certified properties as specified in Clauses 7.F. (1), 8.B., and 12.B.(8), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $10,000,000

AE.    With respect to Miscellaneous Unnamed Locations (not on file with the Underwriters), the Underwriters shall not be liable, in any one occurrence, for more than their proportion of $100,000,000

The limits of liability stated above or elsewhere in this policy are part of and not in addition to the policy limit of liability. The limits of liability stated above apply in the aggregate per occurrence for all locations and coverages involved.

In the event the annual aggregate limits provided for flood and/or earthquake in any underlying insurance are diminished or exhausted in any one policy year, the coverage provided under this policy shall respond as excess of the remaining limits.

In such event, the applicable amount of the deductible provision of the primary policy shall apply to the combination of all policies.

## 4. PROGRAM DEDUCTIBLES

All losses, damages or expenses arising out of any one occurrence shall be adjusted as one loss, and from the amount of such adjusted loss shall be deducted the greater of $25,000,000 or

A.  (1) Five percent (5%) of the total insured value (PD/BI Combined) at the locations for which the insured is making claim at the time when such loss occurs at locations within the State of California for the peril of earthquake.

However, this deductible shall not apply to ensuing loss or damage not otherwise excluded herein

If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall be the single largest deductible.

As respects theft, the term Occurrence as referred to elsewhere within the policy means the sum total of all losses of covered property resulting from one or more concealed acts committed by one person or more than one person acting in unison to the extent such loss is not otherwise excluded under this policy.

The deductible amounts specified above shall not apply to general average contributions, salvage charges and preservation of property expenses.

In the event that all or any portion of the deductible is payable under the Insured's primary insurance or by local, state or governmental funding organizations, such payment shall be considered Underlying Insurance as defined in Clause 17.

## 5. LOSS PAYABLE

Unless otherwise provided herein, loss if any, shall be adjusted with and payable to The Home Depot, Inc. or order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

## 6. TERRITORY

This Policy covers Insured Locations worldwide except in the following countries: Afghanistan, Albania, Angola, Armenia, Azerbaijan, Bosnia, Bulgaria, Belarus, Cuba, Democratic Republic of Congo, Georgia, Herzegovina, Iran, Iraq, Kazakhstan, Kampuchea (Cambodia), Kosovo, Kyrgyzstan, Laos, Lebanon, Libya, Liberia, Macedonia, Montenegro, Myanmar, North Korea, Outer Mongolia, Romania, Rwanda, Serbia, Sudan, Syria, Tajikistan, Tibet, Turkmenistan, Ukraine, Uzbekistan, Zimbabwe, and any other country where prohibited by law or where trade relations are unlawful as determined by the Government of the United States of America or its agencies

## 7. COVERAGE

Except as hereinafter excluded, this policy covers:

A.  Real and Personal Property

(1)  The interest of the Insured in real and personal property including but not limited to property owned, used, leased by the Insured, or hereafter constructed, erected, installed, or

acquired, including while in course of construction, erection, installation, and assembly. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2) The interest of the Insured in real and personal property of others in the Insured's care, custody, or control.

(3) Real and Personal Property which the Insured is responsible for or has agreed to insure prior to loss.

(4) At the option of the Insured, personal property of the Insured's officials, employees and representatives while on the premises of the Insured. This insurance shall then act as primary insurance, except for motor vehicles.

(5) Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral.

B. Business Interruption

(1) Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by physical loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business, including Ordinary Payroll, and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

(3) In the event of physical loss, damage, or destruction covered herein to property as described in Clause 7.A, which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including Ordinary Payroll, directly attributable to such research and development activities.

(4) However, the Underwriters shall not be liable for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5) Resumption of Operations: If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:

(a) by a complete or partial resumption of operation of the property insured, whether damaged or not; or

(b)   by making use of available stock, merchandise, or other property; such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6)   Experience of the Business:

(a)   In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7.A.

(b)   With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

C.   Extra Expense

(1)   Extra Expense necessarily incurred resulting from physical loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

(2)   "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

D.   Rental Value

(1)   Rental Value loss sustained by the Insured resulting directly from physical loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue.

(2)   "Rental Value" is defined as the sum of:

(a)   the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and

(b)   the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

(c)   the fair rental value of any portion of said property which is occupied by the Insured.

(3)   Experience of the Business:

(a)   In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real and personal property as described in Clause 7.A.

(b)     With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

(4)     Rental Income Insurance for the Benefit of the Landlord:

(a)     This policy will serve as rental income insurance in those situations where the insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.

E.     Time Element Extensions

(1)     This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:

(a)     Service Interruption: electrical, steam, gas, water, sewer, telephone, or any other utility or service, transmission lines and related plants, substations and equipment situated on or outside of the premises. With respect to transmission and distribution lines, coverage is limited to one statute mile;

(b)     Contingent Time Element: property of a type not excluded that wholly or partially prevents any direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that wholly or partially prevents any direct receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the world;

(c)     Impounded Water: dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources;

(d)     Leader Property: property not owned or operated by the Insured, located in the same vicinity as the Insured, which attracts business to the Insured.

(2)     Interruption by Civil or Military Authority: This policy is extended to cover the loss sustained within 5 statute miles for a period not to exceed 30 days when access to real or personal property is impaired by order or action of civil or military authority issued in connection with or following a peril insured against.

(3)     Ingress/Egress: This policy is extended to cover the loss sustained within 5 statute miles for a period not to exceed 30 days when, in connection with or following physical loss, damage or destruction by a peril insured against, access to or egress from real or personal property is impaired.

(4)     Idle Periods: This policy does not insure against Time Element loss for any period during which business would not or could not have been conducted for any reason other than physical damage of the type insured against.

F.     Provisions Applicable to Business Interruption, Extra Expense, and Rental Value Coverages

(1)    Period of Recovery:  The length of time for which loss may be claimed:

    (a)    shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

    (b)    and, such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

        (i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

        (ii)    the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;

        but in no event for more than 365 days from said later commencement date;

    (c)    with respect to alterations, additions and property while in the course of construction, erection, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

    (d)    shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

For buildings that have been certified as Leadership in Energy and Environmental Design (LEED) properties, the period of liability as provided for in paragraphs a, b, c and d above, shall include the (additional) time necessary to recertify the building following an insured loss to the LEED certification level that existed prior to said loss.   Such (additional) time period shall include the time necessary to flush out the reconstructed space with 100% outside air and to add new filtration media to conform with the said existing LEED level.

(2)    Special Exclusions:  This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the reoccupancy of the premises.

(3)    Expense to Reduce Loss:  This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, but only to the extent that the total amount which otherwise would have been paid is hereby reduced.

G.    Transit

(1)    Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

    (2)    This insurance is extended to cover loss or damage to property:

        (a)    sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

        (b)    arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

        (c)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

        (d)    at the Insured's option, which is incoming to the Insured.

    (3)    (a)    The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

        (b)    With respect to shipments made under subparagraphs 2(a) and 2(d) above, the Underwriters agrees to waive their rights of subrogation against consignees at the option of the Insured.

    (4)    The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

    (5)    Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between the Underwriters and the Insured.

H.    Accounts Receivable

    (1)    All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

    (2)    Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

    (3)    Collection expense in excess of normal collection cost and made necessary by such loss or damage;

    (4)    Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1)    The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2)    The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

l.    Leasehold Interest

(1)    Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

    (a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

    (b)    improvements and betterments to real property which are not covered under any other section of this policy;

    (c)    the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2)    (a)    "The Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

    (b)    "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3)    Definitions:

The following terms, wherever used in this section shall mean:

    (a)    "The Interest of the Insured as Lessee" is defined as:

        (i)    the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

(ii)    the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

(b)    "The Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

(c)    "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

(4)    The Underwriters shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising any option to cancel the lease. Furthermore, the Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

## 8.   COVERAGE EXTENSIONS

The Extensions of Coverage do not increase this policy's total limit of liability in any one occurrence.

A.    Demolition and Increased Cost of Construction

In the event of insured physical loss or damage to the building(s) or structure(s) covered under this policy that causes the enforcement of any law, ordinance, governmental directive or standard, in force at the time of such loss or damage, regulating the construction, repair, use, or occupancy of property, the Underwriters shall be liable for:

(1)    the cost of demolishing the undamaged property including the cost of clearing the site;

(2)    the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(3)    increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, the Underwriters shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

(4)    any increase in the business interruption, extra expense, rental value or royalties loss arising out of the additional time required to comply with said law or ordinance.

B.    Debris Removal

This policy covers the necessary and reasonable expenses actually incurred by the insured due to the physical loss or damage as insured against occurring during the term of this policy to remove from the premises of the insured debris of covered property and uninsured property remaining after any such loss or damage, except that no liability is assumed for the expense of removal of:

a.    any foundation, other than damaged portions which must be removed for repair or rebuilding of any covered building or structure; or

b.    any property or part thereof, the removal of which is required by the enforcement of any

law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of such property; or

c.    Pollutants from land or water, nor for the cost to remove, restore or replace Polluted land or water except as provided in Clause 8.P. Land and Water Contaminant or Pollutant Cleanup, Removal and Disposal.

Liability for loss under this provision is subject to the limit of Liability stated in the Declarations, and this provision shall not increase any amounts or limits of insurance provided by this policy.

With respects to a building or property contained within such building that has been certified as Leadership in Energy and Environmental Design (LEED) properties, coverage provided hereunder is extended to cover the reasonable and necessary costs of recycling such debris including separating materials and diverting such debris to recycling centers.

C.    Expediting Expense

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

D.    Loss Adjustment Expenses

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, the Underwriters shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster or insurance brokers claims representatives except this exception shall not apply to broker's dedicated forensic accounting units, or claims management, or claims management construction or engineering personnel.

E.    Fire Brigade Charges and Extinguishing Expenses

This policy covers the following expenses resulting from a covered loss:

(1)    fire brigade charges and other extinguishing expenses which the Insured incurs;

(2)    loss and disposal of fire extinguishing materials expended.

F.    Defense Costs

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and/or employees alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefor, even if such suit is groundless, false or fraudulent; but the Underwriters may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

G.    Consequential Loss

(1)    In the event of physical loss or damage not otherwise excluded to covered property of a type insured by this policy, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which causes physical damage to insured property, then there shall be liability under the policy for the resulting loss.

(2)    This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from physical loss or damage not otherwise

excluded.

(3)   This policy also insures the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a cause of loss not otherwise excluded.

H.   Control of Damaged Merchandise

The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Underwriters any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this policy.

I.   Brands or Trademarks

In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

J.   Tenants and Neighbors Liability

This policy also covers:

(1)   (a)   The liability which the Insured incurs as a tenant for damage to real and personal property caused by direct physical loss or damage as insured herein;

(b)   The liability which the Insured incurs for damage to real or personal property caused by direct physical loss or damage as insured herein spreading from the Insured's premises to the premises of neighbors and co-tenants;

(c)   The liability which the Insured incurs as landlord for damage to the personal property of tenants caused by direct physical loss or damage as insured herein as a result of constructional defects or lack of maintenance.

(2)   This extension applies only to liability incurred in those countries in which a Napoleonic or other civil or commercial code applies due to loss or damage by a peril as defined by such code and as insured hereunder.

K.   Devaluation

This policy covers any deficiency in the amount of collectible loss under primary insurance caused by devaluation of the currency in which it is written. However, the Insured agrees to adjust such deficiencies as soon as practicable after the date of the currency's devaluation.

L.   Coinsurance Deficiency

This policy covers the loss sustained by the Insured which results from the application of a coinsurance or average clause in the Insured's primary insurance policies. In such event, this policy shall pay the difference between the amount recoverable under such primary insurance and the total amount of the loss which would have been recoverable under such primary insurance without application of a coinsurance or average clause thereunder subject to the limits of liability as set forth herein.

M.   Tax Liability

(1)   In the event that a loss covered hereunder cannot be paid in the country where the loss has

occurred, the Company shall be liable for an additional loss payment in accordance with the following formula:

Loss payment due under this clause = (( C-A) / B) - C

defined as:

      A -   local tax benefit received where the loss occurred.

      B -   1 minus the effective tax rate in the country where loss payments are received.

      C -   actual loss otherwise payable under this policy, except for the operation of this clause.

(2)   Should the effective local tax rate where the loss occurs be equal to or greater than the effective tax rate in the country where loss payments are to be received, then the formula stated in Paragraph 1 above shall not apply.

(3)   The tax rates applicable shall be the respective corporate tax rates in effect for the fiscal year when the loss occurred.

N.    Tax Treatment of Profits

In the event of a loss insured hereunder, this policy is extended to cover the additional loss sustained by the Insured in the event the tax treatment of:

(1)   the profit portion of a loss recovery involving finished stock manufactured or purchased by the Insured; and/or

(2)   the profit portion of business interruption loss proceeds;

differs from the tax treatment of profits that would have been incurred had no loss occurred.

O.    Newly Acquired / Newly Constructed Locations

This policy automatically covers the interests of the Insured in newly acquired or erected property of the type insured by this policy at locations (including while in the course of construction) when acquired or erected subsequent to the effective date of this policy for an amount not to exceed the sublimit shown in paragraph 3.P. of this form.

P.    Land and Water Contaminant or Pollutant Cleanup, Removal and Disposal

This policy covers the reasonable and necessary cost for the cleanup, removal, and disposal of contaminants or pollutants from uninsured property consisting of land, water or any other substance in or on land at a location insured under this policy if the release, discharge or dispersal of contaminants or pollutants is a direct result of insured physical loss or damage to insured property.

The term Pollutant(s) shall mean any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, virus, vaccines and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Q.    Decontamination Costs

If insured property is contaminated as a direct result of physical loss or damage insured by this policy and there is in force at the time of the loss any law or ordinance regulating contamination, including but not limited to the presence of pollution or hazardous material, then this policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance.

This additional coverage applies only to that part of the insured property so contaminated as a direct result of insured physical damage.

The Company is not liable under this extension for the costs required for removing contaminated uninsured property nor the contaminant therein or thereon, whether or not the contamination results from an insured event.

9.  **PERILS INSURED AGAINST**

This policy insures against all risk of direct physical loss of or damage occurring during the policy term to property described herein including general average, salvage and all other charges on shipments covered hereunder, except as hereinafter excluded.

10.  **PERILS EXCLUDED**

This policy does not insure:

A.  against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

   (1)  cause the Insured to sustain such loss, and

   (2)  obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

   This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B.  against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to physical loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

C.  against errors in processing or manufacture of the Insured's product unless physical loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D.  against ordinary wear and tear, inherent vice or gradual deterioration, depletion, rust, erosion, corrosion, mold, wet or dry rot unless physical loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E.  against normal settling or normal shrinkage of walls, floors, or ceilings; cracking, bulging or expansion of pavements or foundations; and change in flavor or texture or finish unless physical loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

F.  against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; except:

   (1)  if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

   (2)  this Company shall be liable for physical loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on an insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining a nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

G. (1) against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    (a) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

    (b) or by military, naval, or air forces;

    (c) or by an agent of any such government, power, authority, or forces;

(2) against any weapon employing atomic fission or fusion;

(3) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5) against risks of contraband or illegal trade.

H. Mysterious disappearance or any loss or shortage evidenced by taking inventory, or other instances where there is not physical evidence to show what happened to the property insured.

I. This policy does not insure against actual or threatened loss or damage to real or personal property, whether direct or indirect, tangible or intangible (including all consequential loss or damage of any type) arising from any attempt to intimidate or coerce a government, the civilian population, or any segment thereof, in furtherance of political, social or religious objectives.

In any action, suit, or other proceeding where the insurers allege that by reason of the provisions of this Exclusion any Damage or consequential loss is not covered by this insurance, the burden of proving that such Damage or consequential loss is covered shall be upon the insured.

J. animals, vermin or insects unless physical damage not otherwise excluded by this policy results, and then the Insurer shall be liable for only such resulting physical damage

K. dampness or dryness of atmosphere, or extremes or changes of temperature, unless physical damage not otherwise excluded in this policy to buildings or equipment results, and then the Insurer shall be liable for only such resulting physical damage

L. remote loss or damage, or delay or loss of market

M. accumulated effects of smog, smoke, vapor, liquid, dust.

N. any cost associated with any form of contamination of the Insured's raw stock, stock in process or finished stock or products in the stream of commerce, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured in this policy. Further, this policy does not insure against any loss, damages, costs, or expenses incurred by the recall, inspection, repair, replacement, adjustment, removal or disposal of the Insured's products or the Insured's direct or indirect customers or suppliers if such product or any portion of it is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, contamination or dangerous condition.

O. As regards losses in Spain or Spanish territories which fall under the legislative "CONSORCIO DE

COMPENSACION DE SEGUROS" (CONSORCIO) Act resulting from a covered peril declared to be within CONSORCIO conditions of coverage. The conditions of payment, delays in payment for repudiation of claim and non-declaration or non-payment of additional premium as required and specified by CONSORCIO regulations for the risks located adjacent to coastal areas, bays, lakes with natural outlets and rivers, shall also be excluded by this policy.

However, in consideration of premium specifically collected under this policy, this policy will respond to such loss after indemnity payable to the Insured under the provisions of the above referenced law is exhausted. The amount so payable under this policy shall not exceed the difference between the amount paid under the referenced law and the actual amount of loss or damage, but in no event for more than the limit of liability stated elsewhere in this policy. Nor shall payment under this provision serve to increase any of the limits of liability stated in this policy.

P.    As respects the Republic of South Africa only: against any act (whether on behalf of any organization, body or person, or group of persons) calculated or directed to overthrow or influence any state or government, or any provincial, local or tribal authority with force, or by means of fear, terrorism or violence.

Against any act which is calculated or directed to bring about loss or damage in order to further any political aim, objective or cause, or to bring about any social or economic change, or to protest against any state or government, or any provincial, local or tribal authority, or for the purpose of inspiring fear in the public, or any section thereof.

This policy does not insure against loss or damage caused directly or indirectly by or through or in consequence of any occurrence for which a fund has been established in the terms of the War Damage Insurance And Compensation Act, 1976 (Number 85 of 1976).

Q.    This policy does not insure against perils as defined and insured under Primary Insurance to the extent of recovery thereunder. However, this Company shall not be liable for non-recovery under primary insurance due to insolvency and/or any other financial failure of such primary Insurer except where this Insurer has a majority interest in such primary Insurer

R.    As respects Germany: This Policy excludes physical loss or damage directly or indirectly caused by or resulting from Sturmflut regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

Sturmflut is a flooding of dry land by storm driven waves on coastal areas, into bays or inland waters connected to the ocean or sea. The "Federal German Office for Maritime Shipping and Hydrographic: will declare Sturmflut.

S.    As respects Netherlands: This Policy excludes physical loss or damage directly or indirectly caused by or resulting from the failure or overflowing of dikes, dams, floodgates or other similar works, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss. However, if there is ensuing physical loss or damage by fire or explosion, the exclusion does not apply to the loss or damage caused by the fire or explosion.

T.    All Locations outside of the USA, its territories, possessions and missions, and the Commonwealth of Puerto Rico:

1).  This Policy excludes loss or damage that is covered under any government or national program, pool or scheme. This policy shall apply as excess of any amounts recoverable under such programs, pools or schemes, subject to the Policy provisions, including applicable exclusions, deductibles and limits, all as shown in this section and elsewhere in this Policy.

2).  This Policy excludes physical loss or damage directly or indirectly caused by or resulting from any Terrorist Activity regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

11. **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A. Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements are defined as any alteration to the natural condition of the land by grading, manmade or natural landscaping, earthen dikes or dams, and additions to land such as drainage, pavements, roadways, or similar works;

B. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C. Money, securities, furs, jewelry, precious or semi-precious stones, and precious metals;

D. Growing crops, standing timber, and animals except for research;

E. Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this exclusion shall not apply to contractor's equipment;

F. Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

H. Underground mines, caverns or property contained therein;

I. Satellites, spacecraft and aircraft;

J. Overhead transmission and distribution lines, including wire, cables, poles, pylons, standards, towers or other supporting structures attendant to the transmission of power and / or telephone communications, but this exclusion shall not apply to such property which is located on the Insured's premises or within one statute mile.

K. Docks, piers, wharves or other property located thereon when caused by action of water or ice or impact of watercraft;

L. Offshore property which is seaward beyond the line of normal tidal low water along coastal land except that structures and their contents extending from land or shore, floating docks permanently moored to dock, river bank or shore are not considered as offshore.

M. Air supported structures and contents thereof.

N. Property of others if such property is being transported by the Insured in or on vehicles owned, operated, leased or otherwise contracted by the Insured when the Insured is acting as a common or contract carrier.

12. **VALUATION**

In case of loss, the basis of adjustment shall be as follows:

A. Stock

(1) Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

(2)    Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and unincurred expenses to which the sales price would have been subject.

(3)    Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise held for sale shall be valued at the Insured's selling price as per the Home Depot Perpetual Inventory system at the time of loss, without consideration for discounts, rebates, and other similar unincurred expenses.

B.    Real and Personal Property

(1)    Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

(2)    Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include
technological advances provided that such replacement does not increase the liability of the coverage.

(3)    Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information;

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, papertapes, cards, electronic memory circuits, and magnetic or optical storage devices. "Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means.  It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4)    Fine Arts shall be valued at the appraised value; or, if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.

(5)    Motor vehicles at actual cash value.

(6)    Other property not otherwise provided for, at replacement cost new on the same premises as of the date of replacement.

(7)    Permission is granted for the Insured to replace the damaged property with any property at the same site and /or another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site.  If property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes in force at the time of loss or damage shall not result in actual cash valuation.

(8) For buildings insured under this policy that have been certified as Leadership in Energy and Environmental Design (LEED) properties, this Company shall also be liable for:

    a. the costs to recertify the building following an insured loss to the LEED certification level that existed prior to said loss; such costs shall include the cost to flush out the reconstruction space with 100% outside air and to add new filtration media to conform with the said existing LEED level

    b. the necessary and reasonable cost to hire LEED accredited professional engineers to provide building commissioning or retro-commissioning services and to oversee post-loss repair or reconstruction in order to verify and document that the repaired or replaced property, as well as other property including but not limited to life safety systems, health safety systems, HVAC plumbing and electrical systems and their related controls whether damaged or not in the loss occurrence, have been installed and calibrated properly and perform to documented design criteria and manufacturers' specifications.

## 13. LOSS OCCURRENCE

The term "loss occurrence" shall mean the sum of all individual losses directly occasioned by any one disaster, accident or loss or series of disasters, accidents or losses arising out of one event which occurs anywhere within the policy territory. However, the duration and extent of any one "loss occurrence" shall be limited to all individual losses sustained by the Insured occurring during any period of 168 consecutive hours arising out of and directly occasioned by the same event, except the
term "loss occurrence" shall be further defined as follows:

A. As regards windstorm, hail, tornado, Named Storm, typhoon, cyclone including ensuing collapse and water damage, all individual losses sustained by the Insured occurring during any period of 168 consecutive hours arising out of and directly occasioned by the same event.

B. As regards the perils of riot, riot attending a strike, civil commotion, vandalism and malicious mischief, including losses from all other perils covered hereunder following as a result of the aforesaid perils, "loss occurrence" shall mean all losses or series of losses occurring during any period of 168 consecutive hours arising out of and directly occasioned by the same event. The maximum duration of 168 consecutive hours may be extended in respect of individual losses, which occur beyond such 168 consecutive hours during the continued occupation of the Insured's premises by strikers, provided such occupation commenced during aforesaid period.

C. As regards Earthquake, seaquake, tidal wave, landslide, subsidence, volcanic eruption, or any other earth movement (all whether or not naturally occurring), but does not include mudslide or flow including losses from all other perils covered hereunder following as a result of the aforesaid perils, only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Insured's "loss occurrence".

D. As regards the peril of freeze, only those individual losses directly occasioned by collapse, breakage of glass, water and/or liquid damage due to burst pipes tanks or pressure vessels; damage to machinery or equipment, stock and/or work in progress due to freeze; and/or individual losses arising directly out of the lack of supply of power, current, coolant and/or fuel due to frozen pipes and/or frozen feedlines may be included in the Insured's "loss occurrence".

Except for those "loss occurrences" referred to in paragraph A and B above, the Insured may chose the date and time when such period of consecutive hours commences, provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of 168 consecutive hours shall apply with respect to one event.

However, as respects those "loss occurrences" referred to in paragraph A and B above, if the disaster, accident or loss occasioned by the event is of greater duration than 168 consecutive hours, then the Insured may divide that disaster, accident or loss into two or more "loss occurrences," provided no two periods overlap and no individual loss is included in more than one such period and provided that no period commences earlier than the date and time of the occurrence of the first recorded individual loss
sustained by the Insured arising from that disaster, accident or loss.

No individual losses occasioned by an event that would be covered by the 168 hours clauses may be included in any "loss occurrence" claimed under the 168 hour provision.

Earthquake is defined as the shaking or trembling of the earth that is tectonic in origin.

Flood is defined as the rising or overflowing of any river(s) stream(s) and the subsidence of the same within the banks of such river(s) or stream(s) or any flood resulting from any tidal wave or series of tidal waves caused by any one disturbance or the unusual and rapid accumulation or runoff of surface waters from any source; or mudslide or mudflow caused by accumulation of water on or under the ground.

Each loss by Named Storm shall constitute a single occurrence hereunder if: loss or damage is caused by or results from a Named Storm including ensuing Storm Surge. Other ensuing loss or damage not otherwise excluded herein shall not be considered Named Storm for the purposes of this description.

Named Storm shall mean direct action of wind when such wind is associated with, or occurs in conjunction with a storm or weather disturbance which is named by the National Oceanic and Atmospheric Administration's (NOAA) National Hurricane Center or similar governmental body until sustained wind speeds drop below the parameter for naming storms.

Storm Surge is defined as water driven inland from coastal waters by high winds and low atmospheric pressure associated with a Named Storm.

This clause does in no way alters any policy limit or policy sublimit expressed.

14. **ACCIDENT**

The term "accident" is defined solely for the determination of the limits of liability and/or deductible(s) and application of the suspension section only. The term "accident" shall not limit or define the perils or coverages provided elsewhere in this policy.

A.      The term "accident" shall mean:

(1)      Any condition or occurrence within boilers or fired or unfired vessels owned by, operated by, or under the control of the Insured and subject to pressure or vacuum including piping or apparatus attached to and forming a part thereof, except that the words "any condition or occurrence" shall not include explosion, other than explosion of the parts of a steam boiler containing steam or water, steam piping, steam turbines, or steam engines;

(2)      mechanical breakdown of any machine or apparatus arising out of any condition or occurrence within such machine or apparatus;

(3)      electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

However, the term "accident" does not include:

(1)      loss or damage from fire or from the use of water or other means to extinguish fire; and

(2)      the normal operation of any safety or protective device;

B.    The term "accident" shall not apply to the following property:

    (1)    property in transit;

    (2)    property while in the course of construction, erection, installation, or assembly;

    (3)    electronic data processing systems used for administrative, statistical, or accounting purposes;

    (4)    any sewer piping, any piping forming a part of a fire protective system, or any water piping other than:

        (a)    boiler feed water piping;

        (b)    boiler condensate return piping;

        (c)    water piping used in a heat transfer system for cooling, humidifying, or space heating purposes;

    (5)    any vehicle, aircraft, or self-propelled equipment or floating vessel;

    (6)    any elevator, crane, ladle or bucket, hoist, power shovel, drag line, excavator, scale, or conveyor, but not excluding any pressure vessel, gears, engines or electrical equipment used with a machine.

C.    Coverage Definitions

    (1).    Hazardous Substances Coverage:

It is agreed that, if, as a result of an Accident, any property is damaged, contaminated, or polluted by a substance declared by a governmental agency to be hazardous to health, the Company shall be liable under the policy for the additional expenses incurred for cleanup, repair or replacement, or disposal of that damaged, contaminated or polluted property.

As used here, "additional expenses" shall mean expenses incurred beyond those for which the Company would have been liable if no substance hazardous to health had been involved in the Accident.

    (2)    Water Damage Coverage:

The Company's liability for loss includes salvage expense, on property damaged by water, resulting from any One Accident. This limit is part of and not in addition to the Limit of Liability.

## 15.    CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

## 16.    EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 17.    UNDERLYING INSURANCE

A.    Underlying insurance is insurance on all or any part of the deductible and against all or any of the

causes of loss covered by this policy including declarations of value to the carrier for hire. The insured retains the right to arrange underlying insurance to meet the requirements of third parties such as banks, landlords, and certain contracts. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B.    If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.

C.    Should the deductible under the Insured's underlying insurance equal or exceed the largest applicable deductible of this Policy, then only the underlying deductible shall apply hereunder. However, if the deductible under the Insured's underlying insurance is less than the largest applicable deductible of this Policy, then the amount to be deducted hereunder shall not exceed the difference between the deductible under the Insured's underlying insurance and the largest applicable deductible of this Policy.

## 18.    OTHER INSURANCE

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other insurance coverage, whether directly or indirectly covering the same property against the same causes of loss. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance. As used herein, "other insurance coverage" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

## 19.    PRIMARY INSURANCE

Primary Insurance shall mean locally admitted and / or non-admitted policies issued to the Insured.

## 20.    SUBROGATION

A.    Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, and at the option of the Insured against a tenant, vendor, supplier or customer of the Insured, is waived.

B.    In the event of any payment under this policy, the Underwriters shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the Underwriters to secure such right. The Underwriters will act in concert with all other interests concerned, i.e., the Insured and any other Company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

## 21.    SALVAGE AND RECOVERIES

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.

22. **MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Underwriters shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

23. **SUSPENSION**

Upon discovery of a dangerous condition with respect to any boiler, fired or unfired pressure vessel and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power, any representative of the Underwriters may immediately suspend the insurance with respect to an "accident" to said property by written notice mailed or delivered to the Insured at the home office address of the Insured.

24. **ERRORS OR OMISSIONS**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office risk management department.

25. **NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Home Office  Risk Management Department, the Insured shall report such loss or damage to Marsh USA, Inc. of Atlanta, GA, for transmission to the Underwriters.  Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Underwriters proves that it actually was prejudiced by any unreasonable delay in notice.

26. **PROOF OF LOSS**

The Insured, at the request of the Underwriters, will render a signed and sworn proof of loss to the Underwriters or its appointed representative stating: the place, time, cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

27. **PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Underwriters will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Underwriters.

28. **PRIORITY OF PAYMENTS**

A.   In determining the amount of any loss, damage, or expense for which this policy is excess, the total loss for all coverages caused by any combination of perils, one or more of which is insured against under the primary/underlying excess policy(ies), shall be used even though all such perils or coverages are not insured against under this excess policy.

(1)   Any recoveries made under the primary/underlying excess policy(ies) shall be considered as first applying to those perils and/or property and/or coverages not insured against by this policy.  Upon exhaustion of the primary/underlying excess policy limits, this policy shall drop down and be liable for the loss in excess of the amount attributable to the primary/underlying excess policy(ies) as respects those perils and/or coverages and/or property insured hereunder subject to the limit of this policy.

(2)   If there is any other excess insurance covering the perils and/or property and/or coverages insured against in the primary/underlying excess policy(ies), but not covered by this policy, this policy shall then allocate any loss recoveries made under the primary/underlying

excess policy(ies) in the same proportion as the amount of loss involving the property and/or coverages insured against by this policy bears to the combined total loss.  Upon exhaustion of the primary/underlying excess policy(ies) limits, this policy shall drop down and be liable for the loss in excess of the amount attributed to the primary/underlying excess policy(ies) as respects those perils and/or property and/or coverages covered hereunder, subject to the limit of this policy.

(3)    Paragraph two shall not apply, however, when the amount of loss attributed to the perils insured under the primary/underlying excess policy(ies), but not covered under this policy, exceed the total amount of insurance provided by the primary and excess coverages with respect to said perils.  In this situation, any recoveries made under the primary/underlying excess policy(ies) shall first apply to those perils not insured against by this policy.  Upon exhaustion of the primary/underlying excess policy(ies) limits, this policy shall drop down and be liable for the loss in excess of the amount attributed to the primary policy as respects those perils covered hereunder, subject to the limit of this policy.

(4)    In the event the Insured is a contributing or self-insurer with respect to the perils and/or property and/or coverages otherwise insured in any primary/underlying excess insurance and no policy is issued to define the extent of this contributing or self insurance, for the purposes of the Excess Clause, the Insured's contributing or self-insurance shall be deemed to be the same as either:  (a) all other contributing insurance participating in the Insured's layer(s); or (b) all other contributing insurance participating in the layer below the Insured's layer where the Insured is entirely self insuring the layer.  If the coverage provided by the policy(s) of the other contributing insurance company(s) is non- concurrent, then the contributing or self insurance provided by the Insured within the layer in question shall be deemed to be the same as the coverage provided by that contributing insurance company whose policy provides the most indemnity for the loss.

Where applicable relative to contributing insurance policy(s) described in either subparagraphs A(4)(a) or A(4)(b) above, in the event the Insured is providing contributing or self-insurance in any of the layer(s) of insurance, and such other contributing insurance policies contain aggregate limits of liability, the Insured's contributing or self insurance for those coverages shall be deemed to be aggregated also.

29.    **ASSIGNED ADJUSTER**

It is agreed that at the Insured's option, the Underwriters will use one of the following companies as coordinating adjuster at the discretion of the insured:

    1. Patrick Washington, York Claim Services, Inc.
    2. Serena Larson, York Claim Services, Inc.
    3. Scott MacPherson, Vericlaim

This assignment may be changed by mutual consent of the Insured and the Underwriters.  Matson, Driscoll & Damico, Certified Public Accountants, will be the claim auditing firm.  Any amount paid in excess of the appropriate deductible shall be prorated by all participating underwriters as their respective limit bears to the total claim amount.  All adjustment expenses shall be paid in the same manner as the loss payment.  Copies of routine reports to Insurers including loss projections are to be distributed to Marsh USA, Inc.; Atlanta, GA.

30.    **APPRAISAL**

If the Insured and the Underwriters fail to agree on the amount of the loss, each, upon written demand of either the Insured or the Underwriters made within 60 days after receipt of proof of loss by the Underwriters, shall select a competent and disinterested appraiser.  The appraisers shall then select a competent and disinterested umpire.  If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of the Underwriters, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending.  Then, at a reasonable time and place, the appraisers shall

appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any

two shall determine the amount of loss and shall be paid by the Company within 30 days thereafter. The Insured and the Underwriters shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

31. **PAIR AND SET**

Except as provided under the Machinery clause and paragraph (2) of the Consequential Loss clause, in the event of physical loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A.  the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.  the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Underwriters.

32. **ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall reasonably cooperate with the Underwriters, and, at the Underwriters reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

33. **PRESERVATION OF PROPERTY CLAUSE**

In case of actual or imminent physical loss or damage of the type insured against by this policy, the expenses incurred by the insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage, if any, otherwise recoverable under the policy and be subject to the applicable deductible and without increase in the limit provisions contained in this policy.

34. **PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

35. **CURRENCY**

A.  Loss, if any, is to be paid in the same currency in which the premium is paid.

B.  (1)  In the event of a property damage loss adjustment involving local currency, conversion into the currency of the United States of America shall be at the New York foreign exchange selling rate published in The Wall Street Journal as of the date(s) of expenditure.

    If property damaged or destroyed is not repaired, rebuilt or replaced, conversion into the currency of the United States of America shall be at the New York foreign exchange selling rate published in The Wall Street Journal as of the date of loss.

    (2)  In the event of a business interruption, extra expense, rental value, royalties and/or expediting expense loss adjustment involving local currency, conversion into the currency of the United States of America shall be at the average New York foreign exchange selling rate published in The Wall Street Journal in effect during each 30 day period (or part thereof) commencing on the date the loss occurs.

C. Local Currency shall be defined as the currency of the country where loss occurs. This definition shall also include a local currency equivalent.

**36. REINSTATEMENT**

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

**37. SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy; however, if there is any dispute between the Insured and the Company as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Company agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company in accordance with clause 25 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time. Prosecution of a suit by the Insured shall not be barred due to the failure of the Company to timely advise and notify the Insured of the expiration of any applicable dates to file and commence said suit.

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

**38. CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience and information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

The Company hereby authorizes Marsh USA, Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

**39. CANCELLATION**

A. This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at :

The Home Depot, Inc.
2455 Paces Ferry Road,N.W.
Building, C.20
Atlanta, GA  30339-4024
Attn.: Risk Finance Manager

The Home Depot, Inc.
2013-2014 Policy Form

35

and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days (except 10 days for non-payment of premium) thereafter, such cancellation shall be effective.  The earned premium shall be computed on a pro-rata basis.

B.    The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.  Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C.    Cancellation shall not affect coverage on any shipment in transit on the date of cancellation.  Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

## 40.    TITLES OF PARAGRAPHS

The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 41.    VALUES

The values and schedule of property declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

## 42.    FULL WAIVER

The terms and conditions of this form and endorsements attached thereto replace those of the policy to which it is attached, all terms, conditions and endorsements of the latter being waived.  This waiver shall not apply to endorsements agreed to and accepted by the Insured at inception of this policy or subsequent thereto.

# Appendix C – Named Storm Zones for USA including its Commonwealths and Territories



**ZURICH**

This list is for is for informational purposes only and does not convey any coverage under the policy.

| WIND ZONES ARE DEFINED AS FOLLOWS: | | | |
|---|---|---|---|
| **COUNTRY** – The United States of America | | | |

| STATE | ZONE | COUNTIES/PARISHES/INDEPENDENT CITIES |
|---|---|---|
| Alabama | 1 | Baldwin, Mobile |
| | 2 | Clarke, Covington, Escambia, Geneva, Houston, Washington |
| Florida | 1 | Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dixie, Duval, Escambia, Flagler, Franklin, Glades, Gulf, Hendry, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Miami-Dade, Monroe, Nassau, Okaloosa, Okeechobee, Palm Beach, Pasco, Pinellas, Saint Johns, Saint Lucie, Santa Rosa, Sarasota, Taylor, Volusia, Wakulla, Walton, Washington |
| | 2 | Balance of State |
| Georgia | 1 | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| | 2 | Appling, Brantley, Bulloch, Charlton, Effingham, Evans, Long, Pierce, Tattnall, Wayne |
| Hawaii | 1 | Entire State |
| Louisiana | 1 | Ascension, Assumption, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington |
| | 2 | Acadia, Allen, Beauregard, Calcasieu, East Baton Rouge, East Feliciana, Evangeline, Iberville, Jefferson Davis, Lafayette, Pointe Coupee, St. Landry, St. Helena, West Baton Rouge, West Feliciana |
| Maryland | 1 | Somerset, Wicomico, Worcester |
| Mississippi | 1 | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| | 2 | Amite, Forrest, Greene, Lamar, Marion, Perry, Pike, Walthall, Wilkinson |
| North Carolina | 1 | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington |
| | 2 | Bladen, Duplin, Gates, Greene, Hertford, Lenoir, Pitt, Robeson, Sampson |
| South Carolina | 1 | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper |
| | 2 | Allendale, Bamberg, Clarendon, Dillon, Florence, Hampton, Marion, Williamsburg |
| Texas | 1 | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy |
| | 2 | Austin, Bee, Brooks, Colorado, DeWitt, Duval, Fort Bend, Goliad, Grimes, Hardin, Harris, Hidalgo, Jasper, Jim Hogg, Jim Wells, Lavaca, Liberty, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Victoria, Walker, Waller, Wharton |
| Virginia | 1 | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Southampton, Surry, York |
| | 1 | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, and Williamsburg |
| | 2 | Caroline, Charles City, Essex, Henrico, King and Queen, King George, King William, New Kent, Prince George, Richmond, Sussex, Westmoreland |

| Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | **ZONE** | |
| AMERICAN SAMOA | 1 | Entire Territory |
| GUAM | 1 | Entire Territory |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

# Appendix D – Named Storm Zones Worldwide except USA and its Commonwealths and Territories


**ZURICH**

This list is for is for informational purposes only and does not convey any coverage under the policy.

**WIND ZONES** ARE DEFINED AS FOLLOWS:

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ALGERIA | 3 | Entire Country |
| ANDORRA | 3 | Entire Country |
| ANGUILLA | 1 | Entire Country |
| ANTARCTICA | 4 | Entire Country |
| ANTIGUA & BARBUDA | 1 | Entire Country |
| ARGENTINA | 4 | Entire Country |
| ARUBA | 2 | Entire Country |
| AUSTRALIA including Christmas Island, Cocos (Keeling) Islands | 1 | Western Australia, Northern Territory, Queensland, Christmas Island, Cocos (Keeling) Islands |
| | 3 | Balance of Country |
| AUSTRIA | 4 | Entire Country |
| BAHAMAS | 1 | Entire Country |
| BAHRAIN | 4 | Entire Country |
| BANGLADESH | 1 | Entire Country |
| BARBADOS | 1 | Entire Country |
| BELGIUM | 3 | Entire Country |
| BELIZE | 1 | Entire Country |
| BENIN | 4 | Entire Country |
| BERMUDA | 1 | Entire Country |
| BHUTAN | 4 | Entire Country |
| BOLIVIA | 4 | Entire Country |
| BOTSWANA | 3 | Entire Country |
| BRAZIL | 4 | Entire Country |
| BRITISH VIRGIN ISLANDS | 1 | Entire Country |
| BRUNEI DARUSSALAM | 4 | Entire Country |
| BURKINA FASO | 4 | Entire Country |
| BURUNDI | 1 | Entire Country |
| CAMBODIA | 3 | Entire Country |
| CAMEROON | 4 | Entire Country |
| CANADA | 4 | Entire Country |
| CAPE VERDE | 3 | Entire Country |
| CAYMAN ISLANDS | 1 | Entire Country |
| CENTRAL AFRICAN REPUBLIC | 4 | Entire Country |
| CHAD | 3 | Entire Country |
| CHILE | 3 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| CHINA | 1 | Hainan, Macau, Hong Kong, Guangdong, Fujian, Zhejiang, Shanghai, Jiangsu, Shangdong |
| | 4 | Balance of Country |
| COLOMBIA | 3 | Entire Country |
| COMOROS | 3 | Entire Country |
| CONGO, REPUBLIC OF | 4 | Entire Country |
| COOK ISLANDS | 1 | Entire Country |
| COSTA RICA | 1 | Entire Country |
| CROATIA | 3 | Entire Country |
| CYPRUS | 4 | Entire Country |
| CZECH REPUBLIC | 4 | Entire Country |
| DENMARK | 3 | Entire Country |
| DJIBOUTI | 4 | Entire Country |
| DOMINICA | 1 | Entire Country |
| DOMINICAN REPUBLIC | 1 | Entire Country |
| ECUADOR | 4 | Entire Country |
| EGYPT | 4 | Entire Country |
| EL SALVADOR | 2 | Entire Country |
| EQUATORIAL GUINEA | 4 | Entire Country |
| ERITREA | 4 | Entire Country |
| ESTONIA | 3 | Entire Country |
| ETHIOPIA | 4 | Entire Country |
| FAROE ISLANDS | 3 | Entire Country |
| FEDERATED STATES OF MICRONESIA | 1 | Entire Country |
| FIJI | 1 | Entire Country |
| FINLAND | 3 | Entire Country |
| FRANCE | 4 | Entire Country |
| FRENCH GUIANA | 4 | Entire Country |
| FRENCH POLYNESIA | 1 | Entire Country |
| GABON | 3 | Entire Country |
| GAMBIA | 4 | Entire Country |
| GERMANY | 3 | Entire Country |
| GHANA | 3 | Entire Country |
| GIBRALTAR | 3 | Entire Country |
| GREECE | 4 | Entire Country |
| GREENLAND | 4 | Entire Country |
| GRENADA | 1 | Entire Country |
| GUADELOUPE | 1 | Entire Country |
| GUATEMALA | 1 | Izabal |
| | 2 | Balance of Country |
| GUINEA | 4 | Entire Country |
| GUINEA- BISSAU | 4 | Entire Country |
| GUYANA | 3 | Entire Country |
| HAITI | 1 | Entire Country |
| HONDURAS | 1 | Entire Country |
| HUNGARY | 4 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ICELAND | 4 | Entire Country |
| INDIA | 1 | Andhra Pradesh, Jharkhand, Mizoram, Orissa, Tamil Nadu, Tripura, West Bengal |
| | 3 | Balance of Country |
| INDONESIA | 3 | Entire Country |
| IRELAND | 3 | Entire Country |
| ISLE OF MAN | 3 | Entire Country |
| ISRAEL | 4 | Entire Country |
| ITALY | 3 | Entire Country |
| JAMAICA | 1 | Entire Country |
| JAPAN | 1 | Entire Country |
| JORDAN | 4 | Entire Country |
| KENYA | 3 | Entire Country |
| KIRIBATI | 1 | Entire Country |
| KUWAIT | 4 | Entire Country |
| LAOS | 3 | Entire Country |
| LATVIA | 3 | Entire Country |
| LESOTHO | 4 | Entire Country |
| LIECHTENSTEIN | 4 | Entire Country |
| LITHUANIA | 3 | Entire Country |
| LUXEMBOURG | 4 | Entire Country |
| MACAU | 1 | Entire Country |
| MACEDONIA | 4 | Entire Country |
| MADAGASCAR | 2 | Entire Country |
| MALAWI | 4 | Entire Country |
| MALAYSIA | 3 | Entire Country |
| MALDIVES | 3 | Entire Country |
| MALI | 4 | Entire Country |
| MALTA | 4 | Entire Country |
| MARSHALL ISLANDS | 2 | Entire Country |
| MARTINIQUE | 1 | Entire Country |
| MAURITANIA | 4 | Entire Country |
| MAURITIUS | 1 | Entire Country |
| MAYOTTE | 1 | Entire Country |
| MEXICO | 1 | Baja California Sur, Colima, Campeche, Chiapas, Guerrero, Jalisco, Michoacan, Oaxaca, Quintana Roo, Tabasco, Tamaulipas, Veracruz, Yucatan |
| | 4 | Balance of Country |
| MOLDOVA | 4 | Entire Country |
| MONACO | 3 | Entire Country |
| MONGOLIA | 4 | Entire Country |
| MONTSERRAT | 1 | Entire Country |
| MOROCCO | 4 | Entire Country |
| MOZAMBIQUE | 1 | Entire Country |
| NAMIBIA | 4 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| NAURU | 4 | Entire Country |
| NEPAL | 4 | Entire Country |
| NETHERLANDS ANTILLES | 1 | Saba, Sint Eustatius, Sint Maarten |
| | 3 | Balance of Country |
| NETHERLANDS | 3 | Entire Country |
| NEW CALEDONIA | 1 | Entire Country |
| NEW ZEALAND | 1 | Entire Country |
| NICARAGUA | 1 | RAAN (Bilwi), RAAS (Bluefields) |
| | 2 | Balance of Country |
| NIGER | 4 | Entire Country |
| NIGERIA | 4 | Entire Country |
| NIUE | 1 | Entire Country |
| NORFOLK ISLAND | 2 | Entire Country |
| NORWAY | 3 | Entire Country |
| OMAN | 3 | Entire Country |
| PAKISTAN | 3 | Entire Country |
| PALAU | 1 | Entire Country |
| PANAMA | 3 | Entire Country |
| PAPUA NEW GUNIEA | 2 | Entire Country |
| PARAGUAY | 4 | Entire Country |
| PERU | 4 | Entire Country |
| PHILIPPINES | 1 | Entire Country |
| PITCAIRN ISLANDS | 1 | Entire Country |
| POLAND | 3 | Entire Country |
| PORTUGAL | 3 | Azores |
| | 4 | Entire Country |
| QATAR | 4 | Entire Country |
| REUNION | 1 | Entire Country |
| RUSSIAN FEDERATION | 4 | Entire Country |
| RWANDA | 4 | Entire Country |
| SAMOA (WESTERN ) | 1 | Entire Country |
| SAN MARINO | 4 | Entire Country |
| SAO TOME & PRINCIPE | 4 | Entire Country |
| SAUDI ARABIA | 4 | Entire Country |
| SENEGAL | 4 | Entire Country |
| SEYCHELLES | 3 | Entire Country |
| SIERRA LEONE | 4 | Entire Country |
| SINGAPORE | 3 | Entire Country |
| SLOVAKIA | 4 | Entire Country |
| SLOVENIA | 4 | Entire Country |
| SOLOMAN ISLANDS | 2 | Entire Country |
| SOMALIA | 4 | Entire Country |
| SOUTH AFRICA | 4 | Entire Country |
| SOUTH KOREA | 2 | Entire Country |
| SPAIN | 4 | Entire Country |
| SRI LANKA | 2 | Entire Country |
| ST. BARTHELEMY | 1 | Entire Country |

| Country | Zone | Provinces/Territories/States/Counties |
|---|---|---|
| ST. KITTS AND NEVIS | 1 | Entire Country |
| ST. LUCIA | 1 | Entire Country |
| ST. MARTIN | 1 | Entire Country |
| ST. VINCENT AND THE GRENADINES | 1 | Entire Country |
| SURINAME | 4 | Entire Country |
| SWAZILAND | 4 | Entire Country |
| SWEDEN | 3 | Entire Country |
| SWITZERLAND | 4 | Entire Country |
| TAIWAN | 1 | Entire Country |
| TANZANIA | 4 | Entire Country |
| THAILAND | 1 | Entire Country |
| TIMOR-LESTE | 3 | Entire Country |
| TOGO | 4 | Entire Country |
| TONGA | 1 | Entire Country |
| TRINIDAD AND TOBAGO | 1 | Entire Country |
| TUNISIA | 4 | Entire Country |
| TURKEY | 4 | Entire Country |
| TURKS AND CAICOS | 1 | Entire Country |
| TUVALU | 3 | Entire Country |
| UNITED ARAB EMIRATES | 4 | Entire Country |
| UNITED KINGDOM including Guernsey, Jersey | 3 | Entire Country |
| UGANDA | 4 | Entire Country |
| URUGUAY | 3 | Entire Country |
| VANUATU | 1 | Entire Country |
| VENEZUELA | 3 | Entire Country |
| VIETNAM | 2 | Entire Country |
| WESTERN SAHARA | 4 | Entire Country |
| YEMEN | 3 | Entire Country |
| ZAMBIA | 4 | Entire Country |

**INTEGRATED INSURANCE POLICY**

EXCESS EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
CLAIMS MADE COVERAGE

## I. DECLARATIONS

This Coverage Form is to be attached to and form a part of Policy Number: IPR 3757608-04

Item 1. **First Named Insured**: The Home Depot, Inc.

Item 2. Effective Date of Coverage Form: February 1, 2013

Item 3. Pending or Prior Date: February 1, 2001

Item 4. Retroactive Date: N/A

## II. INSURING CLAUSE

The Underwriter shall pay on behalf of the **Insured**, in excess of the Limits of Liability and Retained Amount as set forth in the Schedule of Underlying Insurance applicable to the coverage provided by this Coverage Form, all **Loss** the **Insured** becomes legally obligated to pay.

## III. DEFINITIONS

For purposes of the coverage provided by this Coverage Form:

A. **Event** means a **Claim** for any **Wrongful Act** occurring between the **Retroactive Date** and the end of the **Policy Period**.

B. The following definitions have the same definition as set forth in the **Controlling Policy** for this coverage: Claim, Wrongful Act, Defense Costs, and Insured.

## IV. EXCLUSIONS

In addition to the exclusions contained in the **Underlying Insurance Program** for this Coverage Form and the exclusions contained in the General Terms and Conditions, the following exclusions apply to the coverage provided by this Coverage Form:

A. The Underwriter shall not be liable for **Loss** which is based upon, arising out of, or attributable to any demand, suit or proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 3 of the Declarations of this Coverage Form, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

B. The Underwriter shall not be liable for **Loss** that is based upon, arising out of, or attributable to any **Event** which took place prior to the **Retroactive Date** applicable to each coverage.

## V. SCHEDULE OF UNDERLYING INSURANCE

### A. **Controlling Policy**

| Insurer | Policy Number | Self Insured Retention | | Limit of Liability | | Policy Term |
| | | Per Loss | Annual Aggregate | Per Loss | Term Aggregate | |
| --- | --- | --- | --- | --- | --- | --- |
| National Union Fire Insurance Company of Pittsburgh, PA | 01-615-83-36 | $10,000,000 | N/A | $25,000,000 | $25,000,000 | 2/1/2013 to 2/1/2014 |

### B. Other Policies

| Insurer | Policy Number | Limit of Liability | | Attachment Point | Policy Term |
| | | Per Loss | Term Aggregate | | |
| --- | --- | --- | --- | --- | --- |
| Zurich American Insurance Company | EPL 2976404-13 | $25,000,000 | $25,000,000 | $25,000,000 | 2/1/ 2013 to 2/1/2014 |

STF-GCSSG-EEPLF-001 Page 1 of 2

## VI. RELIANCE ON APPLICATION

The representations made in the **Controlling Application** listed below, including any materials submitted therewith are the basis of this Coverage Form and shall be deemed attached to and a part of this Coverage Form. The application and the information submitted therewith is considered physically attached to this Coverage Form and will be deemed incorporated herein.

For purposes of this Coverage Form, **Controlling Application** means the following application:

Insurer: American International Companies

Form Number: 77895(3/01)

Date Signed: 11/22/2009

Signatory: Rich Johnson (VP, Benefits)

_____          _____
Authorized Representative                                        8-20-13
                                                                          Date

## INTEGRATED INSURANCE POLICY

EXCESS FIDUCIARY LIABILITY COVERAGE FORM
CLAIMS MADE COVERAGE

I. DECLARATIONS

This Coverage Form is to be attached to and form a part of Policy Number: IPR 3757608-04

Item 1. **First Named Insured**: The Home Depot, Inc.

Item 2. Effective Date of Coverage Form: February 1, 2013

Item 3. Pending or Prior Date: March 1, 2007

Item 4. Retroactive Date: March 1, 2007

II. INSURING CLAUSE

The Underwriter shall pay on behalf of the **Insured**, in excess of the Limits of Liability and Retained Amount as set forth in the Schedule of Underlying Insurance applicable to the coverage provided by this Coverage Form, all **Loss** the **Insured** becomes legally obligated to pay.

III. DEFINITIONS

For purposes of the coverage provided by this Coverage Form:

A. **Event** means a **Claim** for any **Wrongful Act** occurring between the **Retroactive Date** and the end of the **Policy Period**.

B. The following definitions have the same definition as set forth in the **Controlling Policy** for this coverage: Claim, Wrongful Act, Defense Costs, and Insured.

C. **Insured** means those entities insured under the **Controlling Policy** of this Coverage Form.

IV. EXCLUSIONS

In addition to the exclusions contained in the **Underlying Insurance Program** for this Coverage Form and the exclusions contained in the General Terms and Conditions, the following exclusions apply to the coverage provided by this Coverage Form:

A. The Underwriter shall not be liable for **Loss** which is based upon, arising out of, or attributable to any demand, suit or proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 3 of the Declarations of this Coverage Form, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

B. The Underwriter shall not be liable for **Loss** that is based upon, arising out of, or attributable to any **Event** which took place prior to the **Retroactive Date** applicable to this coverage form.

V. SCHEDULE OF UNDERLYING INSURANCE

A. **Controlling Policy**

| Insurer | Policy Number | Self Insured Retention | | Limit of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| | | Per Loss | Annual Aggregate | Per Loss | Term Aggregate | |
| National Union Fire Insurance Company | 01-615-83-81 | $5,000,000 | N/A | $10,000,000 | $10,000,000 | 2/1/2013 to 2/1/2014 |

B. Other Policies

| Insurer | Policy Number | Limit of Liability | | Attachment Point | Policy Term |
|---------|---------------|----------|----------------|------------------|-------------|
| | | Per Loss | Term Aggregate | | |
| ACE American Insurance Company | DOX G21645278 011 | $10,000,000 | $10,000,000 | $10,000,000 | 2/1/2013 to 2/1/2014 |
| Freedom Specialty Insurance Company | XMF 1300323 | $10,000,000 | $10,000,000 | $20,000,000 | 2/1/2013 to 2/1/2014 |
| Arch Insurance Company | FDC0012778-07 | $10,000,000 | $10,000,000 | $30,000,000 | 2/1/2013 to 2/1/2014 |

## VI. RELIANCE ON APPLICATION

The representations made in the **Controlling Application** listed below, including any materials submitted therewith are the basis of this Coverage Form and shall be deemed attached to and a part of this Coverage Form. The application and the information submitted therewith is considered physically attached to this Coverage Form and will be deemed incorporated herein.

For purposes of this Coverage Form, **Controlling Application** means the following application:

Insurer: Global Leaders Renewal Application

Form Number: N/A

Date Signed: 10/22/2009

Signatory: Jim Bramlett (Director, Risk Management)

_____
Authorized Representative

8-20-13
_____
Date

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM - OCCURRENCE

I.  DECLARATIONS

This Coverage Form is to be attached to and form a part of Policy Number: IPR 3757608-04

Item 1. **First Named Insured**: The Home Depot, Inc.

Item 2. Effective Date of Coverage Form:  March 1, 2013

II.  INSURING AGREEMENT

The Underwriter shall indemnify the **Insured**, in excess of the Limits of Liability and Retained Amount as set forth in the Schedule of Underlying Insurance applicable to the coverage provided by this Coverage Form, for all **Loss** the **Insured** becomes legally obligated to pay.

This coverage applies to **Loss** only if prior to the **Policy Period**, no **Insured** knew that the **Loss** had occurred or was incurred, in whole or in part.  If an **Insured** knew, prior to the **Policy Period**, that a **Loss** occurred or was incurred, then any continuation, change or resumption of such **Loss** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period.**

**Loss** which occurs or is incurred during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred or to have been incurred by any **Insured** includes any continuation, change or resumption of that **Loss** after the **Policy Period**; and

**Loss** will be deemed to have been known to have occurred or to have been incurred at the earliest time when any **Insured**:

1.  Reports all, or any part, of the **Loss** to the Underwriter or any other insurer;
2.  Receives a written or verbal demand or claim for damages because of the **Loss**; or
3.  Becomes aware by any other means that **Loss** has occurred or has begun to occur.

III.  EXCLUSIONS

In addition to the exclusions contained in the **Underlying Insurance Program** for this Coverage Form and the exclusions contained in the General Terms and Conditions, this Coverage Form does not apply:

A.  Asbestos

to any obligation or  liability, damage, Loss, cost or expense arising out of or relating in any way to:

1.  Asbestos; or
2.  Any claim, **Suit** or proceeding arising out of or relating in any way to any demand, requirement, order, direction, determination, or request that the **Insured** or any other entity pay, repay or reimburse sums expended or to be expended to test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or
3.  Any claim, **Suit** or proceeding arising out of or relating in any way to any demand, requirement, order direction, determination or request that the **Insured**  or any other entity test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or
4.  Any sums that the **Insured** becomes legally obligated to pay as damages because of the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos.

B.  Electronic Data

to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **Electronic Data**.

C.  Employment Practices

to any obligation or liability incurred by or imposed upon any **Insured** arising out of the discrimination against or humiliation to any:

1.  current or former officer, director, or employee of any **Insured**, or
2.  applicant for employment by any **Insured,**

arising out of employment practices of any **Insured,** including wrongful discrimination, harassment, or dismissal or wrongful termination of any such officer, director, or employee or wrongful refusal to hire such applicant .

D.  Product Recall
to damages, whether incurred by any **Insured** or others arising out of the withdrawal, recall, inspection, repair, replacement, adjustment, removal, disposal or loss of use of any **Product** or **Work** completed by any **Insured** or of any property of which such **Product** or **Work** form a part, if such **Product, Work** or property are withdrawn from the market or from use by anyone because of any known or suspected defect, inadequacy, dangerous condition or deficiency therein.

E.  Laws, Miscellaneous
to any obligation or liability incurred by or imputed to or imposed upon any **Insured** or any carrier as any **Insured's** insurer under any:

1.  uninsured/underinsured motorist or auto no-fault or first party personal injury law or property damage law, or any other coverage similar to the foregoing;
2.  workers' compensation, unemployment compensation, or disability benefits law or any similar law; or
3.  Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended, or any similar state law.

F.  to **Personal and Advertising Injury**
1.  Caused by or at the direction of the **Insured**  with the knowledge that the act would violate the rights of another and would inflict **Personal** and **Advertising injury;**
2.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;
3.  Arising out of oral or written publication of material whose first publication took place before the beginning of the **Policy Period**;
4.  Arising out of a criminal act committed by or at the direction of any **Insured**;
5.  For which the **Insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.
6.  Arising out of a breach of contract, except an implied contract to use another's advertising idea in the **Insured's Advertisement**;
7.  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the **Insured's Advertisement**;
8.  Arising out of the wrong description of the price of goods, products or services stated in the **Insured's Advertisement**;
9.  Arising out of the infringement of copyright, patent, trademark, trade secret, trade dress, slogan or other intellectual property rights.
    However, this exclusion 9. does not apply to infringement of copyright, trade dress or slogan in the **Insured's Advertisement**;
10. Committed by an **Insured** whose business is:
    a. Advertising, broadcasting, publishing, electronic publishing or telecasting;
    b. Designing or determining content of web-sites for others; or
    c. An Internet search, access or content provider.
    However, this exclusion 10. does not apply to sub-paragraphs **J., 1, 2** and **7** of **Personal and Advertising Injury** under Section IV. DEFINITIONS.
    For purposes of this exclusion 10., the placing of frames, borders or links, or advertising, for the **Insured** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting;
11. Arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns or over which the **Insured** exercises control; or
12. Arising out of the unauthorized use of another's name or product in the **Insured's** e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

G. Pollution
1.  to any obligation or liability incurred by or imposed upon any **Insured** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, exposure to, release or escape of **Pollutants,** anywhere in the world, regardless of whether caused or intended by any **Insured** or any other person;
2.  to any damages, loss, cost or expense arising out of any governmental direction or request that any **Insured,** the Underwriter or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize **Pollutants;**
3.  to any damages, loss, cost or expense including but not limited to costs of investigation and attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, cleanup, remove,

contain, treat, detoxify or neutralize **Pollutants;** or

4. to any obligation to investigate, defend or settle any suit or claim against any **Insured** alleging any damages arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, exposure to, release or escape of **Pollutants,** anywhere in the world, regardless of whether caused or intended by an **Insured** or any other person.

**Pollutants** means any solid, liquid, gaseous, thermal or sonic irritant or contaminant, or toxic substances, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes any materials which are intended to be or have been recycled, reconditioned or reclaimed.

H. to **Property Damage** to:

1. Property any **Insured** owns, rents or occupies;
2. Premises any **Insured** sells, gives away or abandons, if the **Property Damage** arises out of any part of those premises;
3. Property loaned to any **Insured**;
4. Personal property in any **Insured's** care, custody or control;
5. That particular part of real property on which any **Insured** or any of **Insured's** contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations, if the **Property Damage** arises out of those operations;
6. That particular part of any property that must be restored, repaired or replaced because **Work** was incorrectly performed on it;
7. **Products** arising out of it or any part of it;
8. **Work** arising out of it or any part of it and included in the **Products Hazard** or **Completed Operations Hazard**;
9. **Impaired Property** or property that has not been physically injured arising out of:
   a. A defect, deficiency, inadequacy or dangerous condition in any **Products** or **Work**; or
   b. A delay or failure by any **Insured** or anyone acting on any **Insured's** behalf to perform a contract or agreement in accordance with its terms.

Paragraph 2 of this exclusion does not apply if the premises are **Work** and were never occupied, rented or held for rental by any **Insured**.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included in the **Completed Operations Hazard**.

Paragraph 8 of this exclusion does not apply if the damaged **Work** or the **Work** out of which the damage arises was performed on **Insured's** behalf by a sub-contractor.

Paragraph 9 of this exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Insured's Products** or **Work** after it has been put to its intended use.

I. Securities Laws

to any obligation or liability incurred by or imposed upon any **Insured** arising out of or based upon a violation or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisers Act of 1940, each as amended, state "Blue Sky" or securities laws, or any regulation issued pursuant to any of the foregoing;

J. Silica or Silica Mixed Dust

1. to any liability, damage, loss, cost or expense caused directly or indirectly, in whole or in part, by the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of **Silica**; or
2. to any liability, damage, loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of **Silica** by any **Insured** or by any other person or entity.

K. Violation of Communication or Information Law

to any liability, damage, loss, cost or expense resulting from or arising out of any actual or alleged violation of:

1. the federal Telephone Consumer Protection Act (47 U.S.C. § 227), Drivers Privacy Protection Act (18 U.S.C. § 2721-2725) or Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. § 7701,

STF-GCSSG-ELF-001(3/2008) Page 3 of 8

et seq.); or

2. any other federal, state or local statute, regulation or ordinance that imposes liability for the:

   a. Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or

   b. Unlawful use, collection, dissemination, disclosure or re-disclosure of personal information in any manner by any **Insured** or on behalf of any **Insured**.

L. War

to any obligation or liability incurred by or imposed upon any **Insured**, directly or indirectly occasioned by, happening through, or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military terrorism, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## IV. DEFINITIONS

For purposes of the coverage provided by this Coverage Form:

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about the **Insured's** goods, products or services for the purpose of attracting customers or supporters. For purpose of this definition:

1. notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about the **Insured's** goods, products or services for the purpose of attracting customers or supporters is considered an **Advertisement**.

B. **Bodily Injury** means physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress.

C. **Claim** means a notice received by **Insured** of an intention to hold the **Insured** liable for an **Event**.

D. **Completed Operations Hazard** means **Bodily Injury** and **Property Damage** arising out of operations or reliance upon a representation or warranty made by an **Insured** at any time with respect to operations, but only if the **Bodily Injury** or **Property Damage** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **Insured.** Operations include materials, parts or equipment furnished therewith.

Operations shall be deemed completed at the earliest of the following times:

1. when all operations to be performed by or on the **Insured's** behalf under the contract have been completed;

2. when all operations to be performed by the **Insured** or on the **Insured's** behalf at the site of the operations have been completed; or

3. when the portion of the work out of which the **Bodily Injury** or **Property Damage** arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Operations which may require further service or maintenance work, or correction, repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard shall not include **Bodily Injury** or **Property Damage** arising out of-

1. operations in connection with the transportation of property, unless the **Bodily Injury** or **Property Damage** arises out of a condition in or on a vehicle created by the loading or unloading thereof; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials;

E. **Defense Costs** means:

1. all premiums on either appeal bonds required in any such defended **Claim** or **Suit** or bonds to release attachments, for any penal sum not in excess of the applicable limit of liability of this policy, but without any obligation to apply for or furnish such bonds;

2. all costs against the **Insured** in any such **Claim** or **Suit**;

3. all expenses incurred by Underwriter in the defense of such **Claim** or **Suit**;

4. all interest accruing after entry of judgement until Underwriter has paid, tendered or deposited in court that part of any judgement that does not exceed the limit of Underwriter's liability;

5. all reasonable expenses incurred by the **Insured** at Underwriter's request (including actual loss of wages or salary, but not loss of the other income, not to exceed $100 per day) because of the **Insured's** attendance at hearings or trials at such request; and

6. all pre-judgement interest awarded against the **Insured** on that part of the judgement Underwriter pays. But if Underwriter makes an offer to pay the applicable limit of insurance under this policy, Underwriter will not

pay any pre-judgement interest based on that period of time after the offer.

Notwithstanding anything expressed herein to the contrary, **Defense Costs** shall not include any fees paid or payable to loss adjustors or to third party claims administrators for the handling of **Claims**, where such fees are not allocable to a specific **Claim**.

F. **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

G. **Event** means **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** occurring during the **Policy Period**, caused by an **Occurrence** to which this insurance applies.

H. **Impaired Property** means tangible property, other than **Products** or **Work**, that cannot be used or is less useful because:

    1. It incorporates **Product(s)** or **Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    2. Any **Insured** has failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

        a. The repair, replacement, adjustment or removal of any **Product** or **Work**; or

        b. The **Insured** fulfilling the terms of the contract or agreement.

I. **Insured** means those persons and entities insured under the **Controlling Policy** for this Coverage Form.

J. **Occurrence** means

    1. With respect to **Bodily Injury** or **Property Damage** liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    2. With respect to **Personal** and **Advertising Injury**, a covered offense. All damages that arise from the same act, publication or general conditions are considered to arise out of the same occurrence, regardless of the frequency or repetition thereof, the number or kind of media used or the number of claimants.

K. **Personal and Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

    1. false arrest, wrongful detention, false imprisonment, or malicious prosecution;

    2. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

    3. oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, **Products** or services;

    4. oral or written publication, in any manner, of material that violates a person's right of privacy;

    5. the use of another's advertising idea or style of doing business in the **Insured**'s **Advertisement**;

    6. infringement upon another's copyright, trade dress or slogan in the **Insured**'s **Advertisement**; or

    7. discrimination (unless insurance thereof is prohibited by law), not arising out of or related to employment practices.

**Personal and Advertising Injury** also means mental anguish, mental injury, humiliation, or shock, if directly resulting from an offense listed in items 1. through 7. above.

L. **Products** means any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by the **Insured** or by others trading under an **Insured's** name, including any container thereof (other than a vehicle), but **Products** shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

M. **Products Hazard** means **Bodily Injury,** or **Property Damage** arising out of the **Insured's Products** or reliance upon a representation or warranty with respect thereto, but only if the **Bodily Injury** or **Property Damage** occurs away from premises owned by or rented to an **Insured** and after physical possession of the **Products** has been relinquished to others.

N. **Property Damage** means:

    1. physical injury to or destruction of tangible property, including loss of use thereof at any time resulting therefrom; or

    2. loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence to which this insurance applies.

O. **Silica** means:
1. Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or
2. Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

P. **Suit** means a civil proceeding alleging an **Event** to which this insurance applies. **Suit** includes:
1. an arbitration proceeding alleging such damages to which an **Insured** must submit or submits with the Underwriter's consent; or
2. any other alternative dispute resolution proceeding alleging such damages to which the **Insured** submits with the Underwriter's consent.

Q. **Work** means:
1. Work or operations performed by an **Insured** or on an **Insured's** behalf; and
2. Materials, parts or equipment furnished in connection with such work or operations noted in 1. above.

**Insured's Work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in 1. or 2. above.

## V. SCHEDULE OF UNDERLYING INSURANCE

A. **Controlling Policy** or Policies

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| General Liability including Products and Completed Operations - US, PR, USVI & Guam | Steadfast Insurance Company | GLO 4887714-03 | $1,000,000 | $9,000,000 $9,000,000 $9,000,000 $9,000,000 $9,000,000 | Each Occurrence General Aggregate Products Aggregate Personal Injury Fire Damage | 3/1/13 to 3/1/14 |
| General Liability Including Products and Completed Operations - US, PR, USVI & Guam | Self Insured Retention | NA | NA | $15,000,000 excess of $10,000,000 | Per Loss, NIL Aggregate | 3/1/13 to 3/1/14 |
| Automobile Liability - (All States – U.S. & Guam) | Zurich American Insurance Company | BAP 2938863-10 | Deductible $1,000,000 | $1,000,000, | Per Loss | 3/1/13 to 3/1/14 |
| Automobile Liability Excess - (All States – U.S. & Guam) | HomeRisk Assurance Ltd. | 297-1-10011-00-2012 | N/A | $9,000,000 excess of $1,000,000 | Per **Loss** | 3/1/13 to 3/1/14 |

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| Employer's Liability Guam | Tokio Marine Pacific Insurance Ltd. | WC000000 404 | N/A | $1,000,000 $1,000,000 $1,000,000 | Each Accident Each Employee Policy Limit | 6/1/12 to 6/1/13 |
| Employer's Liability AL,AR,DC,DE,HI, IA,ID,IN,KS,LA, MD,ME,MN,MO, MS,MT,NE,NM, NY,OK,RI,SC,SD, TN,VA,WV (AOS) | New Hampshire Insurance Company | WC 033575314 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability WI | New Hampshire Insurance Company | WC 033575319 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability AK,AZ | New Hampshire Insurance Company | WC 033575315 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability CA,CO,CT,GA,IL, MI,ND,NV,OH,OR, PA,UT,WA,WY | National Union Fire Insurance Company | WC 6636191 | $1,000,000 SIR | $5,000,000 $5,000,000 | Each Accident Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability MA | National Union Fire Insurance Company | WC 6636192 | $500,000 SIR | $4,500,000 $4,500,000 | Each Accident Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability FL | Illinois National Insurance Company | WC 033575316 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability KY,NC,NH,VT | New Hampshire Insurance Company | WC 033575317 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability NJ | New Hampshire Insurance Company | WC 033575318 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| Automobile Liability Canada | Zurich Insurance Company Ltd. | 9801176 | CDN $250,000 SIR | $5,500,000 Canadian | Combined Single Limit | 3/1/13 to 3/1/14 |
| General Liability & Hired and Non-Owned Automobile Liability Canada | Zurich Insurance Company Ltd. | 8838254 | $500,000 SIR | $9,500,000 $9,500,000 Excess of SIR | Each Occurrence Products & Completed Operations Aggregate | 3/1/13 to 3/1/14 |
| Foreign Commercial General Liability | The Insurance Company of the State of Pennsylvania | 80-0271455 | N/A | $1,000,000 $2,000,000 $2,000,000 | Each Occurrence General Aggregate Products & Completed Operations Aggregate | 3/1/13 to 3/1/14 |
| Foreign Hired Owned & Non-Owned Auto Liability | | | | $1,000,000 | Per Accident | |
| Foreign Employee Benefits Liability | | | | $1,000,000 $1,000,000 | Each Wrongful Act Annual Aggregate | |
| Foreign Voluntary WC / EL | The Insurance Company of the State of Pennsylvania | 83-70180 | N/A | $1,000,000 | Each Occurrence | 3/1/13 to 3/1/14 |
| Aircraft Liability | United States Aviation Underwriters, Inc. | SIHL1-105Q | N/A | $200,000,000 | Each Occurrence | 4/1/12 to 4/1/13 |

The title and any headings in this coverage form are solely for convenience and form no part of the terms and conditions of coverage.

_Jodel Auns_            _8-20-13_

Authorized Representative            Date

**TEXAS EMPLOYERS LIABILITY COVERAGE FORM**

OCCURRENCE COVERAGE

I.  D E C L A R A T I O N S

This Coverage Form is to be attached to and form a part of Policy Number: IPR 3757608-04

Item 1.  Named Insured: The Home Depot, Inc.

Item 2.  Effective Date of Coverage Form: March 1, 2013

II.  I N S U R I N G  C L A U S E

The Underwriter shall indemnify the **Insured**, in excess of the Limits of Liability and Retained Amount as set forth in the Schedule of Underlying Insurance applicable to the coverage provided by this Coverage Form, for all **Loss** the **Insured** becomes legally obligated to pay.

III.  D E F I N I T I O N S

For purposes of the coverage provided by this Coverage Form:

As Per Controlling Policy

IV.  E X C L U S I O N S

In addition to the exclusions contained in the **Underlying Insurance Program** for this Coverage Form and the exclusions contained in the General Terms and Conditions and Excess Liability Coverage Form of this policy, the following exclusions apply to the coverage provided by this Coverage Form: Nil

V.  S C H E D U L E  O F  U N D E R L Y I N G  I N S U R A N C E

A. **Controlling Policy** or Policies

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | Policy Term |
|---|---|---|---|---|---|
| Texas Employers Excess Indemnity Insurance | Illinois Union Insurance Company | TNS C47311640 | $1,000,000 | $30,000,000 Each Accident $10,000,000 Each Employee $30,000,000 Policy Aggregate | March 1, 2013 to March 1, 2014 |

_Todd Cunn_____

Authorized Representative

8-20-13

Date

Page 1 of 1



**ZURICH**

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

**$17,083.00**

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Disclosure of Premium
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines of insurance subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

### B. Disclosure of Federal Participation in Payment of Terrorism Losses
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention. The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA. TRIA is scheduled to expire on December 31, 2014.

### C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

### D. Availability
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

### E. Definition of Act of Terrorism under TRIA
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
  1. to be an act of terrorism;
  2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
  3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
  4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

U-GU-630-C (12/07)
Page 1 of 1

**INTEGRATED INSURANCE POLICY**

OTHER ACTS OF TERRORISM EXCLUSION ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 1

Effective Date of Endorsement: March 1, 2013

It is agreed that:

Notwithstanding anything expressed in this policy to the contrary:

This policy does not apply to any liability, damage, loss, cost or expense arising, directly or indirectly, out of an **Other Act of Terrorism**, including any action taken in hindering or defending against an actual or expected **Other Act of Terrorism**.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the liability, damage, loss, cost or expense.

For purposes of the exclusion, the following additional definitions apply:

1. **Other Act of Terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, but that is not a **Certified Act of Terrorism**. Multiple incidents of an **Other Act of Terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one **Other Act of Terrorism**.

2. **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA"). The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:
      i. Within the United States (including its territories and possessions and Puerto Rico); or
      ii. Outside of the United States in the case of:
         1. An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or
         2. The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions remain unchanged

The title and headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd Cunningh_                                    _8-20-13_
Authorized Representative                              Date

STF-GCSSG-GENL-115-A Page 1 of 1

**INTEGRATED INSURANCE POLICY**

NAMED INSURED INDEMNIFICATION ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 2

Effective Date of Endorsement: March 1, 2013

It is agreed that the General Terms and Conditions are amended as follows:

1.  Section I., "General Insuring Agreement", is amended by adding the following:

    Coverage under this policy does not apply to any **Insured** in a **Non-Admitted Jurisdiction**; however, the Underwriter shall indemnify the **First Named Insured** for sums that the **First Named Insured** has agreed to indemnify or reimburse a **Qualified Entity** for said **Qualified Entity's** loss to which this insurance would apply if the **Qualified Entity** were an **Insured** under this policy.

    A **Qualified Entity** is not an **Insured** under this policy.

2.  Section II, "Definitions," is amended by adding the following:

    S. **Non-Admitted Jurisdiction** means any country or political subdivision in which the Underwriter is not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction.

    T. **Qualified Entity** means any entity, person or organization that would qualify as an **Insured** under this policy, but for the fact that the entity is registered, domiciled or has ongoing operations in a **Non-Admitted Jurisdiction(s)**.

3.  Section IV, "General Conditions and Limitations," is amended by adding the following:

    U. Duties as respects claims or suits in a **Non-Admitted Jurisdiction**

    The duties and requirements imposed upon any **Insured** under this policy shall not apply in any **Non-Admitted Jurisdiction**. However, with respect to any claim made or suit brought in a **Non-Admitted Jurisdiction** that would otherwise be covered by this policy but for the **Non-Admitted Jurisdiction** exclusion of this policy, it shall be the duty of the **First Named Insured** to do or to cause the applicable **Qualified Entity** to comply with the duties and requirements of this policy.

    Upon determination of a **Qualified Entity's** loss, the Underwriter will promptly indemnify the **First Named Insured** amounts due for the **Qualified Entity's** loss.

    If the **First Named Insured** or any **Qualified Entity** recovers from any third party all or part of any amount that the Underwriter has paid pursuant to this endorsement, the **First Named Insured** shall promptly reimburse the amount of any such recovery to the Underwriter.

All other terms and conditions remain unchanged.

The title and headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd Cunning_
Authorized Representative

_8·20–13_
Date

STF-GCSSG-MIP-101 (4/16/2008) Page 1 of 1

**INTEGRATED INSURANCE POLICY**

NUCLEAR EXCLUSION ENDORSEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 3

Effective Date of Endorsement:  March 1, 2013

It is agreed that:

The following exclusion is added to the General Terms and Conditions:

The Underwriter shall not be liable for **Loss**:

A.  with respect to which any **Insured** under this policy is also insured under any nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limits of insurance;

B.  resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which:

   1.  any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   2.  any **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

C.  resulting from the **Hazardous Properties** of Nuclear Material, if:

   1.  the **Nuclear Material**:

      (a)  is at any **Nuclear Facility** owned by, or operated by or on behalf of any **Insured**; or

      (b)  has been discharged or dispersed therefrom;

   2.  the **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any **Insured**; or

   3.  the injury or damage arises out of furnishing by any **Insured** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion C(3.) applies only to damage to such **Nuclear Facility** and any property thereat.

When used in this exclusion:

A.  **Hazardous Properties** includes radioactive, toxic or explosive properties.

B.  **Nuclear Material** means **Source Material**, **Special Nuclear Material** or **By-Product Material**.

C.  **Source Material**, **Special Nuclear Material** and **By-Product Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

D.  **Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

E.  **Waste** means any waste material:

   (a)  containing **By-Product Material** other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content; and

   (b)  resulting from the operation by any person or organization of any **Nuclear Facility** included under paragraphs (a) and (b) of the definition of **Nuclear Facility**.

F.  **Nuclear Facility** means:

   (a)  any **Nuclear Reactor**;

   (b)  any equipment or device designed or used for:

      i.  separating the isotopes of uranium or plutonium;

      ii.  processing or utilizing **Spent Fuel**; or

      iii.  handling, processing or packaging **Waste**.

   (c)  any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material**, if at any time the total amount of such material in the custody of any **Insured** at the premises where such equipment or device is located, consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

STF-GCSSG-GENL-114  Page 1 of 2

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

G. **Nuclear Reactor** means any apparatus designed or used to sustain a nuclear fission or nuclear fusion in a self-supporting chain reaction or to contain a critical mass of fissionable or fusionable material.

For purposes of this exclusion, "property damage" includes all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd Cang_
Authorized Representative

_8 - 20 - 13_
Date

**INTEGRATED INSURANCE POLICY**

PREMIUM ADJUSTMENT ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 4

Effective Date of Endorsement: March 1, 2013

It is agreed that the General Terms and Conditions are amended by the addition of the following:

The **Annual Period** premium designated in Item 4 of the **Declarations** is the initial premium for the first **Annual Period**. The premium for each subsequent **Annual Period** shall be calculated as follows:

Premium from the previous **Annual Period** * (1 + **Exposure Adjustment** applicable to the new **Annual Period**), whereas

**Exposure Adjustment** means the sum of the weighted percent changes in the **Exposure Units** between the previous **Annual Period** and the new **Annual Period**, provided that the exposure adjustment shall never be less than zero; and

**Exposure Units** means the variables listed in the Exposure Units table below:

Exposure Units (applicable to multi-year policies only)

| Unit # | Unit Definition | Weight | Source of **Exposure Unit** Values | | |
|---|---|---|---|---|---|
| | | | At the inception of the **Policy Period** | Applicable to the second **Annual Period** | Applicable to the third **Annual Period** |
| 1 | Transactional Count | 100% | 10-K for the fiscal year ending February 3, 2013 (1,364,000,000 – 2012 Transaction Count) | 10-K for the fiscal year ending February 3, 2014 | 10-K for the fiscal year ending February 3, 2015 |

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_8-20-13_
Date

STF-GCSSG-GENL-101  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

PROPERTY MANUSCRIPT FORM EXCLUSION OF LOSS RESULTING FROM CERTIFIED ACTS OF TERRORISM WITH EXCEPTIONS AND SUB-LIMITS ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 5

Effective Date of Endorsement:  March 1, 2013

# Exclusion of Loss Resulting from Certified Acts of Terrorism with Exceptions and Sub-Limits

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

The following exclusion and limitations apply to all **Loss** or damage under all coverage(s) of the policy and for all locations (whether or not identified in this endorsement).

**A.** **Terrorism Exclusion**

We will not pay for **Loss** or damage caused directly or indirectly by a "certified act of terrorism", including action in hindering or defending against an actual or expected "certified act of terrorism".  Such **Loss** or damage is excluded regardless of any other cause or **Event** that contributes concurrently or in any sequence to the **Loss**.

**B.** **Exceptions to the Terrorism Exclusion**

1. **Fire Following Exception.**  If the "certified act of terrorism" results in fire, we will pay for the direct physical **Loss** or damage to Covered Property caused by that fire.  This exception does not apply to any other **Loss** or damage including but not limited to business income, extra expense, any additional coverage and any coverage extension.  Regardless of the method of valuation otherwise stated for the property, we will value the property subject to this exception at actual cash value.

2. **Scheduled Locations Exception.**  If locations are identified in the Schedule of Locations of this endorsement, the Terrorism Exclusion does not apply to **Loss** or damage at those locations.

**C.** **Sub-Limits of Insurance Applicable to Terrorism**

These sub-limits apply to all **Loss** or damage resulting from a "certified act of terrorism" to which  the Terrorism Exclusion does not apply for any reason, whether by application of an exception or otherwise, and for which the policy provides coverage.  Our total payment(s) for **Loss** or damage caused directly or indirectly by a "certified act of terrorism", regardless of any other cause or **Event** that contributes concurrently or in any sequence to the "certified act of terrorism", shall not exceed the lesser of the applicable limit(s), including sub-limits, stated in the policy or:

1. For the total amount of all **Loss** or damage at a location identified in the Schedule of Locations of this endorsement, the applicable scheduled sub-limit stated in this endorsement for that location.

2. For direct physical **Loss** or damage to building and personal property at all other locations, the applicable Sub-Limit for All Other Locations stated in this endorsement.

3. For the total amount of all **Loss** or damage in any one policy year under all coverage(s) regardless of the number of locations involved or number of "certified acts of terrorism", the Annual Aggregate Limit stated in this endorsement.

**Schedule of Locations**

| Location | Sub-Limit per "certified act of terrorism" |
|---|---|
| 1. All Locations | $ NCP |
| 2. | $ |
| 3. | $ |
| 4. | $ |
| 5. | $ |

**Sub-Limit for All Other Locations:** $2,500,000 in the aggregate per "certified act of terrorism".

**Annual Aggregate Limit:** $2,500,000 regardless of the number of "certified acts of terrorism".

D. **Deductibles**

We will not pay for any otherwise covered **Loss** or damage subject to the sub-limits of this endorsement until the amount of that **Loss** or damage exceeds the applicable deductible(s) stated in this endorsement. We will then pay the amount of that **Loss** or damage in excess of the deductible(s) up to the applicable sub-limit of insurance. The deductible amounts are:

1. For **Loss** or damage at locations identified in the Schedule of Locations of this endorsement, $_____ per location for each "certified act of terrorism".

2. For all other locations: $_____ per location and for each "certified act of terrorism".

If no amount appears in the applicable line, the policy deductible(s) apply.

E. **Definition**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA"). The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if **Loss**es resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

**F.**     **Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

**G.**     **Cap on Losses From Certified Acts of Terrorism**

If aggregate **Insured Loss**es attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such **Loss**es that exceeds $100 billion, and in such case **Insured Loss**es up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
8-20-13
Date

**INTEGRATED INSURANCE POLICY**

PROPERTY MANUSCRIPT FORM  STANDARD MORTGAGE CLAUSE ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 6

Effective Date of Endorsement:  March 1, 2013

The following provisions are hereby attached to and made part of this Policy:

### STANDARD MORTGAGE CLAUSE

Loss or damage, if any under this Policy, shall be payable to the mortgagees (or trustees), as designated by endorsement or by certificates of insurance, and this insurance , as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Policy.  Provided that in the case of mortgagor or owner neglect to pay any premium due under this Policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also, that the mortgagee (or trustee) shall notify Insurers of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgage (or trustee), and unless permitted by this Policy, it shall be noted hereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this Policy shall be null and void.

Insurers reserve the right to cancel this Policy at any time as provided by its terms, but in such case this Policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten (10) days after notice to the mortgagee (or trustee) of such cancellation, and shall then cease, and Insurers shall have the right, on like notice, to cancel this agreement.

Whenever Insurers shall pay the mortgagee (or trustee) any sum for loss or damage under this Policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, Insurers shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due, or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of the mortgagee's (or trustee's) claim.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

8-20-13
_____
Date

STF-GCSSG-GENL-101  Page 1 of 1

## INTEGRATED INSURANCE POLICY

PROPERTY MANUSCRIPT FORM INSURED'S OBLIGATION AS INSURER ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 7

Effective Date of Endorsement: March 1, 2013

The following provisions are hereby attached to and made part of this Policy:

### INSURED'S OBLIGATION AS INSURER

Notwithstanding any provision(s) to the contrary within this policy or any endorsement(s) attached thereto, it is understood and agreed as follows:

If the Insured places property insurance in layers and retains for its account part or all of any layer excess of the deductible, then the insured agrees to accept all obligations of an insurer in that share. These obligations include, without limitation, the sequential exhaustion of underlying layers, funding of claim-related expenses, handling of subrogation, treatment of other insurance, and protection of excess layers. The insured agrees to adopt and apply the policy wordings of any commercial co-insurers in any layer in which it participates, or if there are no co- insurers in that layer, then the insured agrees to adopt and apply the policy wordings of the commercial insurers in the underlying layer(s). The insured waives any claim that it is anything but a true insurer for its share of any layer.

Where applicable relative to contributing insurance policy(s) described above, in the event the Insured is providing contributing or self-insurance in any of the layer(s) of insurance, and such other contributing insurance policies contain aggregate limits of liability, the Insured's contributing or self insurance for those coverages shall be deemed to be aggregated also.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd Cump_
Authorized Representative

_8-20-13_
Date

STF-GCSSG-GENL-101   Page 1 of 1

**INTEGRATED INSURANCE POLICY**

PROPERTY MANUSCRIPT FORM CANCELLATION CLAUSE AMENDED ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 8

Effective Date of Endorsement: March 1, 2013

The following provisions are hereby attached to and made part of this Policy:

## CANCELLATION CLAUSE AMENDED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the **CANCELLATION CLAUSE** of this Policy is amended by adding the following paragraph to the end thereof:

> Notwithstanding the foregoing, in the event that a financial strength rating is issued (1) below A- by A.M. Best Co., or (2) below BBB by Standard & Poor's Ratings Services (hereinafter "Credit Rating Downgrade") for the **Company**, or it's parent company or corporation, this policy may be canceled by the **Named Insured**. If this Policy is canceled by the **Named Insured** after such Credit Rating Downgrade, the **Company** shall retain the pro rata proportion of the premium herein and promptly return the unearned premium

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
8-20-13
Date

STF-GCSSG-GENL-101    Page 1 of 1

**INTEGRATED INSURANCE POLICY**

PROPERTY MANUSCRIPT FORM MISCELLANEOUS UNNAMED LOCATIONS ENDORSEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 9

Effective Date of Endorsement:  March 1, 2013

The following definition is hereby attached to and made part of this Policy:

**Miscellaneous Unnamed Locations** shall mean the Insured's interest in covered property at any location which is not specifically on file, identified, or scheduled by the Underwriters.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____8-20-13_____
Date

STF-GCSSG-GENL-101  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

PROPERTY MANUSCRIPT FORM MOLD, FUNGUS, WET and DRY ROT and BACTERIA EXCLUSION
ENDORSEMENT

**First Named Insured:**  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 10

Effective Date of Endorsement:  March 1, 2013

The following provisions are hereby attached to and made part of this Policy:

### Mold, Fungus, Wet and Dry Rot and Bacteria Exclusion

This policy does not insure any **Loss**, damage or expense consisting of, caused by, contributed to, or aggravated by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of temperature or humidity, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such **Loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **Loss**. If **Loss** otherwise covered by this policy occurs and the cost of removal of debris is increased due to the presence of rust, mold, moss, fungus, bacterial infestation, wet or dry rot and extremes of temperature or humidity, this policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the covered property to be removed.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd _____                    8-20-13
Authorized Representative                 Date

STF-GCSSG-GENL-101  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

PROPERTY – INFORMATION TECHNOLOGY HAZARDS (RISK) EXCLUSION CLAUSE - ENDORSEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 11

Effective Date of Endorsement: March 1, 2013

**INFORMATION TECHNOLOGY HAZARDS (RISK) EXCLUSION CLAUSE - NMA2928**

Losses arising, directly or indirectly, out of:

(i) loss of, alteration of, or damage to

or

(ii) a reduction in the functionality, availability or operation of

a computer system, hardware, programme, software, data, information repository, microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the policyholder of the reinsured or not, are excluded hereon unless arising out of one or more of the following perils:

fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, cyclone, hurricane, earthquake, volcano, tsunami, flood, freeze or weight of snow.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd Ceno_
Authorized Representative

_8 - 20 - 13_
Date

STF-GCSSG-GENL-101  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

PROPERTY - ABSOLUTE TERRORISM EXCLUSION (FOREIGN LOCATIONS) ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 12

Effective Date of Endorsement: March 1, 2013

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided by:

Steadfast Insurance Company

**If any other terrorism exclusion is attached to this Policy, this endorsement may completely bar coverage even if the other terrorism exclusion attached to this Policy does not apply because of an exception to that other exclusion.**

**The following is added to the Exclusion section of the Policy:**

We will not pay for any loss or damage caused directly or indirectly, in whole or in part, by **Terrorist Activity** or any activity or decision of a governmental agency or other entity to prevent, respond to or terminate **Terrorist Activity.**  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**Terrorist Activity**, as used in this endorsement, means:

1.      Any act which is unlawful under the laws of the place where it is committed and which involves any of the following:

    a. The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

    b. The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

    c. A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

    d. An assassination.

    e. The use of any—

        (1)      biological agent, chemical agent, or nuclear weapon or device, or

        (2)      explosive or firearm (other than for mere personal monetary gain),

with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

f.  A threat, attempt, or conspiracy to do any of the foregoing.

g.  Any act or acts deemed or declared by any government official, law enforcement agency, intelligence agency, or other public authority to be terrorism or terrorist act(s).

and

2.  The act or loss resulting from the act takes place anywhere in the **coverage territory** unless both the act and the subject loss take place:

a.  within the United States;

b.  on or to an air carrier (as defined in section 40102 of title 49, United States Code);

c.  on or to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

d.  at the premises of a United States mission.

All other terms and conditions remain unchanged.

The title and headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

| _____ | _____ |
| Authorized Representative | Date |

8-20-13

UGU-641-A (12/02)
Page 2 of 2

Exhibit B - 86

**INTEGRATED INSURANCE POLICY**

INTERNTAIONAL PROPERTY ENDORSEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 13

Effective Date of Endorsement: March 1, 2013


**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


This Endorsement modifies insurance provided under the policy.

1.      Declarations- Territory of the Insuring Agreement the following is added:

Loss or damage to locations in a **Prohibited Jurisdiction** is not covered under this policy:

**Prohibited Jurisdiction** means any country or political subdivision, outside the United States of America and its territories and possessions, in which we are not allowed to insure risks and where doing so would violate the insurance laws and regulations of such country or political subdivision.

2. The Limits of Liability Sections of the policy are amended to include the following:

1.  Overall International Insurance Program Limit and Sub-Limits of Insurance

In consideration of the payment of the premium for your international insurance program, you and we agree that for the purpose of the application of the Limit of Insurance and any of the Sub-Limits of Insurance under this policy, the total sum of loss that could be payable for the same, **occurrence** under:

a.      this policy;
b.      local policy(ies); and the
c.      **FoS(Freedom of  Services) policy(ies)**,

or any combination of the above mentioned policies (a., b. and c. hereafter referred to collectively as "the Polices") cannot exceed the applicable limits as shown in the Limits of Liability Sections of this policy.


**3**. Property Damage – Section B:

This section is revised to add the following:


Additional first Named Insured Coverage

1. Notwithstanding any provision to the contrary, we will pay for loss in a **Prohibited Jurisdiction,** only to the first Named Insured as respects its insurable interest and only to the extent the loss is not otherwise insured, provided:

    a.    The local law in the **Prohibited Jurisdiction** prohibits coverage under or payment for loss under Non-Admitted Insurance, Difference In Conditions Insurance, or Difference In Limits Insurance; and

    b.    The loss is a result of direct physical loss or damage caused by a **covered cause of loss** to Property of the type insured according to the terms and conditions of this policy and that physical loss or damage would give rise to a claim under this policy if it occurred in the Coverage Territory.

    c.    The most we will pay under this Coverage is the amount that would have been payable under this Policy if local law allowed coverage under or payment for loss under Non-Admitted Insurance, Difference In Conditions Insurance, or Difference In Limits Insurance.

2. In the event of loss payable to the first Named Insured as described above, the applicable subsidiary where the physical loss or damage occurs shall be required to comply with all the provisions under Loss Conditions section of this policy.

3. Any subsidiary(ies) located in any **Prohibited Jurisdiction** where local law prohibits coverage under or payment for loss under Non-Admitted Insurance, Difference In Conditions Insurance, or Difference In Limits Insurance, are not parties to or beneficiaries under this policy and have no rights under it.

4. In the event of loss in a **Prohibited Jurisdiction** payable under this provision, the first Named Insured shall pay us an amount equal to its share of any recoveries made by or on behalf of any subsidiary as if the first Named Insured had received such recoveries, or payment to the first Named Insured under this policy shall be reduced by the recoveries made by or on behalf of any subsidiary.

5. We will pay no more than the applicable sub–limit(s) of insurance indicated in the Limits of Liability sections of the policy for the first Named Insured Additional Coverage.

    **Covered Cause of Loss** means all risks of direct physical loss or damage, unless excluded.

**4**. The General Provisions Section of the policy is amended to include the following:

International Insurance Program Structure

This policy is part of an international insurance program. This program arrangement is a compilation of different policies, which all have one common goal: to cover you as agreed to in this policy.

Therefore, you agree to special clauses regarding limits and deductibles with us, considering the overall intent of your international insurance program.

The following policies may be part of your international insurance program:

- this policy
- local policy(ies)
- **FoS (Freedom of Services) policy(ies)**

**FoS (Freedom of Services) Policy** means a policy which only covers risks and locations in the **EEA. EEA** means the European Economic Area; within this area, free provision of services in all countries without any additional insurance license is allowed.

Special Conditions regarding Aggregation

In the event that the total sum of payments for loss under "the Policies" for the same **occurrence** exceeds the applicable Limit of Insurance or any applicable Sub-Limits of Insurance under this policy, you agree to reimburse us for any amount that we pay that exceeds such Limit of Insurance or Sub-Limit of Insurance.

Any amount due under the terms of this clause shall be paid within 28 days of notice from us.

Overall International Insurance Program Deductible

In consideration of the payment of the premium for your international insurance program, you and we agree that for the purpose of the application of the deductible(s) for loss payable under this policy, that the deductible(s) amounts applied under local policy(ies) and **FoS (Freedom of Services) policy(ies)**, as applicable, for loss for the same **occurrence**, as payable under this policy, are added together. Deductibles that apply to types of coverage, **covered causes of loss**, specific locations, or specific property will be added together in the applicable policy(ies) in the same manner that they are applied under this policy.

In the event that the sum of deductible(s) produced by this calculation exceeds the applicable deductible(s) as shown in the Declarations Schedule for the loss for the same **Occurrence** payable under this Policy, the Company shall undertake to reimburse the amount that exceeds the applicable deductible(s) as shown in the Declarations Schedule of this policy.

In the event that the sum of deductible(s) produced by this calculation is less than the applicable deductible(s) as shown in the Deductibles Section for the loss for the same **occurrence** payable under this policy, then the difference between the applicable deductible under this policy and the sum calculated above will be applied under this policy.

**5.** Loss Conditions section of the policy is amended to include the following additional condition:

7) Duties as respects direct physical loss or damage in a Prohibited Jurisdiction

The duties and requirements imposed upon any insured under this Policy shall not apply in any **Prohibited Jurisdiction.** However, with respect to any direct physical loss or damage in a **Prohibited Jurisdiction**, it shall be the duty of the first Named Insured to do or to cause the applicable subsidiary to do such things as would be required of such subsidiary if this policy applied directly to such claim or "suit", as the case may be.

When the amount of direct physical loss or damage is determined, we will promptly pay to or reimburse the first Named Insured, at the mailing address listed in the Declarations, the amount of physical loss or damage covered under the terms of this policy.

The first Named Insured shall pay us an amount equal to its share of any recoveries made by or on behalf of any subsidiary operating in a **Prohibited Jurisdiction**, as if such recoveries had been received by the first Named Insured.

8) NON-ADMITTED INSURANCE

If physical loss or damage occurs at a **Location** outside of the United States of America including its territories and possessions, the Company will pay according to the terms and conditions of this Policy for loss as a result of direct physical loss of or damage caused by a **Covered Cause of Loss** to

Covered Property occurring at a **Location**,  provided there is no local insurance applying to such **Location**.

All other terms and conditions remain unchanged.

The title and headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

8·20-13
_____
Date

International Property Endt
Page 4 of 3

**INTEGRATED INSURANCE POLICY**

PROPERTY – TIDAL WAVE - ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 14

Effective Date of Endorsement: March 1, 2013

It is understood and agreed upon that the following changes apply to this policy:

The following definition is hereby deleted in its entirety:

13. Loss Occurrence, C. – "As regards Earthquake, seaquake, tidal wave, landslide, subsidence, volcanic eruption, or any other earth movement (all whether or not naturally occurring), but does not include mudslide or flow including losses from all other perils covered hereunder following as a result of the aforesaid perils, only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Insured's "loss occurrence"."

And replaced with the following definition which is hereby attached and made part of this Policy:

13. Loss Occurrence, C. As regards Earthquake, seaquake, landslide, subsidence, volcanic eruption, or any other earth movement (all whether or not naturally occurring), but does not include mudslide or flow including losses from all other perils covered hereunder following as a result of the aforesaid perils, only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Insured's "loss occurrence".

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_Todd Cunny_
_____
Authorized Representative

_8-20-13_
_____
Date

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM PRODUCTS LIABILITY "BATCH" ENDORSEMENT COVERAGE

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04
Endorsement No. 15

Effective Date of Endorsement: March 1, 2013

AMENDATORY ENDORSEMENT

It is agreed that all **Bodily Injury** or **Property Damage** coverage provided under the Excess Umbrella Liability Coverage Form, which is part of this policy at inception, is amended as follows:

All damages arising out of one lot of "**Your Products**" prepared or acquired by you or by another trading under your name shall be deemed as arising out of one occurrence or resulting from a single incident, regardless of the number of claimants, suits or events.

For the purposes of this definition, one lot of goods or products means "**Your Products**" subject to substantially the same error or defect.

In such a situation, the Insured's per loss retention shall be U.S.$25,000,000 per **Event**.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____8-20-13_____
Date

STF-GCSSG-ELF-116 Page 1 of 1

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM FUNGUS EXCLUSION ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 16

Effective Date of Endorsement: March 1, 2013

It is agreed that:

Section III., Exclusions, of the Excess Liability Coverage Form is amended by adding the following exclusion:

M.  to any liability, damage, **Loss**, cost or expense arising directly or indirectly, in whole or in part, from:

   1. Any **Fungus(i)** or **Spore(s)**;
   2. Any substance, vapor or gas produced by or arising out of any **Fungus(i)** or **Spore(s)** ; or
   3. Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any **Fungus(i)** or **Spore(s)**.

   It is agreed that this exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury, damage, loss, cost or expense.

   As used in this endorsement:

   **Fungus(i)** includes, but is not limited to, any form or type of mold, mushroom or mildew.

   **Spore(s)** means any reproductive body produced by or arising out of any **Fungus(i)**.

Note: The above does not apply to **Fungus(i)** intended by the **Insured** for human consumption.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____8 - 20 - 13_____
Date

STF-GCSSG-ELF-115  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

First Named Insured:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 17

Effective Date of Endorsement:  March 1, 2013

It is agreed that Item II.,Insuring Agreement of the Excess Liability Coverage Form is amended to include the following:

1.) In consideration of the premium set forth in the Declarations of this policy, the coverage under this Coverage Form is extended to include coverage for all **Loss** the **Insured** becomes legally obligated to pay because of:

    i.)    the rendering of or failure to render medical or paramedical services; and/or

    ii.)    the legal furnishing or legal dispensing of drugs or medical supplies to persons by a physician, dentist, nurse, emergency medical technician or paramedic who is employed by any **Insured** to provide such services.

2.) For purposes of this Endorsement only, the definition of **Insured** in the Excess Liability Coverage Form is amended to also include any physician, dentist, nurse, emergency medical technician or paramedic employed by any **Insured** to provide medical or paramedic services, but only while acting in the scope of their employment as respects 1.) above.

3.) For purposes of this Endorsement only, employees referenced in 2.) above shall be considered to be acting within the scope of their employment while engaged in medical or paramedic activities generally referred to as "Good Samaritan".

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
8·20-13
Date

STF-GCSSG-ELF-117  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM INDUSTRIAL AID AIRCRAFT LIMITATION ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 18

Effective Date of Endorsement: March 1, 2013

It is agreed that:

1. Section III, Exclusions, of the Excess Liability Coverage Form is amended by adding the following exclusion:

   To any **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft owned or operated by or rented or loaned to any **Insured.** Use includes operation, loading, or unloading.

   This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the occurrence which caused the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** involved the ownership, maintenance, use or entrustment to others of any aircraft that is owned or operated by or rented or loaned to any **Insured.**

   This exclusion does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, use, or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured.** Use includes operation, loading or unloading.

2. The following is added to the Excess Liability Coverage Form:

   $ 200,000,000 **Industrial Aid Aircraft** Self-Insured Retention/Each Occurrence. (As respects **Loss** arising from **Claims** and/or **Suits** seeking damages for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, use or entrustment to others of any **Industrial Aid Aircraft** owned or operated by or rented to or loaned to any **Insured.** Use includes operation, loading, or unloading).

   The **Industrial Aid Aircraft** Self-Insured Retention applies whether or not there is any available scheduled **Underlying Insurance Program** applicable to the above-described **Loss**. If there is a scheduled **Underlying Insurance Program** or other insurance policies applicable to the above-described **Loss**, amounts received through such scheduled **Underlying Insurance Program** or other insurance policies for payment of the above-described **Loss** may be applied to reduce or exhaust the **Industrial Aid Aircraft** Self Insured Retention if such policies were purchased by the **First Named Insured** to specifically apply as part of the **Underlying Insurance Program** to this policy. However, in no event will amounts received through such scheduled **Underlying Insurance Program** or other insurance policies for the payment of **Defense Costs** reduce the **Industrial Aid Aircraft** Self-Insured Retention.

   The **Industrial Aid Aircraft** Self-Insured Retention will not be reduced by **Defense Costs**.

3. For the purpose of this endorsement only, the following additional definitions apply:

   **Defense Costs** means any payment allocated to a specific **Loss, Claim** or **Suit** for its investigation, settlement or defense, including but not limited to:
   1. attorney's fees and all other investigation, loss adjustment and litigation expenses;
   2. premiums on bonds to release attachments;
   3. premiums on appeal bonds required by law to appeal any **Claim** or **Suit**;
   4. costs taxed against the **Insured** in any **Claim** or **Suit**;
   5. pre-judgment interest awarded against the **Insured**; and
   6. interest that accrues after entry of judgment.

   **Industrial Aid Aircraft** means aircraft with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of employees and their non-fee paying passenger guests.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_8-20-13_
Date

STF-GCSSG-ELF-138 - Page 1 of 1

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM - NO DROP DOWN ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 19

Effective Date of Endorsement: March 1, 2013

AMENDATORY ENDORSEMENT

It is hereby understood and agreed that:

In the General Terms and Conditions, the fourth paragraph of Section IV. General Conditions and Limitations, Subsection C., Paragraph 4 is deleted in its entirety and replaced with the following paragraph but only as respects the coverage provided by the EXCESS LIABILITY COVERAGE FORM of this policy.

4.  Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall not drop down in the event of reduction or exhaustion of the Limit(s) of Liability of the **Underlying Insurance Program** by the actual payment of loss and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any **Underlying Insurance Program**. Further, this policy shall not provide coverage for any coverage that is provided with a sublimit in the **Controlling Policy** for any **Underlying Insurance Program**. The risk of uncollectibility of such **Underlying Insurance Program** (in whole or in part) whether because of financial impairment or insolvency of the underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the Underwriter.

Further it is hereby understood and agreed the above applies solely to coverage afforded under this policy that is excess of Policy GLO 4887714-03 written by Steadfast Insurance Company, effective March 1, 2013 as reflected within the Schedule of Underlying Insurance of the Excess Liability Coverage form of this Policy.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_8-20-13_
Date

STF-GCSSG-ELF-116 Page 1 of 1

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM WATERCRAFT LIABILITY EXCLUSION ENDORSEMENT

First Named Insured: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 20

Effective Date of Endorsement: March 1, 2013

It is agreed that:

Section III., Exclusions, of the Excess Liability Coverage Form is amended by adding the following exclusion:

N.    WATERCRAFT

to any **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any **Watercraft** owned or operated by or chartered, rented or loaned to any **Insured** over 75 ft. Use includes operations and loading or unloading.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____          _____
Authorized Representative                              8·20-13
                                                                        Date

STF-GCSSG-ELF-117 Page 1 of 1

# INTEGRATED INSURANCE POLICY
## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 21

Effective Date of Endorsement:  March 1, 2013

It is agreed that:

Section III., Exclusions, of the Excess Liability Coverage Form is amended by adding the following exclusion:

O.     Aircraft Products and Grounding

to any liability, damage, **Loss**, cost or expense included in the **Products Hazard** or **Completed Operations Hazard** and arising out of any "Aircraft product" or the "Grounding" of any aircraft.

**1.**     "Aircraft product" means:

**a.**     Aircraft (including missiles or spacecraft, and any ground support or control equipment used therewith);

**b.**     Any article furnished by any **Insured** or on behalf of any **Insured**, and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment;

**c.**     Any **Insured's** products used at an airport for the purpose of guidance, navigation or direction of aircraft; and

**d.**     Training aids, instructions, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

**2.**     "Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof sold, handled or distributed by any **Insured** or on behalf of any **Insured**, or manufactured, assembled or processed by any other person or organization:

**a.**     According to the specifications, plans, suggestions, orders, or drawings provided by any **Insured** or on behalf of any **Insured**; or

**b.**     With tools, machinery or other equipment furnished to such persons or organizations by any **Insured** or on behalf of any **Insured**, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
8-20-13
Date

STF-GCSSG-ELF-102  Page 1 of 1

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY BLENDED POLLUTION ENDORSEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 22

Effective Date of Endorsement:  March 1, 2013

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is hereby understood and agreed that:

**A.  SECTION III. EXCLUSIONS**, Exclusions **G**, are deleted and replaced by the following:

**B.  1.**  This policy does not apply to any liability, damage, **Loss**, **Claim**, **Event,** cost or expense arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere at any time.

**2.**  Paragraph **B.1.** above does not apply to **Bodily Injury** or **Property Damage:**

**a.**  Included within the **Products-Completed Operations Hazard**, provided that **Insured's Product** or your work has not at any time been discarded, dumped, abandoned, thrown away; or transported, handled, stored, treated  disposed of or processed as waste; or,

**b.**  Arising out of any discharge, dispersal, seepage, migration, release or escape of pollutants caused by **hostile fire**, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, earthquake; collision or upset of an auto, mobile equipment or aircraft; automatic sprinkler leakage or hail;  or

**c.**  Directly caused by any discharge, dispersal, seepage, migration, release or escape of pollutants that:

**(1)**  Instantaneous and demonstrable as having first commenced at a specific date during the policy period of this policy;

**(2)**  Is accidental and neither expected nor intended from the standpoint of any **Insured**, provided, however, that this condition shall not be applicable to a discharge, seepage, migration, release or escape of pollutants directly caused by the **Insured** to mitigate or further prevent an imminent and substantial discharge, seepage, migration, release or escape of pollutants reasonably likely to result in third party **Bodily Injury** or **Property Damage** and otherwise covered under this policy.

**(3)**  Is first discovered by any **Insured** within twenty (20) days of its first commencement; and

**(4)**  Is reported to us in writing within (80) eighty days of becoming known to any director; officer; principal; partner; member (if limited liability company); manager in your risk management, insurance or legal department; any employee who was authorized by you to give or receive notice of an **Occurrence**, **Claim** or **suit** or any **Insured** authorized or responsible to report notice of such **Occurrence**; or

**d.**  Sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**e.**  For which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location is considered an additional insured on your policy with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than that additional insured; or

STF-GCSSG-ELF-140 Page 1 of 3

f. Arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such **Insured**, contractor or subcontractor; or

g. Sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

h. Arising out of fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an auto or arising out of the escape of pollutants from a covered auto that directly results from the collision upset or overturn of such auto while in the course of transit away from any premises owned by or rented to any **Insured**

3. Pollution coverage afforded under Paragraph **B.2** above does not apply to any liability, damage, **Loss, Claim, Event** cost or expense arising out of:

a. Any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; existing at, or under or within the boundaries of any premises, site or location owned, rented or occupied by any **Insured**;

b. Any claim or suit brought by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants. However, this does not apply to any third party loss, cost or expense that is subject to governmental request, demand, order or statutory or regulatory requirement imposed against such third party and which is otherwise covered under the terms of this endorsement; or;

c. Any discharge, dispersal, seepage, migration, release or escape of pollutants:

    1) on, at or from any site, premises or locations that is (are) designated as a National Priorities List (Superfund) site by federal, state or local law;

    (2) on, at or from any site, premises or locations that is (are) principally used by any **insured**, or by others on behalf of any **insured**, for the handling, storage, disposal, dumping, processing or treatment waste; or

d. Any fines or penalties;

e. Acid rain;

f. Any offshore facility as defined in the Outer Continental Shelf Lands Act Amendment of 1978 as amended, or the Clean Water Act of 1977 as amended; or any deepwater port as defined in the Deepwater Port Act of 1974 as amended; or the Oil Pollution Control Act of 1990 as amended;

g. Any underground facility or any other storage, processing or other operation of any **Insured** situated beneath the surface of the ground except for any underground facility or any other storage, processing or other operation of an insured that is situated upon or above the surface of the floor within an insured's building premises including but not limited to a basement or a cellar; or

h. Any discharge, dispersal, seepage, migration, release, or escape of **pollutants** in knowing violation of or non-compliance with governmental permits, laws, rules, orders or directives.

**C.** For the purposes of this endorsement, the following are added to **SECTION VI. CONDITIONS:**

**Arbitration**

If we and the **Insured** do not agree whether insurance is provided by this endorsement, then either party may make a written demand for arbitration. When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty (30) days, either party may request that a selection be made by a judge of a court having jurisdiction. Each party will pay the costs or expenses it incurs, and bear the costs or expenses of the third arbitrator equally. Unless both parties agree otherwise, arbitration will take place in the locale in which the **Named Insured's** mailing address shown in the Declarations is located. Arbitration shall be governed by the American Arbitration Association Commercial Arbitration Rules. A decision agreed to by two of the arbitrators will be binding and shall be enforceable in the same manner as a final judgment in any court of competent jurisdiction. The arbitrators shall have no authority to award any punitive, exemplary or extra-contractual damages, costs or expenses.

**B.1.**, **Notice of Occurrence, Claim or Suit** notwithstanding, it is a condition precedent to any obligation we may have under subparagraphs **2.c** of this endorsement above that there must be strict conformance with all requirements specified under **2.c (1), (2), (3),** and **(4)** regardless of whether or not we are prejudiced by failure of these requirements to be met.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
8-20-13
Date

STF-GCSSG-ELF-140 Page 3 of 3

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY - RETAINED AMOUNT ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 23

Effective Date of Endorsement: March 1, 2013

It is hereby understood and agreed that:

---

**RETAINED AMOUNT SCHEDULE**

**RETAINED AMOUNT COVERAGE(S)**

Commercial General Liability Including Products & Completed Operations
(Nascar Team Sponsor)

**RETAINED AMOUNT(S)**

Each Occurrence Retained Amount: $1,000,000

Aggregate Retained Amount  $5,000,000

**Retained Amount(s) does not include** expenses incurred to investigate any **Claim** or defend any **suit** against the **Insured,**
including any Supplementary Payments.

---

Solely as respects coverages listed in the RETAINED AMOUNT SCHEDULE above, the following additional provisions apply:

1. Section II. INSURING AGREEMENT of the Excess Liability Coverage Form is deleted and replaced by the following:

   The Underwriter shall indemnify the **Insured**, in excess of the **Retained Amount,** shown in the RETAINED AMOUNT SCHEDULE above, for all **Loss** the **Insured** becomes legally obligated to pay as damages for the RETAINED AMOUNT COVERAGE(S) provided by this endorsement.

   This coverage applies to **Loss** only if prior to the **Policy Period**, no **Insured** knew that the **Loss** had occurred or was incurred, in whole or in part.  If an **Insured** knew, prior to the **Policy Period**, that a **Loss** occurred or was incurred, then any continuation, change or resumption of such **Loss** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period.**

   **Loss** which occurs or is incurred during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred or to have been incurred by any **Insured** includes any continuation, change or resumption of that **Loss** after the **Policy Period**; and

   **Loss** will be deemed to have been known to have occurred or to have been incurred at the earliest time when any **Insured**:
   1. Reports all, or any part, of the **Loss** to the Underwriter or any other insurer;
   2. Receives a written or verbal demand or **Claim** for damages because of the **Loss**; or
   3. Becomes aware by any other means that **Loss** has occurred or has begun to occur.

2. **Subsection IV. B RETAINED AMOUNT AND COINSURANCE,** of the GENERAL TERMS AND CONDITIONS, is deleted in its entirety and replaced by the following:

   **B.** RETAINED AMOUNT AND COINSURANCE

As respects the **Retained Amount** specified in this endorsement, the Underwriter's liability for **Loss** on account of each **Claim** or **Occurrence** shall apply only to that part of such **Loss** which is in excess of the applicable **Retained Amount(s)** shown in the RETAINED AMOUNT SCHEDULE and such **Retained Amount** shall be borne by the **Insureds** uninsured and at their own risk.

With respect to the Underwriter's liability for **Loss** (excess of the applicable **Retained Amount**) on account of all **Claims** first made in any one **Policy Period**, the **Insureds** shall bear uninsured at their own risk that Percentage of all such **Loss** specified as the Coinsurance Percentage in the Declarations of the applicable Coverage Form (if applicable).

3.  Coverage under this endorsement shall apply in conformance with, and subject to, the definitions, insuring clauses, exclusions and conditions of this policy.

4.  We will not make any payments under this policy until the Retained **Amount(s)** and any applicable other insurance have been exhausted by the payment of **Loss** to which this policy applies.

5.  As used in this endorsement, **Retained Amount** means the amount of damages for which the **Insured** is responsible to pay, with regard to any **Claim(s)** caused directly or indirectly by any **Retained Amount Coverage** shown in the RETAINED AMOUNT SCHEDULE of the endorsement. The **Retained Amount** will apply whether or not other insurance is available for payment of any given **Loss**. If other insurance purchased by the **Insured** pays toward any **Loss** for which insurance is also provided by this endorsement, such amounts paid by the other insurance will be applied to reduce or exhaust the **Retained Amount** which the **Insured** is responsible to pay under this endorsement.

Furthermore:

a.  If the applicable **Retained Amount** is specifically designated in the RETAINED AMOUNT SCHEDULE as including expenses incurred to investigate any **Claim** or defend any **suit** against the **insured**, then such expenses shall also reduce the limits of insurance of this policy.

b.  If the applicable **Retained Amount** is not specifically designated in the RETAINED AMOUNT SCHEDULE as including expenses incurred to investigate any **Claim** or defend any **suit** against the **insured**, then such expenses shall not reduce the limits of insurance of this policy.

6.  **Subsection VI.N, APPEALS** is deleted in its entirety and replaced by the following:

**N. APPEALS**

The Underwriter can appeal any judgment brought against any **Insured** if:

1.  the judgment is in excess of the **Retained Amount** as set forth in the RETAINED AMOUNT SCHEDULE, listed in this endorsement.
2.  neither the **Insured** nor any insurer providing coverage within the **Retained Amount** elects to appeal.

If the Underwriter appeals, the Underwriter will pay the costs of the appeal plus any incidental interest, but in no event will the Underwriter pay out more than is provided by the applicable Limits of Liability plus costs and interest of the appeal.

7.  If another endorsement attached to this policy states specifically that the provisions therein supersede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, or exclusions of this policy.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_8-20-13_
Date

STF-GCSSG-ELF-140 Page 2 of 2

**INTEGRATED INSURANCE POLICY**

FIDUCIARY LIABILITY ANNUAL REVIEW ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 24

Effective Date of Endorsement: February 1, 2013

It is agreed that the Fiduciary Liability Coverage Form is amended by adding the following:

If any of the following **Fiduciary Events** occur during the **Policy Period**, then the **Insureds** shall promptly give written notice to the Underwriter of such **Fiduciary Event**, and any coverage under this Coverage Form during any **Annual Period(s)** subsequent to the **Annual Period** in which such **Fiduciary Event** occurred shall be conditioned on the **First Named Insured** (i) agreeing on behalf of all **Insureds** to any additional or amended terms and conditions required by the Underwriter, and (ii) paying any additional premium required by the Underwriter. If the **Insureds** fail, within 30 days after the end of the **Annual Period** in which such **Fiduciary Event** occurred, to agree to any such terms and conditions or to pay any such additional premium, no coverage will be afforded under this Coverage Form for any **Annual Period(s)** subsequent to the **Annual Period** in which such **Fiduciary Event** occurred. Such termination of coverage will not be considered a cancellation or refusal to renew for purposes of the Extended Reporting Period provision of this Policy.

Definitions

1. **Fiduciary Event(s)** means:

    A. The public announcement by the **First Named Insured** of a net loss in any quarter.

    B. A decline in the **First Named Insured's** rating on its senior debt securities to:

    Standard & Poor's: below (*BBB+*)

    Moody's: below (*Baa1*)

    C. The public announcement of a restatement, correction, amendment or withdrawal (or any publicly announced intent to do any of the foregoing) of the **First Named Insured's** publicly disclosed financial statements.

    D. The public announcement that the **First Named Insured** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

    E. The public announcement that the **First Named Insured** has filed or intends to file for bankruptcy protection or that a third party has filed or intends to file an involuntary bankruptcy proceeding against the **First Named Insured**, or that a voluntary or involuntary bankruptcy proceeding by or against the **First Named Insured** is imminent.

    F. The public announcement of the commencement or threat of commencement of a governmental or regulatory proceeding against the **Insured**, including but not limited to an investigation or inquiry by the Securities and Exchange Commission.

    G. The receipt by the **First Named Insured** of an unsolicited takeover bid by any person or entity other than an **Insured** or any affiliate of an **Insured**, whether publicly announced or privately made to a director or executive officer of the **First Named Insured**.

All other terms and conditions remain unchanged.

The title and headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
F: 20-13
Date

STF-GCSSG-FIF-101 Page 1 of 1

## INTEGRATED INSURANCE POLICY

### REVISED SCHEDULES

These Schedules are to be attached to and form a part of Policy Number: IPR 3757608-04
**First Named Insured**: The Home Depot, Inc.

It is hereby understood and agreed that the Integrated Schedule is amended to add Security Errors & Omissions coverage effective February 19, 2014.

A. Primary Insurance Coverages Provided

| Insurance Coverage Provided | Retained Amount | Sublimit of Liability (if applicable) | | | Coverage Trigger |
|---|---|---|---|---|---|
| | | Per Loss | Per **Annual Period** | Per **Policy Period** | |
| Property (Layer 1) See Note 1. Below | $5,000,000 | $20,000,000 | $20,000,000 | $20,000,000 | Occurrence |

B. Excess Insurance Coverages Provided

| Insurance Coverage Provided | **Underlying Insurance Program** Limit of Liability | Sublimit of Liability (if applicable) | | | Coverage Trigger |
|---|---|---|---|---|---|
| | | Per **Loss** | Per **Annual Period** | Per **Policy Period** | |
| Property (Layer 2) *See Note 1. Below | $25,000,000 | 10% or $15,000,000 part of $150,000,000 | N/A | N/A | Occurrence |
| Property (Layer 3) *See Note 1. Below | $150,000,000 | 10% or $10,000,000 part of $100,000,000 | N/A | N/A | Occurrence |
| Employment Practices Liability *See Note 2. Below | $50,000,000 | $25,000,000 | $25,000,000 | $75,000,000 | Claims Made |
| Fiduciary Liability *See Note 3. Below | $40,000,000 | $5,000,000 | $5,000,000 | $15,000,000 | Claims Made |
| Excess Liability *See Note 4. Below | $25,000,000 | $25,000,000 | $25,000,000 | $75,000,000 | Occurrence |
| Texas Employers Excess Indemnity *See Note 5. Below | $30,000,000 Each Accident/Each Employee for Disease | $25,000,000 Each Accident/Each Employee for Disease | $25,000,000 Each Accident/Each Employee for Disease | $75,000,000 Each Accident/Each Employee for Disease | Occurrence |
| **Security Errors & Omissions | $20,000,000 | $10,000,000 | $10,000,000 | $10,000,000 | Claims Made |

**Security Errors & Omissions effective February 19, 2014 to February 19, 2015.

Note 1. Property Layer 1 is effective March 1, 2013 and expires under this policy March 1, 2014. Property Layers 2 and 3 are for an annual term (March 1, 2013 – March 1, 2014) and to be renegotiated annually.

Note 2. Employment Practices Liability is effective February 1, 2013 and expires under this policy February 1, 2016

Note 3. Fiduciary Liability is effective February 1, 2013 and expires under this policy February 1, 2016

Note 4. Excess Liability, Automobile Liability limits are not aggregated. Coverage is effective March 1, 2013 and expires under this policy March 1, 2016. As respects General Liability including Products & Completed Operations for US, PR, USVI & Guam, the underlying limit of liability is $25,000,000 per occurrence/NIL aggregate.

Note 5. Texas Employers Excess Indemnity is effective March 1, 2013 and expires under this policy March 1, 2016

C. Endorsements to this Policy (Effective at Inception):

| Endorsement # | Title | Coverage Form Applicable to |
|---|---|---|
| 1 | Non Certified Terrorism Exclusion Endorsement | General Terms and Conditions Form |
| 2 | Named Insured Indemnification Endorsement | General Terms and Conditions Form |
| 3 | Nuclear Exclusion Endorsement | General Terms and Conditions Form |
| 4 | Premium Adjustment Endorsement | General Terms and Conditions Form |
| 5 | Exclusion of Loss Resulting from Certified Acts of Terrorism with Exceptions and Sublimits Endorsement | Property Manuscript Form |
| 6 | Standard Mortgage Clause Erndprse,emt | Property Manuscript Form |
| 7 | Insured's Obligation as Insurer Endorsement | Property Manuscript Form |
| 8 | Cancellation Clause Amended Endorsement | Property Manuscript Form |
| 9 | Miscellaneous Unnamed Locations Endorsement | Property Manuscript Form |
| 10 | Mold Fungus Exclusion Endorsement | Property Manuscript Form |
| 11 | Information Hazards Technology Exclusion Endorsement | Property Manuscript Form |
| 12 | Absolute Terrorism Exclusion Endorsement | Property Manuscript Form |
| 13 | International Property Endorsement | Property Manuscript Form |
| 14 | Tidal Wave Endorsement | Property Manuscript Form |
| 15 | Products Liability "Batch" wording Endorsement | Excess Liability Coverage Form |
| 16 | Fungus Exclusion Endorsement | Excess Liability Coverage Form |
| 17 | Incidental Medical Malpractice Endorsement | Excess Liability Coverage Form |
| 18 | Industrial Aid Aircraft Endorsement | Excess Liability Coverage Form |
| 19 | No Drop Down Endorsement | Excess Liability Coverage Form |
| 20 | Watercraft Liability Exclusion Endorsement | Excess Liability Coverage Form |
| 21 | Aircraft Products and Grounding Exclusion Endorsement | Excess Liability Coverage Form |
| 22 | Blended Pollution Endorsement | Excess Liability Coverage Form |
| 23 | Retained Amount Endorsement | Excess Liability Coverage Form |
| 24 | Fiduciary Annual Review Endorsement | Fiduciary Liability Coverage Form |

D. Extended Reporting Period (Applicable to Claims Made Policies Only)

Additional Premium: Per the applicable controlling policy

Coverage Period: One Year

_____ 6. 2.

Authorized Representative

5/7/2014

Date

STF-IRP-100C Page 2 of 2

## INTEGRATED INSURANCE POLICY

EXCESS SECURITY AND PRIVACY LIABILITY COVERAGE FORM
CLAIMS MADE COVERAGE

I. DECLARATIONS

This Coverage Form is to be attached to and form a part of Policy Number: IPR 3757608-04

Item 1. **First Named Insured**: The Home Depot, Inc.

Item 2. Effective Date of Coverage Form: February 19, 2014

Item 3. Pending or Prior Date: February 19, 2014

Item 4. Retroactive Date: N/A

II. INSURING CLAUSE

The Underwriter shall pay on behalf of the **Insured**, in excess of the Limits of Liability and Retained Amount as set forth in the Schedule of Underlying Insurance applicable to the coverage provided by this Coverage Form, all **Loss** the **Insured** becomes legally obligated to pay.

III. DEFINITIONS

For purposes of the coverage provided by this Coverage Form:

A. **Event** means a **Claim** for any **Wrongful Act** occurring between the **Retroactive Date** and the end of the **Policy Period**.

B. The following definitions have the same definition as set forth in the **Controlling Policy** for this coverage: Claim, Wrongful Act, Defense Costs, and Insured.

IV. EXCLUSIONS

In addition to the exclusions contained in the **Underlying Insurance Program** for this Coverage Form and the exclusions contained in the General Terms and Conditions, the following exclusions apply to the coverage provided by this Coverage Form:

A. The Underwriter shall not be liable for **Loss** which is based upon, arising out of, or attributable to any demand, suit or proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 3 of the Declarations of this Coverage Form, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.

B. The Underwriter shall not be liable for **Loss** that is based upon, arising out of, or attributable to any **Event** which took place prior to the **Retroactive Date** applicable to this coverage form.

V. SCHEDULE OF UNDERLYING INSURANCE

A. **Controlling Policy**

| Insurer | Policy Number | Self Insured Retention | | Limit of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| | | Per Loss | Annual Aggregate | Per Loss | Term Aggregate | |
| AIG Specialty Insurance Company | 02-302-73-06 | $7,500,000 | $7,500,000 | $10,000,000 | $10,000,000 | 02/19/2014 to 02/19/2015 |

B. Other Policies

| Insurer | Policy Number | Limit of Liability | | Attachment Point | Policy Term |
|---|---|---|---|---|---|
| | | Per Loss | Term Aggregate | | |
| Zurich American Insurance Company | SPR 5948494-00 | $10,000,000 | $10,000,000 | N/A | 02/19/2014 to 02/19/2015 |

STF-GCSSG-ESPF-MAN-02.14  Page 1 of 2

VI. RELIANCE ON APPLICATION

The representations made in the **Controlling Application** listed below, including any materials submitted therewith are the basis of this Coverage Form and shall be deemed attached to and a part of this Coverage Form. The application and the information submitted therewith is considered physically attached to this Coverage Form and will be deemed incorporated herein.

For purposes of this Coverage Form, **Controlling Application** means the following application:

| | |
|---|---|
| Insurer: | AIG |
| Form Number: | 103449 (1/13) |
| Date Signed: | 02/10/2014 |
| Signatory: | Teresa Roseborough, Executive Vice President and General Counsel |

VII. Solely for the purposes of this Coverage Form, the fourth paragraph of subsection C. Reduction/Exhaustion of Underlying Limits of section IV. GENERAL CONDITIONS AND LIMITATIONS is replaced with the following:

Notwithstanding any of the terms of this policy which might be construed otherwise, coverage under this policy for each Excess Coverage shall drop down only in the event of reduction or exhaustion of the Limit(s) of Liability of the Underlying Insurance Program by the actual payment of loss and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Insurance Program. Further, this policy shall not provide coverage for any coverage that is provided with a sublimit in the Controlling Policy for any Underlying Insurance Program, except for the following: "System Failure Coverage – top 10 critical vendors," for which the Underwriter will provide $5,000,000 excess of $10,000,000. The risk of uncollectibility of such Underlying Insurance Program (in whole or in part) whether because of financial impairment or insolvency of the underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the Underwriter.

_____  
Authorized Representative

7-8-2014  
_____  
Date

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY - PROFESSIONAL LIABILITY LIMITATION - ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 25

Effective Date of Endorsement: March 1, 2013

It is understood and agreed that:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SECTION III, EXCLUSIONS** is amended to add the following additional exclusions:

**Professional Liability:**

This insurance does not apply to any obligation or liability, damage, **Loss**, cost or expense arising out of any breach of duty, neglect act, error, misstatement or omission of any **Insured**, or any question, or any person for whom the **Insured** is legally responsible, in the rendering of or failure to render any professional service.

This exclusion applies even if the claim against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

However, this exclusion does not apply to those sums in excess of the Limits of Liability and Retained Amount as set forth in the Schedule of Underlying Insurance that the **Insured** becomes legally obligated to pay for a **Wrongful Act** but only to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance and provided that coverage provided by this policy will be no broader that the coverage provided by the policy listed in the Schedule of Underlying Insurance.

**SECTION IV. DEFINITIONS** is amended to add the following definitions:

**Wrongful Act** means any actual or allege act, error, omission committed in the performance of, or failure to perform **Miscellaneous Professional Services.**

**Miscellaneous Professional Services** means advise, instructions, recommendations, suggestions or opinions provided by or on behalf of the **Insured**, not for a fee (other than consideration paid by a customer for product), in connection with home improvement retailing.

All other terms and conditions remain unchanged.

The title and headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

4-4-2014
_____
Date

**INTEGRATED INSURANCE POLICY**

TEXAS NON-SUBSCRIBERS - ENDORSEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 26

Effective Date of Endorsement: March 1, 2014

It is agreed that the Texas Non-Subscribers Coverage Form, Section V. Schedule of Underlying Insurance is amended to read as follows:

## V.   SCHEDULE OF UNDERLYING INSURANCE

### A. **Controlling Policy** or Policies

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | Policy Term |
|---|---|---|---|---|---|
| Texas Employers Excess Indemnity Insurance | Illinois Union Insurance Company | TNS C47869638 | $1,000,000 | $30,000,000 Each Accident $10,000,000 Each Employee $30,000,000 Policy Aggregate | March 1, 2014 to March 1, 2015 |

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_____
9-8-2014
Date

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY - ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 27

Effective Date of Endorsement: March 1, 2014

It is agreed that the Excess Liability Coverage Form, Section V. Schedule of Underlying Insurance is amended to read as follows:

## V.   SCHEDULE OF UNDERLYING INSURANCE

### A.   **Controlling Policy** or Policies

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| General Liability including Products and Completed Operations - US, PR, USVI & Guam | Steadfast Insurance Company | GLO 4887714-04 | $1,000,000 | $9,000,000 $9,000,000 $9,000,000 $9,000,000 $9,000,000 | Each Occurrence General Aggregate Products Aggregate Personal Injury Fire Damage | 3/1/14 to 3/1/15 |
| General Liability Including Products and Completed Operations - US, PR, USVI & Guam | Self Insured Retention | NA | NA | $15,000,000 excess of $10,000,000 | Per Loss, NIL Aggregate | 3/1/14 to 3/1/15 |
| Automobile Liability - (All States – U.S. & Guam) | Zurich American Insurance Company | BAP 2938863-11 | Deductible $1,000,000 | $1,000,000, | Per Loss | 3/1/14 to 3/1/15 |
| Automobile Liability Excess - (All States – U.S. & Guam) | HomeRisk Assurance Ltd. | 297-1-10011-00-2014 | N/A | $9,000,000 excess of $1,000,000 | Per Loss | 3/1/14 to 3/1/15 |
| Employer's Liability Guam | Tokio Marine Pacific Insurance Ltd. | WC000000916 | N/A | $1,000,000 $1,000,000 $1,000,000 | Each Accident Each Employee Policy Limit | 3/1/14 to 3/1/15 |

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| Employer's Liability AL,AR,DC,DE,HI, IA,ID,IN,KS,LA,MD, MN,MO,MS,MT,NE, NM,NY,OK,RI,SC, SD,TN,WV | New Hampshire Insurance Company | WC 049101882 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability WI | New Hampshire Insurance Company | WC 049101887 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability AK | New Hampshire Insurance Company | WC 049101884 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability AZ,CA,CO,CT,GA, IL,ME,MI,NV,OH, OR,PA,UT,VA,WA | National Union Fire Insurance Company of Pittsburgh, PA | XWC 6636267 | $1,000,000 SIR | $5,000,000 $5,000,000 | Each Accident Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability MA | National Union Fire Insurance Company of Pittsburgh, PA | XWC 6636268 | $500,000 SIR | $4,500,000 $4,500,000 | Each Accident Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability FL | Illinois National Insurance Company | WC 049101883 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability KY,NC,NH,VT | New Hampshire Insurance Company | WC 049101885 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/14 to 3/1/15 |
| Employers Liability NJ | New Hampshire Insurance Company | WC 049101886 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/14 to 3/1/15 |

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| Automobile Liability Canada | Zurich Insurance Company Ltd. | 9801176 | CDN $250,000 SIR | $5,500,000 Canadian | Combined Single Limit | 3/1/14 to 3/1/15 |
| General Liability & Hired and Non-Owned Automobile Liability Canada | Zurich Insurance Company Ltd. | 8838254 | $500,000 SIR | $9,500,000 $9,500,000 Excess of SIR | Each Occurrence Products & Completed Operations Aggregate | 3/1/14 to 3/1/15 |
| Foreign Commercial General Liability | The Insurance Company of the State of Pennsylvania | WS 20000473 | N/A | $1,000,000 $2,000,000 $2,000,000 | Each Occurrence General Aggregate Products & Completed Operations Aggregate | 3/1/14 to 3/1/15 |
| Foreign Hired Owned & Non-Owned Auto Liability | | WS 20000474 | | $1,000,000 | Per Accident | |
| Foreign Employee Benefits Liability | | | | $1,000,000 $1,000,000 | Each Wrongful Act Annual Aggregate | |
| Foreign Voluntary WC / EL | The Insurance Company of the State of Pennsylvania | WS 20000475 | N/A | $1,000,000 | Each Occurrence | 3/1/14 to 3/1/15 |
| Aircraft Liability | United States Aviation Underwriters, Inc. | SIHL1-105Q | N/A | $200,000,000 | Each Occurrence | 4/1/14, Continious until cancelled |

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

9 - 8 - 2014
_____
Date

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY - ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04

Endorsement No. 28

Effective Date of Endorsement: March 1, 2013

It is agreed that the Excess Liability Coverage Form, Section V. Schedule of Underlying Insurance is amended to read as follows:

V.   SCHEDULE OF UNDERLYING INSURANCE

A.   **Controlling Policy** or Policies

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| General Liability including Products and Completed Operations - US, PR, USVI & Guam | Steadfast Insurance Company | GLO 4887714-03 | $1,000,000 | $9,000,000 $9,000,000 $9,000,000 $9,000,000 $9,000,000 | Each Occurrence General Aggregate Products Aggregate Personal Injury Fire Damage | 3/1/13 to 3/1/14 |
| General Liability Including Products and Completed Operations - US, PR, USVI & Guam | Self Insured Retention | NA | NA | $15,000,000 excess of $10,000,000 | Per Loss, NIL Aggregate | 3/1/13 to 3/1/14 |
| Automobile Liability - (All States – U.S. & Guam) | Zurich American Insurance Company | BAP 2938863-10 | Deductible $1,000,000 | $1,000,000, | Per Loss | 3/1/13 to 3/1/14 |
| Automobile Liability Excess - (All States – U.S. & Guam) | HomeRisk Assurance Ltd. | 297-1-10011-00-2013 | N/A | $9,000,000 excess of $1,000,000 | Per Loss | 3/1/13 to 3/1/14 |

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| Employer's Liability Guam | Tokio Marine Pacific Insurance Ltd. | WC-000000404 | N/A | $1,000,000 $1,000,000 $1,000,000 | Each Accident Each Employee Policy Limit | 6/11/12 to 6/11/13 |
| Employer's Liability Guam | Tokio Marine Pacific Insurance Ltd. | WC-000850 | N/A | $1,000,000 $1,000,000 $1,000,000 | Each Accident Each Employee Policy Limit | 6/11/13 to 6/11/14 |
| Employer's Liability AL,AR,DC,DE,HI, IA,ID,IN,KS,LA, MD,ME,MN,MO, MS,MT,NE,NM, NY,OK,RI,SC,SD, TN,VA,WV (AOS) | New Hampshire Insurance Company | WC 033575314 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability WI | New Hampshire Insurance Company | WC 033575319 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability AK,AZ | New Hampshire Insurance Company | WC 033575315 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability CA,CO,CT,GA,IL, MI,NV,OH,OR, PA,UT,WA, | National Union Fire Insurance Company | WC 6636191 | $1,000,000 SIR | $5,000,000 $5,000,000 | Each Accident Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability MA | National Union Fire Insurance Company | WC 6636192 | $500,000 SIR | $4,500,000 $4,500,000 | Each Accident Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability FL | Illinois National Insurance Company | WC 033575316 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability KY,NC,NH,VT | New Hampshire Insurance Company | WC 033575317 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |
| Employers Liability NJ | New Hampshire Insurance Company | WC 033575318 | Deductible $1,000,000 | $5,000,000 $5,000,000 $5,000,000 | Each Accident Policy Limit Each Employee | 3/1/13 to 3/1/14 |

| Coverage | Insurer | Policy Number | Self-Insured Retention / Deductible | Limits of Liability | | Policy Term |
|---|---|---|---|---|---|---|
| Automobile Liability Canada | Zurich Insurance Company Ltd. | 9801176 | CDN $250,000 SIR | $5,500,000 Canadian | Combined Single Limit | 3/1/13 to 3/1/14 |
| General Liability & Hired and Non-Owned Automobile Liability Canada | Zurich Insurance Company Ltd. | 8838254 | $500,000 SIR | $9,500,000 $9,500,000 Excess of SIR | Each Occurrence Products & Completed Operations Aggregate | 3/1/13 to 3/1/14 |
| Foreign Commercial General Liability | The Insurance Company of the State of Pennsylvania | 80-0271455 | N/A | $1,000,000 $2,000,000 $2,000,000 | Each Occurrence General Aggregate Products & Completed Operations Aggregate | 3/1/13 to 3/1/14 |
| Foreign Hired Owned & Non-Owned Auto Liability | | | | $1,000,000 | Per Accident | |
| Foreign Employee Benefits Liability | | | | $1,000,000 $1,000,000 | Each Wrongful Act Annual Aggregate | |
| Foreign Voluntary WC / EL | The Insurance Company of the State of Pennsylvania | 83-70180 | N/A | $1,000,000 | Each Occurrence | 3/1/13 to 3/1/14 |
| Aircraft Liability | United States Aviation Underwriters, Inc. | SIHL1-105Q | N/A | $200,000,000 | Each Occurrence | 4/1/12 to 4/1/13 |

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

10·28·2014
_____
Date

## INTEGRATED INSURANCE POLICY

EXCESS LIABILITY COVERAGE FORM POLLUTION EXCLUSION ENDORSEMENT
NAMED PERILS TIME ELEMENT

**First Named Insured**:  The Home Depot, Inc.

This endorsement is to be attached to and form a part of Policy Number:  IPR 3757608-04

Endorsement No. 29

Effective Date of Endorsement:  March 1, 2013

It is hereby understood and agreed that Endorsement Number 22 is deleted and replaced with the following:

It is agreed that the following revisions are made to the indicated Sections of the Excess Liability Coverage Form:

Section III., Exclusion G. is amended to read as follows:

E.  Pollution (Named Perils Time Element)

(I.) to any liability, damage, **Loss**, cost or expense:

a.  Arising directly or indirectly out of an actual, alleged or threatened existence, discharge, dispersal, seepage, migration, exposure to, release or escape of **Pollutants**; or

b.  Arising out of any:

   **1.**  Request, demand or order that any **Insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

   **2.**  **Claim** or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

(II.)  Subsection **E.** (I.) a. of this endorsement does not apply to **Bodily Injury** or **Property Damage**:

   **a.**  Included within the **Products Hazard and/or Completed Operations Hazard**;

   **b.**  Arising out of any discharge, dispersal, seepage, migration, release or escape of **Pollutants** caused by a **Hostile Fire**, explosion, lightning, windstorm, vandalism or malicious mischief, riot or civil commotion, flood, earthquake, collision or upset of an **Auto**, mobile equipment, railroad equipment, a watercraft or an aircraft, automatic sprinkler leakage or hail; or

   **c.**  Directly caused by any discharge, dispersal, seepage, migration, release or escape of **Pollutants** that:

   **(1)**  Is instantaneous and demonstrable as having first commenced at a specific time and day during the **Policy Period** of this policy;

   **(2)**  Is accidental and neither expected nor intended from the standpoint of any **Insured**;

   **(3)**  Is first discovered by any **Insured** within twenty (20) days of its first commencement; and

   **(4)**  Is reported to the Underwriter by the **First Named Insured** no later than eighty (80) days following the first discovery by any **Insured**.

(III.) The coverage afforded under Subsection **E.** (II.) of this endorsement does not apply to any liability, damage, **Loss,** cost or expense arising out of:

    **a.** Clean up, removal, containment, treatment, detoxification or neutralization of **Pollutants** existing at, under or within the boundaries of any premises, site or location owned, rented or occupied by any **Insured**;

    **b.** Any discharge, dispersal, seepage, migration, release or escape of **Pollutants** which takes place on, at or from any site, premises or location:

        **(1)** Designated as a National Priorities List (Superfund) site by the federal government or any similar designation under state or local environmental remediation law;

        **(2)** Used by any **Insured,** or by others on behalf of any **Insured,** for the handling, storage, disposal, dumping, processing or treatment of waste;

        **(3)** At which the usual or routine conduct of any **Insured's** business has been terminated or suspended or which any **Insured** has sold, given away or abandoned; or

        **(4)** Constituting an **Underground Facility** or any other storage, processing or other operation of any **Insured** which takes place beneath the surface of the ground, including but not limited to the storage, processing, removal or loss of sub-surface oil or gas;

    **c.** Acid rain; or

    **d.** Any offshore facility as defined in the Outer Continental Shelf Lands Act Amendment of 1978 as amended, or the Clean Water Act of 1977 as amended; or any deepwater port as defined in the Deepwater Port Act of 1974 as amended; or the Oil Pollution Control Act of 1990 as amended or as may be amended.

(IV.) Notwithstanding Subsection III.G., Reporting and Notice of the General Terms and Conditions, it is a condition precedent to any obligation the Underwriter may have under Subsection **E.** (II.) **c.** of this endorsement that there must be strict conformance with all requirements specified under Subsection E.(II.) **c. (1), (2), (3)** and **(4)** of this endorsement, regardless of whether or not the Underwriter is prejudiced by failure of these requirements to be met.

(V.) As used in this endorsement, the following words have special meanings as follows:

    a. **Auto** shall be defined as it is in the **Controlling Policy** for the Excess Liability Coverage Form.

    b. **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

    c. **Pollutants** means any solid, liquid, gaseous or thermal or sonic irritant or contaminant, or toxic substances, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed.

    d. **Underground Facility** means any container or system including any ducts, pipes or other apparatus used therewith, the volume of which is now or was at any time more than ten (10) percent beneath the surface of the ground.

(VI)     a. If the Underwriter and the **Insured** do not agree whether insurance is provided by this endorsement, then either party may make a written demand for arbitration of such issue. When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree on the third arbitrator within thirty (30) days, either party may request that a selection of the third arbitrator be made by a judge of a court having jurisdiction. Each party will pay the costs or expenses it incurs, and bear the costs or expenses of the third arbitrator equally. Unless both parties agree otherwise, arbitration will take place in the locale in which the **First Named Insured's** mailing address shown in the Declarations is located. Arbitration shall be governed by the American Arbitration Association Commercial Arbitration Rules. A decision agreed to by two of the arbitrators will be binding and shall be enforceable in the same manner as a final judgment in any court of competent jurisdiction. The arbitrators shall have no authority to award any punitive, exemplary or extra-contractual damages, costs or expenses. Notwithstanding

STF-GCSSG-ELF-127 Page 2 of 3

anything expressed herein to the contrary, this arbitration provision shall not be deemed to override the Service of Suit provision of this policy.

b.  Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules in effect at the time of the dispute and the following procedures:

1.  Written notice requesting arbitration will be sent by the initiating party via certified or registered mail, return receipt requested, to the other party with the required copies to the AAA. The notice shall state the nature of the dispute, the amount involved, if any, and the remedy sought.

2.  A panel shall be made up of three neutral, impartial arbitrators selected according to the AAA Commercial Arbitration Rules in effect at the time of the dispute.

3.  Any arbitration under this Agreement shall be administered by the AAA's Atlanta, GA office and all hearings shall be conducted in Atlanta, GA.

4.  The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement. Such excess damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages. Confirmation of the award may be entered in any court having jurisdiction.

5.  The parties shall divide equally and pay one half each of the arbitrator, fees and expenses and the cost of the arbitration proceeding (except witnesses). Each party shall pay its own costs of counsel and witnesses."

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____          _____
Authorized Representative                                    Date

10 - 28 - 2014

STF-GCSSG-ELF-127  Page 3 of 3

Exhibit B - 119

**INTEGRATED INSURANCE POLICY**

EXCESS LIABILITY COVERAGE FORM ENDORSEMENT

**First Named Insured**: The Home Depot, Inc.
This endorsement is to be attached to and form a part of Policy Number: IPR 3757608-04
Endorsement No. 30
Effective Date of Endorsement: March 1, 2013

It is hereby understood and agreed that the Excess Liability Coverage Form, Section III – Exclusions:

Item J. Silica or Silica Mixed Dust is hereby deleted from the policy.

It is also agreed that Section IV. Definitions, Item O is deleted from the policy.

All other terms and conditions remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

_____
Authorized Representative

_10 - 28 - 2014_
Date

STF-GCSSG-ELF-116 Page 1 of 1

Exhibit B - 120

# INTEGRATED INSURANCE POLICY

REVISED SCHEDULES

These Schedules are to be attached to and form a part of Policy Number: IPR 3757608-04

**First Named Insured**: The Home Depot, Inc.

Endorsement No. 31

It is hereby understood and agreed that the Integrated Schedule is amended to add Security Errors & Omissions coverage effective February 19, 2014.

A. Primary Insurance Coverages Provided

| Insurance Coverage Provided | Retained Amount | Sublimit of Liability (if applicable) | | | Coverage Trigger |
|---|---|---|---|---|---|
| | | Per **Loss** | Per **Annual Period** | Per **Policy Period** | |
| Property (Layer 1) See Note 1. Below | $5,000,000 | $20,000,000 | $20,000,000 | $20,000,000 | Occurrence |

B. Excess Insurance Coverages Provided

| Insurance Coverage Provided | **Underlying Insurance Program** Limit of Liability | Sublimit of Liability (if applicable) | | | Coverage Trigger |
|---|---|---|---|---|---|
| | | Per **Loss** | Per **Annual Period** | Per **Policy Period** | |
| Property (Layer 2) *See Note 1. Below | $25,000,000 | 10% or $15,000,000 part of $150,000,000 | N/A | N/A | Occurrence |
| Property (Layer 3) *See Note 1. Below | $150,000,000 | 10% or $10,000,000 part of $100,000,000 | N/A | N/A | Occurrence |
| Employment Practices Liability *See Note 2. Below | $50,000,000 | $25,000,000 | $25,000,000 | $75,000,000 | Claims Made |
| Fiduciary Liability *See Note 3. Below | $40,000,000 | $5,000,000 | $5,000,000 | $15,000,000 | Claims Made |
| Excess Liability *See Note 4. Below | $25,000,000 | $25,000,000 | $25,000,000 General Aggregate $25,000,000 Products & Completed Operations Aggregate | $75,000,000 | Occurrence |
| Texas Employers Excess Indemnity *See Note 5. Below | $30,000,000 Each Accident/Each Employee for Disease | $25,000,000 Each Accident/Each Employee for Disease | $25,000,000 Each Accident/Each Employee for Disease | $75,000,000 Each Accident/Each Employee for Disease | Occurrence |
| **Security Errors & Omissions | $20,000,000 | $10,000,000 | $10,000,000 Products & Completed Operations Aggregate | $10,000,000 | Claims Made |

**Security Errors & Omissions effective February 19, 2014 to February 19, 2015.

STF-IRP-100C Page 1 of 2

Note 1. Property Layer 1 is effective March 1, 2013 and expires under this policy March 1, 2014. Property Layers 2 and 3 are for an annual term (March 1, 2013 – March 1, 2014) and to be renegotiated annually.

Note 2. Employment Practices Liability is effective February 1, 2013 and expires under this policy February 1, 2016

Note 3. Fiduciary Liability is effective February 1, 2013 and expires under this policy February 1, 2016

Note 4. Excess Liability, Automobile Liability limits are not aggregated. Coverage is effective March 1, 2013 and expires under this policy March 1, 2016. As respects General Liability including Products & Completed Operations for US, PR, USVI & Guam, the underlying limit of liability is $25,000,000 per occurrence/NIL aggregate.

Note 5. Texas Employers Excess Indemnity is effective March 1, 2013 and expires under this policy March 1, 2016

C. Endorsements to this Policy (Effective at Inception):

| Endorsement # | Title | Coverage Form Applicable to |
|---|---|---|
| 1 | Non Certified Terrorism Exclusion Endorsement | General Terms and Conditions Form |
| 2 | Named Insured Indemnification Endorsement | General Terms and Conditions Form |
| 3 | Nuclear Exclusion Endorsement | General Terms and Conditions Form |
| 4 | Premium Adjustment Endorsement | General Terms and Conditions Form |
| 5 | Exclusion of Loss Resulting from Certified Acts of Terrorism with Exceptions and Sublimits Endorsement | Property Manuscript Form |
| 6 | Standard Mortgage Clause Emdprse,emt | Property Manuscript Form |
| 7 | Insured's Obligation as Insurer Endorsement | Property Manuscript Form |
| 8 | Cancellation Clause Amended Endorsement | Property Manuscript Form |
| 9 | Miscellaneous Unnamed Locations Endorsement | Property Manuscript Form |
| 10 | Mold Fungus Exclusion Endorsement | Property Manuscript Form |
| 11 | Information Hazards Technology Exclusion Endorsement | Property Manuscript Form |
| 12 | Absolute Terrorism Exclusion Endorsement | Property Manuscript Form |
| 13 | International Property Endorsement | Property Manuscript Form |
| 14 | Tidal Wave Endorsement | Property Manuscript Form |
| 15 | Products Liability "Batch" wording Endorsement | Excess Liability Coverage Form |
| 16 | Fungus Exclusion Endorsement | Excess Liability Coverage Form |
| 17 | Incidental Medical Malpractice Endorsement | Excess Liability Coverage Form |
| 18 | Industrial Aid Aircraft Endorsement | Excess Liability Coverage Form |
| 19 | No Drop Down Endorsement | Excess Liability Coverage Form |
| 20 | Watercraft Liability Exclusion Endorsement | Excess Liability Coverage Form |
| 21 | Aircraft Products and Grounding Exclusion Endorsement | Excess Liability Coverage Form |
| 22 | Blended Pollution Endorsement | Excess Liability Coverage Form |
| 23 | Retained Amount Endorsement | Excess Liability Coverage Form |
| 24 | Fiduciary Annual Review Endorsement | Fiduciary Liability Coverage Form |

D. Extended Reporting Period (Applicable to Claims Made Policies Only)

Additional Premium: Per the applicable controlling policy

Coverage Period: One Year

_____
Authorized Representative

12-5-2014
Date

STF-IRP-100C  Page 2 of 2