EXHIBIT

A

Steadfast Insurance Company

I hereby certify this is a true and correct copy of the original policy number

_____ glo4887714-04 _____ to the best of my belief and knowledge.

Dated _____ day of _____ 1/31/2022 _____ , 20 _____ .

By _____ joanna szoblik _____

Subscribed and sworn before me on the _____ day of _____ , 20 _____ .

_____

Notary Public

STEADFAST 008888



# Disclosure Statement

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED / ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

STEADFAST 008889

**Disclosure Statement** 

**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number: (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

STEADFAST 008890

**ZURICH**

**COMMERCIAL INSURANCE**

**COMMON POLICY DECLARATIONS**

| Policy Number | GLO 4887714-04 | Renewal of Number | GLO 4887714-03 |
|---|---|---|---|

Named Insured and Mailing Address

THE HOME DEPOT, INC.
2455 PACES FERRY RD NW
ATLANTA GA 30339-4024

Producer and Mailing Address

MARSH USA,INC.
3560 LENOX RD NE STE 2400
ALLIANCE CENTER TWO
ATLANTA GA 30326-4266

Producer Code    18418-000

Policy Period:  Coverage begins   03-01-2014   at 12:01 A.M.;  Coverage ends 03-01-2015   at 12:01 A.M.

The name insured is  ☐ Individual      ☐ Partnership      ☒ Corporation
                     ☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE                          PREMIUM  $
 issued by STEADFAST INSURANCE COMPANY

FL HURRICANE CATASTROPHE FUND                                $
FL FIGA 2012                                                 $
KY SURCHARGE                                                 $
NJ PROP LIAB INS GUAR ASSOC SURCHARGE                        $

| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.** | **TOTAL** | $ | |
|---|---|---|---|
| This premium does not include Taxes and Surcharges. | | SEE INSTALLMENT SCHEDULE | |
| **Taxes and Surcharges** | **TOTAL** | $ | |
| | | SEE INSTALLMENT SCHEDULE | |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this        day of

                                                        Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

STEADFAST 008894



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

_Nancy D. Mueller_

President

_Don J Kenny Jr._

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email:** info.source@zurichna.com

---

STEADFAST 008892

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number: GLO 4887714-04

# STEADFAST INSURANCE COMPANY

Named Insured
THE HOME DEPOT, INC.

Policy Period: Coverage begins 03-01-2014 at 12:01 A.M.; Coverage ends 03-01-2015 at 12:01 A.M.

Producer Name: MARSH USA,INC.                    Producer No. 18418-000

**Item 1.** Business Description: CORPORATION

**Item 2.** Limits of Insurance

**The Limits of Insurance stated below are the most available to pay damages, medical expenses and "allocated loss adjustment expenses" covered by this policy. Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.**

LIMITS

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT | $ 9,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 9,000,000 | |
| EACH OCCURRENCE LIMIT | $ 9,000,000 | |
| DAMAGE TO PREMISES | | |
| RENTED TO YOU LIMIT | $ 9,000,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 9,000,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 9,000,000 | |
| | | Any one person or organization |

**Item 3.** Form of Business and Location Premises

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 4.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 5.** Premiums

Coverage Part Premium: ███████

Other Premium:

Total Premium: ███████

U-GL-D-1286-A CW (09/06)
Page 1 of 1
STEADFAST 008895

# Employee Benefits Liability –
# Claims-Made Coverage Form

**This Coverage Form provides *claims-made* coverage. Please read the entire form carefully.**
Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

**Other words and phrases that appear in quotes have special meaning. Refer to the Definitions Section.**

## Section I. Coverage - Employee Benefit Liability

**1. Insuring Agreement**

**A.** We will pay those sums that the "insured" becomes legally obligated to pay as damages because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs". We will have the right and duty to defend the "insured" against any suit seeking those damages. However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply. We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

**(1)** The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B. (1)** This insurance applies to an act, error or omission only if:

**a.** A "claim" arising out of the act, error or omission is first made against any "insured" during the policy period;

**b.** The act, error, or omission takes place in the "coverage territory";

**c.** The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

**d.** The act, error, or omission did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period.

**(2)** A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured" or by us, whichever comes first. "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**2. Exclusions**

This insurance does not apply to:

**A.** "Bodily injury", "property damage", or "personal and advertising injury";

**B.** Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.** Any "claim" or "suit" arising out of discrimination or humiliation;

**D.** Any "claim" or "suit" arising out of an insurer's or other provider's failure to perform its contract;

**E.** Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

**F.** Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.** Any "claim" or "suit" arising out of:

**(1)** Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**(2)** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

STEADFAST 008894

**(3)** Any investment activity, including the management, administration or disposition of assets of your "employee benefit programs"; or

**(4)** Failure of any investment to perform as represented by any "insured".

**H.** Any "claim" or "suit" arising out of an "insured's" liability as a fiduciary under:

**a.** The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

**b.** The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3. Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any "claim" we investigate or settle or "suit" we defend:

**A.** All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our insurance.

**B.** Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

**C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**D.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**II. Limits of Insurance**

**A.** The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

**(1)** "Insureds";

**(2)** "Claims" made or "suits" brought; or

**(3)** "Employees" or dependents or beneficiaries of "employees" making "claims" or bringing "suits".

**B.** The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

**C.** Subject to the Aggregate Limit provisions in **B.** above, the Each Claim Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

**D.** The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**III. Conditions**

**A. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B. Duties in the Event of an Act, Error, Omission, Claim or Suit**

**(1)** Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a "claim". To the extent possible, notice should include:

**a.** How, when, and where the act, error, or omission took place;

**b.** The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

Notice of an act, error, or omission is not notice of a "claim".

**(2)** If a "claim" is received by any "insured", you must:

**a.** Immediately record the specifics of the "claim" and the date received; and

**b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

**(3)** You and any other involved "insured" must:

**a.** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

**b.** Authorize us to obtain records and other information;

STEADFAST 008895

**c.** Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D. Other Insurance**

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

**(1) Primary Insurance**

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

**(2) Excess Insurance**

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

**a.** No Retroactive Date is shown in the Declarations of this insurance; or

**b.** The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**i.** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**ii.** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**(3) Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom "claim" is made or "suit" is brought.

**F. Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV. Definitions**

STEADFAST 008896

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  **(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

  **(1)** Counseling "employees", including their de-pendents and beneficiaries, with respect to "employee benefit programs";

  **(2)** Handling records in connection with "employee benefit programs"; or

  **(3)** Effecting or terminating an "employee's" par-ticipation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or dis-ease sustained by a person, including death result-ing from any of these at any time.

**D.** "Claim" means:

  The receipt by you of a demand for money or ser-vices which alleges an act, error, or omission in the "administration" of your "employee benefit pro-grams."

**E.** "Coverage territory" means:

  **(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

  **(2)** All parts of the world if the "insured's" respon-sibility to pay damages is determined in a "suit" on the merits, in the territory described in **E. 1.** above, or in a settlement to which we agree.

**F.** "Employee" means:

  Your officers and employees, whether actively em-ployed, disabled, or retired.

**G.** "Employee benefit programs" mean:

  Group life insurance, group accident or health in-surance, profit sharing plans, pension plans, em-ployee stock subscription plans, workers compensa-tion, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**H.** "Insured" means:

You and any of your partners, executive officers, di-rectors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit pro-grams".

**I.** "Personal and advertising injury" means:

  Injury, including consequential "bodily injury", aris-ing out of one or more of the following offenses:

  **(1)** False arrest, detention, or imprisonment;

  **(2)** Malicious prosecution;

  **(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person oc-cupies by or on behalf of its owner, landlord, or lessor;

  **(4)** Oral or written publication, in any manner, of material that slanders or libels a person or or-ganization or disparages a person's or organi-zation's goods, products, or services; or

  **(5)** Oral or written publication,' in any manner, of material that violates a person's right of pri-vacy;

  **(6)** The use of another's advertising idea in your "advertisement"; or

  **(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**J.** "Property damage" means:

  **(1)** Physical injury to tangible property, including all resulting loss of use of that property.

  **(2)** Loss of use of tangible property that is not physically injured.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means in-formation, facts or programs stored as or on, cre-ated or used on, or transmitted to or from computer software, including systems and applications, soft-ware, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**K.** "Suit" means:

  A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

  **(1)** An arbitration proceeding in which such dam-ages are claimed and to which you must submit or do submit with our consent; or

  **(2)** Any other alternative dispute resolution pro-ceeding in which such damages are claimed and to which you submit with our consent.

STEADFAST 008897

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Policy Number: GLO 4887714-04

Named Insured: THE HOME DEPOT, INC.

Policy Period: Coverage begins 03-01-2014 at 12:01 A.M; Coverage ends 03-01-2015 at 12:01 A.M

Producer Name: MARSH USA,INC.                    Producer No. 18418-000

**Item 1.** Limits of Insurance

$  9,000,000  Aggregate Limit
$  9,000,000  Each Claim Limit

**Item 2.** Form of Business:

[ ] Individual    [ ] Parnership    [ ] Joint Venture    [X] Corporation
[ ] Other
_____

**Item 3.** Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | Advance Premium |
|---|---|---|---|
| ████████████████████████████████████████████████████████ | | | |
| | | $ _____ Flat Charge | $ _____ |

Total Advance Premium For This Coverage Part:     $ ████ _____

Audit Period: [X] Annual    [ ] Semi-annual    [ ] Quarterly    [ ] Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

_____ (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

U-GL-D-849-B CW (9/04)
Page 1 of 1

STEADFAST 008898

**Policy Number**
**GLO 4887714-04**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**Steadfast Insurance Company**

Named Insured  THE HOME DEPOT, INC.                    Effective Date: 03-01-14
                                                       12:01 A.M., Standard Time

Agent Name   MARSH USA INC                             Agent No.  18418-000

COMMON & GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-GL-D-1286-A CW | 09-06 | COMMERCIAL GEN LIAB COVERAGE PART DEC |
| U-GL-849-B CW | 08-04 | EMPLOYEE BENEFITS LIABILITY-CLAIMS MADE |
| U-GL-D-849-B CW | 09-04 | EMPLOYEE BENEFITS LIAB DEC - CLAIMS MADE |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-406-A | 07-94 | INSTALLMENT PREMIUM SCHEDULE |
| U-GL-1114-A CW | 10-02 | BROAD FORM NAMED INSURED |
| U-GL-1114-A CW | 10-02 | AMENDED DEFINITION OF BODILY INJURY |
| U-GL-1114-A CW | 10-02 | BATCH CLAUSE ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | FELLOW EMPLOYEE COVERAGE |
| U-GL-1114-A CW | 10-02 | INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT |
| U-GL-1114-A CW | 10-02 | DIFFERENCE IN LIMITS - GENERAL LIABILITY |
| U-GL-1114-A CW | 10-02 | CANCELLATION BY US |
| U-GL-1114-A CW | 10-02 | ARBITRATION CLAUSE |
| U-GL-1114-A CW | 10-02 | PROFESSIONAL LIABILITY EXCLUSION - ELECTRONIC DATA |
| U-GL-1114-A CW | 10-02 | AIRCRAFT PRODUCTS, GROUNDING & TESTING EXCLUSION |
| U-GL-1114-A CW | 10-02 | TIME ELEMENT POLLUTION |
| U-GL-1114-A CW | 10-02 | AMENDMENT - DEFINITION OF PERSONAL INJURY |
| U-GL-1114-A CW | 10-02 | ADDITIONAL INSURED - STATE OR GOVERNMENT |
| U-GL-1114-A CW | 10-02 | ADDITIONAL INSURED - STATE OR GOVERNMENT |
| U-GL-1114-A CW | 10-02 | AMENDATORY ENDORSEMENT - NON-OWNED WATERCRAFT COVERAGE |
| U-GL-1114-A CW | 10-02 | SELF INSURED RETENTION |
| U-GL-1114-A CW | 10-02 | AMENDMENT - CANCELLATION BY US |
| U-GU-630-C | 12-07 | DISCLOSURE OF IMPORTANT INFO REL TO TRIA |
| U-GL-1287-A CW | 09-06 | COMMERCIAL GEN LIAB COVERAGE FORM |
| STF-GU-199-B | 01-09 | IMPORTANT NOTICE SEV. OF SUIT/IN WITNESS |
| U-GL-1175-F CW | 04-13 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1177-F CW | 04-13 | ADL INSD OWNER,LESSE,CONT-SCHEDULED |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-1296-A CW | 01-07 | FIRST NAMED INSURED INDEMNIFICATION ENDT |
| U-GL-1326-B CW | 10-07 | DEDUCTIBLE |
| U-GL-918-B CW | 08-04 | NEWLY FORMED ORGANIZATIONS COVERAGE ENDT |
| U-GL-920-A CW | 12-97 | NONOWNED WATERCRAFT COVERAGE ENDT |
| U-GL-921-B CW | 12-97 | AMENDMENT OF REPRESENTATIONS CONDITION |
| U-GL-922-B CW | 12-01 | NOTICE OF ERROR IN CLAIM REPORTING ENDT |
| U-GL-925-B CW | 12-01 | WAIVER OF SUBROGATION (BLANKET) ENDT. |
| U-GU-1016-A CW | 06-10 | KNOWLEDGE BY POSITION OR DEPARTMENT |
| CG 01 44 | 10-11 | SOUTH DAKOTA CHANGES |
| CG 01 79 | 07-10 | VIRGINIA CHANGES |
| CG 02 20 | 03-12 | FL CHANGES - CANCELLATION & NONRENEWAL |
| CG 02 37 | 05-13 | NJ CHNGS-TERMINATION PROVISION-DRIVER ED |
| CG 20 10 | 04-13 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS |
| CG 20 11 | 04-13 | ADDL INSD-MANAGERS/LESSORS OF PREMISES |
| CG 20 12 | 04-13 | ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM |
| CG 20 15 | 04-13 | ADDL INSD-VENDORS |
| CG 20 26 | 04-13 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |

**U-GU-619-A CW (10/02)**

STEADFAST 008899

**Policy Number**
**GLO 4887714-04**

### SCHEDULE OF FORMS AND ENDORSEMENTS

**Steadfast Insurance Company**

| | |
|---|---|
| Named Insured   THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | 12:01 A.M., Standard Time |
| Agent Name    MARSH USA INC | Agent No.  18418-000 |

```
CG 22 74              10-01     LIMITED CONTR LIABILITY COV FOR PERS/ADV
CG 24 17              10-01     CONTRACTUAL LIABILITY - RAILROADS
IL 00 03              09-08     CALCULATION OF PREMIUM
IL 00 17              11-98     COMMON POLICY CONDITIONS
IL 00 21              09-08     NUCLEAR ENERGY LIABILITY EXCLUSION ENDT
IL 01 38              11-11     VIRGINIA CHANGES
IL 02 34              09-08     NORTH DAKOTA CHANGES-CANC & NONRENL
IL 02 37              04-12     DELAWARE CHANGES-TERMINATION PROVISIONS
IL 02 62              09-08     GEORGIA CHANGES-CANC & NONRENL
IL 02 77              03-12     LOUISIANA CHANGES-CANC & NONRENL
U-GU-773-A            04-08     FL-DISCLOSURE IMPORTANT INFO REL TO TRIA
U-GU-767-A CW         01-08     CAP ON LOSSES FROM CERTIFIED ACTS OF TER
CG 01 02              04-13     NEW HAMPSHIRE CHANGES
U-GU-1169-A CO        06-13     CO CIVIL UNION ACT POLICYHOLDER NOTICE
STF-SC-113            04-04     FUNGI AND BACTERIA EXCLUSION
```

**U-GU-619-A CW (10/02)**

STEADFAST 008900

**INSTALLMENT PREMIUM SCHEDULE**

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amount shown below.

| NAMED INSURED | POLICY NUMBER |
|---|---|
| THE HOME DEPOT, INC. | GLO 4887714-04 |

| PAYMENT DUE | STANDARD PREMIUM | TAXES PREPAID | TOTAL PREMIUM |
|---|---|---|---|
| ------- | ------- | ------ | ------ |
| ▬▬ | ▮ | ▬▬ | ▮ | ▬▬ | ▮ | ▬▬ |
| ▬ | ▮ | ▬▬ | ▮ | ▬ | ▮ | ▬▬ |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

STEADFAST 008901

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured    THE HOME DEPOT, INC.                    Effective Date:    03-01-14

12:01 A.M., Standard Time

Agent Name       MARSH USA,INC.                          Agent No.    18418-000

## BROAD FORM NAMED INSURED

THE HOME DEPOT, INC., AND ANY SUBSIDIARY COMPANY AS NOW FORMED OR
CONSTITUTED, AND ANY OTHER COMPANY OVER WHICH THE NAMED INSURED HAS
ACTIVE CONTROL SO LONG AS THE NAMED INSURED OR ANY SUBSIDIARY COMPANY
HAS AN OWNERSHIP INTEREST OF 50% OR MORE OF SUCH COMPANY.

**U-GL-1114-A CW (10/02)**

STEADFAST 008902

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured    THE HOME DEPOT, INC.        Effective Date:    03-01-14

                                                    12:01 A.M., Standard Time

Agent Name      MARSH USA,INC.              Agent No.     18418-000

## AMENDED DEFINITION OF BODILY INJURY

THE DEFINITION OF "BODILY INJURY" IN SECTION V – DEFINITION IS
REPLACED BY THE FOLLOWING:

3. "BODILY INJURY" MEANS  BODILY INJURY, SICKNESS OR DISEASE
   SUSTAINED BY A PERSON.  THIS INCLUDES MENTAL ANGUISH, HUMILIATION,
   MENTAL INJURY, SHOCK, FRIGHT OR DEATH RESULTING FROM BODILY
   INJURY, SICKNESS OR DISEASE.

**U-GL-1114-A CW (10/02)**

STEADFAST 008903

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured   THE HOME DEPOT, INC.                    Effective Date:   03-01-14
                                                        12:01 A.M., Standard Time

Agent Name   MARSH USA,INC.                    Agent No.   18418-000

## BATCH CLAUSE ENDORSEMENT

IT IS AGREED THAT ALL BODILY INJURY OR PROPERTY DAMAGE COVERAGE
PROVIDED UNDER THIS COVERAGE FORM, WHICH IS PART OF THIS POLICY AT
INCEPTION, IS AMENDED AS FOLLOWS:

ALL DAMAGES ARISING OUT OF ONE LOT OF "YOUR PRODUCTS" PREPARED OR
ACQUIRED BY YOU OR BY ANOTHER TRADING UNDER YOUR NAME SHALL BE DEEMED
AS ARISING OUT OF ONE OCCURRENCE OR RESULTING FROM A SINGLE INCIDENT,
REGARDLESS OF THE NUMBER OF CLAIMANTS, SUITS OR EVENTS

FOR THE PURPOSES OF THIS DEFINITION, ONE LOT OF GOODS OR PRODUCTS
MEANS "YOUR PRODUCTS" SUBJECT TO SUBSTANTIALLY THE SAME ERROR OR
DEFECT.

IN SUCH A SITUATION, THE INSURED'S PER LOSS RETENTION SHALL BE U.S.
$1,000,000 PER EVENT.

**U-GL-1114-A CW (10/02)**

STEADFAST 008904

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured    THE HOME DEPOT, INC.                     Effective Date:    03-01-14

12:01 A.M., Standard Time

Agent Name       MARSH USA,INC.                           Agent No.    18418-000

## FELLOW EMPLOYEE COVERAGE

1. IT IS AGREED THAT PARAGRAPH 2.A.(1) OF SECTION II – WHO IS AN
INSURED IS DELETED AND REPLACED BY THE FOLLOWING:

   (1) "BODILY INJURY" OR "PERSONAL AND ADVERTISING INJURY"

      (A) TO YOU, TO YOUR PARTNERS OR MEMBERS (IF YOU ARE A
          PARTNERSHIP OR JOINT VENTURE), TO YOUR MEMBERS (IF YOU
          ARE A LIMITED LIABILITY COMPANY);

      (B) FOR WHICH THERE IS ANY OBLIGATION TO SHARE DAMAGES WITH
          OR REPAY SOMEONE ELSE WHO MUST PAY DAMAGES BECAUSE OF THE
          INJURY DESCRIBED IN PARAGRAPH (1)(A) ABOVE.

**U-GL-1114-A CW (10/02)**

STEADFAST 008905

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| Named Insured | THE HOME DEPOT, INC. | Effective Date: | 03-01-14 |
| | | 12:01 A.M., Standard Time | |

| Agent Name | MARSH USA,INC. | Agent No. | 18418-000 |

### INCIDENTAL MEDICAL MALPRACTICE ENDORSEMENT

1.)   IN CONSIDERATION OF THE PAYMENT OF THE ADDITIONAL PREMIUM SET
      FORTH IN THE DECLARATIONS OF THIS POLICY, THE COVERAGE UNDER THIS
      COVERAGE FORM IS EXTENDED TO INCLUDE COVERAGE FOR ALL LOSS THE
      INSURED BECOMES LEGALLY OBLIGATED TO PAY BECAUSE OF:

   I.)  THE RENDERING OF OR FAILURE TO RENDER MEDICAL OR PARAMEDICAL
        SERVICES, AND/OR

   II.) THE LEGAL FURNISHING OR LEGAL DISPENSING OF DRUGS OR MEDICAL
        SUPPLIES TO PERSONS BY A PHYSICIAN, DENTIST, NURSE,
        EMERGENCY MEDICAL TECHNICIAN OR PARAMEDIC AND ANY OTHER
        EMPLOYEE UNDER THE DIRECT SUPERVISION AND DIRECTION OF A
        PHYSICIAN, DENTIST, NURSE, EMERGENCY MEDICAL TECHNICIAN
        OR PARAMEDIC, WHO IS EMPLOYED BY ANY INSURED TO PROVIDE SUCH
        SERVICES.

2.)   FOR PURPOSES OF THIS ENDORSEMENT ONLY, THE DEFINITION OF INSURED
      IN THE UMBRELLA LIABILITY COVERAGE FORM IS AMENDED TO ALSO
      INCLUDE ANY PHYSICIAN, DENTIST, NURSE EMERGENCY MEDICAL
      TECHNICIAN OR PARAMEDIC EMPLOYED BY AND INSURED TO PROVIDE
      MEDICAL OR PARAMEDIC SERVICES, BUT ONLY WHILE ACTING IN THE
      SCOPE OF THEIR EMPLOYMENT AS RESPECTS 1.) ABOVE.

3.)   FOR PURPOSES OF THE ENDORSEMENT ONLY, EMPLOYEES REFERENCED IN 2)
      ABOVE SHALL BE CONSIDERED TO BE ACTING WITHIN THE SCOPE OF THEIR
      EMPLOYMENT WHILE ENGAGED IN MEDICAL OR PARAMEDIC ACTIVITIES
      GENERALLY REFERRED TO AS "GOOD SAMARITAN".THEIR EMPLOYMENT WHILE
      ENGAGED IN MEDICAL OR PARAMEDIC ACTIVITIES GENERALLY REFERRED TO
      AS "GOOD SAMARITAN".

STEADFAST 008906

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured   THE HOME DEPOT, INC.         Effective Date:   03-01-14
                                                          12:01 A.M., Standard Time

Agent Name     MARSH USA,INC.               Agent No.   18418-000

## DIFFERENCE IN LIMITS – GENERAL LIABILITY

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SCHEDULE

| INSURANCE COMPANY | POLICY NUMBER |
|---|---|
| ZURICH INSURANCE COMPANY LTD. | 8838254 |

WHEN, AS A RESULT OF A CLAIM SETTLEMENT, JUDGMENT, OR "SUIT", A LOSS COVERED BY THE LOCAL POLICY SHOWN IN THE SCHEDULE ABOVE EXCEEDS THE PER OCCURRENCE OR PER ACCIDENT LIMIT ON THAT POLICY, AND INSURANCE IS ALSO PROVIDED BY THIS POLICY FOR THAT LOSS, THIS POLICY SHALL RESPOND TO THAT PART OF THE SETTLEMENT, JUDGMENT, OR "SUIT" THAT EXCEEDS THE OCCURRENCE OR ACCIDENT LIMIT ON THE LOCAL POLICY, BUT ONLY TO THE EXTENT OF THE DIFFERENCE BETWEEN THE APPLICABLE LIMIT OF INSURANCE ON THIS POLICY AND THE APPLICABLE LIMIT OF INSURANCE ON THE LOCAL POLICY.

ALL PAYMENTS MADE UNDER ANY LOCAL POLICY SHALL REDUCE THE LIMITS OF INSURANCE OF THIS POLICY. ANY PAYMENT MADE UNDER THIS POLICY OR THE LOCAL POLICY SHOWN IN THE SCHEDULE ABOVE WILL BE TREATED AS PAID UNDER THIS POLICY FOR PURPOSES OF DETERMINING THE LIMITS OF INSURANCE AVAILABLE UNDER THE GENERAL AGGREGATE LIMIT AND PRODUCTS–COMPLETED OPERATIONS AGGREGATE.

**U-GL-1114-A CW (10/02)**

STEADFAST 008907

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date:  03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No.  18418-000 |

## CANCELLATION BY US

THIS ENDORSEMENT AMENDS SECTION A "CANCELLATION" OF THE COMMON POLICY
CONDITIONS TO READ:

A CANCELLATION – TO SATISFY THE CONTRACTUAL OBLIGATIONS OF THE
INSURED, THIS POLICY MAY NOT BE CANCELLED FOR ANY REASON, INCLUDING
NON-PAYMENT OF PREMIUM.

**U-GL-1114-A CW (10/02)**

STEADFAST 008908

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA, INC. | Agent No. 18418-000 |

## ARBITRATION CLAUSE

IT IS AGREED THAT THE FOLLOWING ARBITRATION CLAUSE IS ADDED TO THE POLICY:

ANY DISPUTE ARISING OUT OF THE INTERPRETATION, PERFORMANCE OR ALLEGED BREACH OF THIS AGREEMENT, SHALL BE SETTLED BY BINDING ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION (AAA) UNDER ITS COMMERCIAL ARBITRATION RULES IN EFFECT AT THE TIME OF THE DISPUTE AND THE FOLLOWING PROCEDURES:

1. WRITTEN NOTICE REQUESTING ARBITRATION WILL BE SENT BY THE INITIATING PARTY VIA CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, TO THE OTHER PARTY WITH THE REQUIRED COPIES TO THE AAA. THE NOTICE SHALL STATE THE NATURE OF THE DISPUTE, THE AMOUNT INVOLVED, IF ANY, AND THE REMEDY SOUGHT.

2. A PANEL SHALL BE MADE UP OF THREE NEUTRAL, IMPARTIAL ARBITRATORS SELECTED ACCORDING TO THE AAA COMMERCIAL ARBITRATION RULES IN EFFECT AT THE TIME OF THE DISPUTE.

3. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE ADMINISTERED BY THE AAA'S ATLANTA, GA OFFICE AND ALL HEARINGS SHALL BE CONDUCTED IN ATLANTA, GA.

4. THE ARBITRATORS SHALL NOT LIMIT, EXPAND OR MODIFY THE TERMS OF THIS AGREEMENT NOR AWARD DAMAGES IN EXCESS OF COMPENSATORY DAMAGES UNDER THIS AGREEMENT. SUCH EXCESS DAMAGES WOULD INCLUDE WITHOUT LIMITATION ANY FORM OF FINE OR MULTIPLE, PUNITIVE OR EXEMPLARY DAMAGES AND EACH PARTY WAIVES ANY CLAIM TO SUCH EXCESS DAMAGES. CONFIRMATION OF THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.

5. THE PARTIES SHALL DIVIDE EQUALLY AND PAY ONE HALF EACH OF THE ARBITRATOR FEES AND EXPENSES AND THE COST OF THE ARBITRATION PROCEEDING (EXCEPT WITNESSES). EACH PARTY SHALL PAY ITS OWN COSTS OF COUNSEL AND WITNESSES.

STEADFAST 008909

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No. 18418-000 |

### PROFESSIONAL LIABILITY EXCLUSION – ELECTRONIC DATA

PROFESSIONAL LIABILITY EXCLUSION—ELECTRONIC DATA PROCESSING SERVICES AND COMPUTER CONSULTING OR PROGRAMMING SERVICES

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

THE FOLLOWING IS ADDED TO PARAGRAPH 2., EXCLUSIONS OF SECTION I—COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY AND SECTION I—COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:

2.  EXCLUSIONS

   THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" ARISING OUT OF THE RENDERING OF, OR FAILURE TO RENDER, ELECTRONIC DATA PROCESSING, COMPUTER CONSULTING OR COMPUTER PROGRAMMING SERVICES, ADVICE OR INSTRUCTION BY:

   A.  THE INSURED; OR

   B.  ANY PERSON OR ORGANIZATION:

      (1) FOR WHOSE ACTS, ERRORS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE; OR

      (2) FROM WHOM THE INSURED ASSUMED LIABILITY BY REASON OF A CONTRACT OR AGREEMENT.

THIS EXCLUSION DOES NOT APPLY TO EXPOSURES ARISING OUT OF THE "HOW TO WORKSHOPS" CONDUCTED BY THE INSURED.

**U-GL-1114-A CW (10/02)**

STEADFAST 008910

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| Named Insured | THE HOME DEPOT, INC. | Effective Date: | 03-01-14 |
| --- | --- | --- | --- |
| | | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA, INC. | Agent No. | 18418-000 |

## AIRCRAFT PRODUCTS, GROUNDING & TESTING EXCLUSION

IT IS AGREED THAT:

EXCLUSIONS OF THE GENERAL LIABILITY COVERAGE FORM UNDER COVERAGE A AND COVERAGE B ARE AMENDED BY ADDING THE FOLLOWING EXCLUSION:

A.11. AIRCRAFT PRODUCTS EXCLUSION:

UNDER COVERAGE A AND COVERAGE B COVERAGE DOES NOT APPLY TO ANY LIABILITY, DAMAGE, LOSS, COST OR EXPENSE INCLUDED IN THE PRODUCTS-COMPLETED OPERATIONS HAZARD AND ARISING OUT OF ANY "AIRCRAFT PRODUCT" OR THE "GROUNDING" OF ANY AIRCRAFT.

1. "AIRCRAFT PRODUCT" MEANS:

A. AIRCRAFT (INCLUDING MISSILES OR SPACECRAFT, AND ANY GROUND SUPPORT OR CONTROL EQUIPMENT USED THEREWITH);

B. ANY ARTICLE FURNISHED BY ANY INSURED OR ON BEHALF OF ANY INSURED, AND INSTALLED IN AN AIRCRAFT OR USED IN CONNECTION WITH AN AIRCRAFT, OR FOR SPARE PARTS FOR AN AIRCRAFT, INCLUDING GROUND HANDLING TOOLS AND EQUIPMENT;

C. ANY INSURED'S PRODUCTS USED AT AN AIRPORT FOR THE PURPOSE OF GUIDANCE, NAVIGATION OR DIRECTION OF AIRCRAFT; AND

D. TRAINING AIDS, INSTRUCTIONS, MANUALS, BLUEPRINTS, ENGINEERING OR OTHER DATA OR ADVICE, AND SERVICES AND LABOR RELATING TO SUCH AIRCRAFT, ARTICLES OR PRODUCTS.

2. "GROUNDING" MEANS THE WITHDRAWAL OF ONE OR MORE AIRCRAFT FROM FLIGHT OPERATIONS OR THE IMPOSITION OF SPEED, PASSENGER OR LOAD RESTRICTIONS ON SUCH AIRCRAFT, BY REASON OF THE EXISTENCE OF OR ALLEGED OR SUSPECTED EXISTENCE OF ANY DEFECT, FAULT OR CONDITION IN SUCH AIRCRAFT OR ANY PART THEREOF SOLD, HANDLED OR DISTRIBUTED BY ANY INSURED OR ON BEHALF OF ANY INSURED, OR MANUFACTURED, ASSEMBLED OR PROCESSED BY ANY OTHER PERSON OR ORGANIZATION:

A. ACCORDING TO THE SPECIFICATIONS, PLANS, SUGGESTIONS, ORDERS, OR DRAWINGS PROVIDED BY ANY INSURED OR ON BEHALF OF ANY INSURED; OR

B. WITH TOOLS, MACHINERY OR OTHER EQUIPMENT FURNISHED TO SUCH PERSONS OR ORGANIZATIONS BY ANY INSURED OR ON BEHALF OF ANY INSURED, WHETHER SUCH AIRCRAFT SO WITHDRAWN ARE OWNED OR OPERATED BY THE SAME OR DIFFERENT PERSONS, ORGANIZATIONS OR CORPORATIONS.

HOWEVER, THE ABOVE EXCLUSION DOES NOT APPLY IN THE EVENT A PRODUCT WHEN ORIGINALLY SOLD WAS NOT INTENDED FOR USE IN AIRCRAFT."

STEADFAST 008911

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA, INC. | Agent No. 18418-000 |

## TIME ELEMENT POLLUTION

SECTION I.2 EXCLUSIONS; ITEM F OF THE GENERAL LIABILITY COVERAGE FORM IS DELETED IN ITS ENTIRETY AND REPLACED WITH THE FOLLOWING:

F. POLLUTION

(I) TO ANY LIABILITY, DAMAGE, LOSS, COST OR EXPENSE:

    A. ARISING DIRECTLY OR INDIRECTLY OUT OF AN ACTUAL, ALLEGED OR THREATENED EXISTENCE, DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS; OR

    B. ARISING OUT OF ANY:

        1. REQUEST, DEMAND OR ORDER THAT ANY INSURED OR OTHERS TEST FOR, MONITOR, CLEAN-UP, REMOVE, CONTAIN, TREAT, DETOXIFY OR NEUTRALIZE, OR IN ANY WAY RESPOND TO, OR ASSESS THE EFFECTS OF POLLUTANTS; OR

        2. CLAIM OR SUIT BY OR ON BEHALF OF A GOVERNMENTAL AUTHORITY FOR DAMAGES BECAUSE OF TESTING FOR, MONITORING, CLEAN-UP, REMOVING, CONTAINING, TREATING, DETOXIFYING OR NEUTRALIZING, OR IN ANY WAY RESPONDING TO, OR ASSESSING THE EFFECTS OF POLLUTANTS.

(II) SUBSECTION (I.) OF THIS ENDORSEMENT DOES NOT APPLY TO BODILY INJURY OR PROPERTY DAMAGE:

    A. INCLUDED WITHIN THE PRODUCTS-COMPLETED OPERATIONS HAZARD;

    B. ARISING OUT OF ANY DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS CAUSED BY A HOSTILE FIRE, EXPLOSION, LIGHTNING; WINDSTORM; VANDALISM OR MALICIOUS MISCHIEF; RIOT OR CIVIL COMMOTION; FLOOD; EARTHQUAKE; COLLISION OR UPSET OF AN AUTO, OR MOBILE EQUIPMENT OR AIRCRAFT; AUTOMATIC SPRINKLER LEAKAGE OR HAIL; OR

    C. DIRECTLY CAUSED BY ANY DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS THAT:

        1. IS INSTANTANEOUS AND DEMONSTRABLE AS HAVING FIRST COMMENCED AT A SPECIFIC TIME AND DAY DURING THE POLICY PERIOD OF THIS POLICY;

        2. IS ACCIDENTAL AND NEITHER EXPECTED NOR INTENDED FROM THE STANDPOINT OF ANY INSURED;

        3. IS FIRST DISCOVERED BY ANY INSURED WITHIN TWENTY (20) DAYS OF ITS FIRST COMMENCEMENT; AND

        4. IS REPORTED TO US BY YOU NO LATER THAN EIGHTY (80) DAYS FOLLOWING THE FIRST DISCOVERY BY ANY INSURED.

STEADFAST 008912

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No. 18418-000 |

### TIME ELEMENT POLLUTION

(III) THE COVERAGE AFFORDED UNDER SUBSECTION (II) OF THIS ENDORSEMENT DOES NOT APPLY TO ANY LIABILITY, DAMAGE, LOSS, COST OR EXPENSE ARISING OUT OF:

A. CLEAN UP, REMOVAL, CONTAINMENT, TREATMENT, DETOXIFICATION OR NEUTRALIZATION OF POLLUTANTS EXISTING AT, OR UNDER OR WITHIN THE BOUNDARIES OF ANY PREMISES, SITE OR LOCATION OWNED, RENTED OR OCCUPIED BY ANY INSURED;

B. ANY DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS WHICH TAKES PLACE ON, AT OR FROM ANY SITE, PREMISES OR LOCATION:

    1. DESIGNATED AS A NATIONAL PRIORITIES LIST (SUPER FUND) SITE BY THE FEDERAL GOVERNMENT OR ANY SIMILAR DESIGNATION UNDER STATE OR LOCAL ENVIRONMENTAL REMEDIATION LAW;

    2. USED BY ANY INSURED, OR BY OTHERS ON BEHALF OF ANY INSURED, FOR THE HANDLING, STORAGE, DISPOSAL, DUMPING, PROCESSING OR TREATMENT OF WASTE;

    3. AT WHICH THE USUAL OR ROUTINE CONDUCT OF ANY INSURED'S BUSINESS HAS BEEN TERMINATED OR SUSPENDED OR WHICH ANY INSURED HAS SOLD, GIVEN AWAY OR ABANDONED;

    4. UNDERGROUND FACILITY OR ANY OTHER STORAGE, PROCESSING OR OTHER OPERATION OF ANY INSURED WHICH TAKES PLACE BENEATH THE SURFACE OF THE GROUND, INCLUDING BUT NOT LIMITED TO THE STORAGE, PROCESSING, REMOVAL OR LOSS OF SUB-SURFACE OIL OR GAS;

STEADFAST 008913

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| Named Insured | THE HOME DEPOT, INC. | Effective Date: | 03-01-14 |
|---|---|---|---|
| | | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA, INC. | Agent No. | 18418-000 |

### TIME ELEMENT POLLUTION

C. ANY FINES OR PENALTIES;

D. ACID RAIN; OR

E. ANY OFFSHORE FACILITY AS DEFINED IN THE OUTER CONTINENTAL
SHELF LANDS ACT AMENDMENT OF 1978 AS AMENDED, OR THE CLEAN
WATER ACT OF 1977 AS AMENDED; OR ANY DEEP-WATER PORT AS DEFINED
IN THE DEEP-WATER PORT ACT OF 1974 AS AMENDED; OR THE OIL
POLLUTION CONTROL ACT OF 1990 AS AMENDED.

(IV)   A. IF THE UNDERWRITER AND THE INSURED DO NOT AGREE WHETHER
INSURANCE IS PROVIDED BY THIS ENDORSEMENT, THEN EITHER PARTY
MAY MAKE A WRITTEN DEMAND FOR ARBITRATION OF SUCH ISSUE. WHEN
THIS DEMAND IS MADE, EACH PARTY WILL SELECT AN ARBITRATOR.
THE TWO ARBITRATORS WILL SELECT A THIRD.  IF THEY CANNOT AGREE
ON THE THIRD ARBITRATOR WITHIN THIRTY (30) DAYS, EITHER PARTY
MAY REQUEST THAT A SELECTION OF THE THIRD ARBITRATOR BE MADE BY
A JUDGE OF A COURT HAVING JURISDICTION.  EACH PARTY WILL PAY
THE COSTS OR EXPENSES IT INCURS, AND BEAR THE COSTS OR EXPENSES
OF THE THIRD ARBITRATOR EQUALLY.  UNLESS BOTH PARTIES AGREE
OTHERWISE, ARBITRATION WILL TAKE PLACE IN THE LOCALE IN WHICH
THE FIRST NAMED INSURED'S MAILING ADDRESS SHOWN IN THE
DECLARATIONS IS LOCATED.  ARBITRATION SHALL BE GOVERNED BY THE
AMERICAN ARBITRATION ASSOCIATION COMMERCIAL ARBITRATION RULES.
A DECISION AGREED TO BY TWO OF THE ARBITRATORS WILL BE BINDING
AND SHALL BE ENFORCEABLE IN THE SAME MANNER AS A FINAL JUDGMENT
IN ANY COURT OF COMPETENT JURISDICTION.  THE ARBITRATORS SHALL
HAVE NO AUTHORITY TO AWARD ANY  PUNITIVE,  EXEMPLARY  OR
EXTRA-CONTRACTUAL  DAMAGES,  COSTS  OR  EXPENSES.
NOTWITHSTANDING ANYTHING EXPRESSED HEREIN TO THE CONTRARY, THIS
ARBITRATION PROVISION SHALL NOT BE DEEMED TO OVERRIDE THE

**U-GL-1114-A CW (10/02)**

STEADFAST 008914

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date:  03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA, INC. | Agent No.  18418-000 |

### TIME ELEMENT POLLUTION

SERVICE OF SUIT PROVISION OF THIS POLICY.

B. ANY DISPUTE ARISING OUT OF THE INTERPRETATION, PERFORMANCE OR ALLEGED BREACH OF THIS AGREEMENT, SHALL BE SETTLED BY BINDING ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION (AAA) UNDER ITS COMMERCIAL ARBITRATION RULES IN EFFECT AT THE TIME OF THE DISPUTE AND THE FOLLOWING PROCEDURES:

1. WRITTEN NOTICE REQUESTING ARBITRATION WILL BE SENT BY THE INITIATING PARTY VIA CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, TO THE OTHER PARTY WITH THE REQUIRED COPIES TO THE AAA. THE NOTICE SHALL STATE THE NATURE OF THE DISPUTE, THE AMOUNT INVOLVED, IF ANY, AND THE REMEDY SOUGHT.

2. A PANEL SHALL BE MADE UP OF THREE NEUTRAL, IMPARTIAL ARBITRATORS SELECTED ACCORDING TO THE AAA COMMERCIAL ARBITRATION RULES IN EFFECT AT THE TIME OF THE DISPUTE.

3. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE ADMINISTERED BY THE AAA'S ATLANTA, GA OFFICE AND ALL HEARINGS SHALL BE CONDUCTED IN ATLANTA, GA.

4. THE ARBITRATORS SHALL NOT LIMIT, EXPAND OR MODIFY THE TERMS OF THIS AGREEMENT NOR AWARD DAMAGES IN EXCESS OF COMPENSATORY DAMAGES UNDER THIS AGREEMENT. SUCH EXCESS DAMAGES WOULD INCLUDE WITHOUT LIMITATION ANY FORM OF FINE OR MULTIPLE, PUNITIVE OR EXEMPLARY DAMAGES AND EACH PARTY WAIVES ANY CLAIM TO SUCH EXCESS DAMAGES. CONFIRMATION OF THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.

5. THE PARTIES SHALL DIVIDE EQUALLY AND PAY ONE HALF EACH OF THE ARBITRATOR, FEES AND EXPENSES AND THE COST OF THE

**U-GL-1114-A CW (10/02)**

STEADFAST 008915

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No. 18418-000 |

### TIME ELEMENT POLLUTION

ARBITRATION PROCEEDING (EXCEPT WITNESSES). EACH PARTY SHALL PAY ITS OWN COSTS OF COUNSEL AND WITNESSES."

(V.) NOTWITHSTANDING SUBSECTION III.G., REPORTING AND NOTICE OF THE GENERAL TERMS AND CONDITIONS, IT IS CONDITION PRECEDENT TO ANY OBLIGATION THE UNDERWRITER MAY HAVE UNDER SUBSECTION E.(II.) C. OF THIS ENDORSEMENT THAT THERE MUST BE STRICT CONFORMANCE WITH ALL REQUIREMENTS SPECIFIED UNDER SUBSECTION E.(II. C. (1), (2), (3) AND(4) OF THIS ENDORSEMENT, REGARDLESS OF WHETHER OR NOT THE UNDERWRITER IS PREJUDICED BY FAILURE OF THESE REQUIREMENTS TO BE MET.

AS USED IN THIS ENDORSEMENT, THE FOLLOWING WORDS HAVE SPECIAL MEANINGS AS FOLLOWS:

    A. AUTO SHALL BE DEFINED AS IT IS IN THE CONTROLLING POLICY FOR THE EXCESS LIABILITY COVERAGE FORM.

    B. HOSTILE FIRE MEANS A FIRE WHICH BECOMES UNCONTROLLABLE OR BREAKS OUT FROM WHERE IT WAS INTENDED TO BE.

    C. POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS OR THERMAL OR SONIC IRRITANT OR CONTAMINANT, OR TOXIC SUBSTANCES, INCLUDING BUT NOT LIMITED TO SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AN WASTE. WASTE INCLUDES BUT IS NOT LIMITED TO MATERIALS TO BE RECYCLED, RECONDITIONED OR RECLAIMED.

    D. UNDERGROUND FACILITY MEANS ANY CONTAINER OR SYSTEM INCLUDING ANY DUCTS, PIPES OR OTHER APPARATUS USED THEREWITH, THE VOLUME OF WHICH IS NOW OR WAS AT ANY TIME MORE THAN TEN(10) PERCENT BENEATH THE SURFACE OF THE GROUND.

**U-GL-1114-A CW (10/02)**

STEADFAST 008916

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured    THE HOME DEPOT, INC.

Effective Date:    03-01-14
12:01 A.M., Standard Time

Agent Name    MARSH USA,INC.

Agent No.    18418-000

## TIME ELEMENT POLLUTION

(VII.) ANY COVERAGE PROVIDED BY THIS ENDORSEMENT SHALL BE IN EXCESS OF A $1,000,000 RETAINED AMOUNT (PER LOSS). DEFENSE COSTS SHALL NOT ERODE THIS RETAINED AMOUNT.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THE TITLE AND ANY HEADINGS IN THIS ENDORSEMENT ARE SOLELY FOR CONVENIENCE AND FORM NO PART OF THE TERMS AND CONDITIONS OF COVERAGE.

**U-GL-1114-A CW (10/02)**

STEADFAST 008917

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| Named Insured | THE HOME DEPOT, INC. | Effective Date: | 03-01-14 |
| | | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No. | 18418-000 |

**AMENDMENT — DEFINITION OF PERSONAL INJURY**

IT IS AGREED THE GENERAL LIABILITY COVERAGE FORM IS AMENDED TO READ AS FOLLOWS:

SECTION V. DEFINITIONS — ITEM 15 PERSONAL INJURY AND ADVERTISING INJURY

G. INFRINGEMENT UPON ANOTHER'S COPYRIGHT, TRADE DRESS, SLOGAN, TITLE, TRADEMARK OR TRADE NAME IN YOUR ADVERTISEMENT; OR OTHERWISE;

**U-GL-1114-A CW (10/02)**

STEADFAST 008918

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | THE HOME DEPOT, INC. | Effective Date: 03-01-14 |
| | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No. 18418-000 |

### ADDITIONAL INSURED – STATE OR GOVERNMENT

ADDITIONAL INSURED – STATE OR GOVERNMENTAL
AGENCY OR SUBDIVISION OR POLITICAL
SUBDIVISION – PERMITS OR AUTHORIZATIONS

SCHEDULE

STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION:

CITY OF EL CAJON
ATTN: CITY CLERK
200 EAST MAIN
EL CAJON, CA 92020

INFORMATION REQUIRED TO COMPLETE THIS SCHEDULE, IF NOT SHOWN ABOVE,
WILL BE SHOWN IN THE DECLARATIONS.

SECTION II – WHO IS AN INSURED IS AMENDED TO INCLUDE AS AN INSURED
ANY STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL
SUBDIVISION SHOWN IN THE SCHEDULE, SUBJECT TO THE FOLLOWING
PROVISIONS:

1. THIS INSURANCE APPLIES ONLY WITH RESPECT TO OPERATIONS
   PERFORMED BY YOU OR ON YOUR BEHALF FOR WHICH THE STATE OR
   GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION
   HAS ISSUED A PERMIT OR AUTHORIZATION.

2. THIS INSURANCE DOES NOT APPLY TO:

   A. "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND
      ADVERTISING INJURY" ARISING OUT OF OPERATIONS PERFORMED FOR
      THE FEDERAL GOVERNMENT, STATE OR MUNICIPALITY; OR

   B. "BODILY INJURY" OR "PROPERTY DAMAGE" INCLUDED WITHIN
      THE "PRODUCTS-COMPLETED OPERATIONS HAZARD".

STEADFAST 008919

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

| Named Insured | THE HOME DEPOT, INC. | Effective Date: | 03-01-14 |
|---|---|---|---|
| | | | 12:01 A.M., Standard Time |
| Agent Name | MARSH USA,INC. | Agent No. | 18418-000 |

## ADDITIONAL INSURED – STATE OR GOVERNMENT

ADDITIONAL INSURED – STATE OR GOVERNMENTAL
AGENCY OR SUBDIVISION OR POLITICAL
SUBDIVISION – PERMITS OR AUTHORIZATIONS

SCHEDULE

STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION:

CITY OF PORTLAND STREET SYSTEMS MANAGEMENT
1120 SW 5TH AVE, ROOM 825
PORTLAND, OR 97204

INFORMATION REQUIRED TO COMPLETE THIS SCHEDULE, IF NOT SHOWN ABOVE,
WILL BE SHOWN IN THE DECLARATIONS.

SECTION II – WHO IS AN INSURED IS AMENDED TO INCLUDE AS AN INSURED
ANY STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL
SUBDIVISION SHOWN IN THE SCHEDULE, SUBJECT TO THE FOLLOWING
PROVISIONS:

1. THIS INSURANCE APPLIES ONLY WITH RESPECT TO OPERATIONS
   PERFORMED BY YOU OR ON YOUR BEHALF FOR WHICH THE STATE OR
   GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION
   HAS ISSUED A PERMIT OR AUTHORIZATION.

2. THIS INSURANCE DOES NOT APPLY TO:

   A. "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND
      ADVERTISING INJURY" ARISING OUT OF OPERATIONS PERFORMED FOR
      THE FEDERAL GOVERNMENT, STATE OR MUNICIPALITY; OR

   B. "BODILY INJURY" OR "PROPERTY DAMAGE" INCLUDED WITHIN
      THE "PRODUCTS-COMPLETED OPERATIONS HAZARD

**U-GL-1114-A CW (10/02)**

STEADFAST 008920

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured   THE HOME DEPOT, INC.

Effective Date:   03-01-14
12:01 A.M., Standard Time

Agent Name   MARSH USA,INC.

Agent No.   18418-000

## AMENDATORY ENDORSEMENT — NON—OWNED WATERCRAFT COVERAGE

IT IS AGREED THAT EXCLUSION G. OF COVERAGE A (SECTION I) OF FORM
U-GL-920-A CW (12/97) IS AMENDED TO READ:

OF ANY WATERCRAFT THAT IS LESS THAN 75 FEET IN LENGTH

**U-GL-1114-A CW (10/02)**

STEADFAST 008921



**ZURICH**

## Self Insured Retention Endorsement

**(**Including Defense Costs - We Pay All Defense Costs Excess of Self Insured Retention Amount**)**

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| GLO4887714-04 | 03-01-14 | 03-01-15 | 18-418-000 | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the policy.

---

### SCHEDULE
### Self Insured Retention Amounts

**$ 1,000,000**   **Per Occurrence** ( Including Defense Costs - All Defense Costs Paid By Us Excess Of Self Insured Retention Amount)

**$**   **Per Claim** (Including Defense Costs - All Defense Costs Paid By Us Excess of Self Insured Retention Amount)

**$**   **Aggregate** (Including Defense Costs - The Maximum You Will Pay For Damages and Defense Costs Combined)

**Periodic Reporting Requirement   MONTHLY**
**Claim Service Provider           SEDGWICK CMS**

---

The insurance provided by this policy is subject to the following additional provisions, which in the event of conflict with any other provisions elsewhere in the policy, shall control the application of the insurance to which this endorsement applies:

I.   **Self Insured Retention and Defense Costs - Your Obligations**

  A.   The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

   1.   If a Per Occurrence Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as

they are incurred for each "occurrence" until you have paid damages and "defense costs" equal to the Per Occurrence Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Occurrence Amount is the most you will pay for damages and "defense costs" arising out of any one "occurrence", regardless of the number of persons or organizations making claims or bringing suits because of the "occurrence".

   2.   If a Per Claim Self Insured Retention Amount is shown in the Schedule of this endorsement, you shall be responsible for payment of all damages and "defense costs" as they are in-

U-GL-XXX-A CW (03/02))
Page 1 of 4
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

STEADFAST 008922

curred until you have paid damages and "defense costs" for each claim equal to the Per Claim Amount shown in the Schedule, subject to the provisions of A. 3. below, if applicable. The Per Claim Amount is the most you will pay for each claim brought by each person or organization making a claim or bringing a suit as a result of any one "occurrence".

3. If the Self Insured Retention Aggregate Amount is shown in the Schedule of this endorsement, the Aggregate Amount is the most you will pay for damages and "defense costs" incurred under this policy. If this Amount is exceeded in your payment of damages and "defense costs", then the policy terms and conditions at that time continue to apply as written, but your obligation for any further payment of damages or "defense costs" under this Self Insured Retention Endorsement is no longer applicable. This Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

If no entry appears in the Schedule of this endorsement as Aggregate, then your obligation for payment of damages and "defense costs" applies in accordance with the Per Occurrence or Per Claim "self insured retention" provisions, whichever is applicable.

B. **Defense Costs**

Except for any "defense costs" that we may elect to pay, you shall pay all "defense costs" as they are incurred until you have paid "defense costs" and damages equal to the applicable "self insured retention" amount, subject to application of the Aggregate Amount, if applicable.

C. **Settlement of Claim**

1. **Within Self Insured Retention**

If any final judgment or settlement and "defense costs" is less than the "self insured retention" amount indicated in the Schedule of this endorsement above, you shall have the right and obligation to settle all such claims or suits under this policy.

2. **Excess of Self Insured Retention**

You may not settle any claim or suit which exceeds any "self insured retention" amount indicated in the Schedule of this endorsement without our written permission to do so. If you fail to obtain such written permission, we shall have no obligation to provide coverage for that claim or suit under this policy.

D. **Authorized Claim Service Provider**

1. You shall employ a claim service provider acceptable to us for the purpose of providing claim services for settlement of losses within the "self insured retention" amounts. You shall pay all fees, charges and costs of the claim service provider in addition to the "self insured retention" amounts, without any reimbursement from us.

2. In the event of cancellation, expiration or revision of the claims service contract between you and the claim service provider, you shall notify us within (10) days of such change and shall replace the claim service provider with another claim service provider that is acceptable to us.

E. **Notification of Potential Penetration**

1. You or the authorized claim service provider must notify us promptly of an "occurrence" which may result in a claim under this policy. Notice must include:

   a. How, when and where the "occurrence" took place;

   b. The names and addresses of any injured persons and witnesses; and

   c. The nature and location of any injury or damage arising out of the "occurrence".

2. You or the authorized claim service provider must notify us promptly, per E.1. above, in the event of any "occurrence", without regard to liability, which results in any of the following injuries:

   a. Death;

   b. Brain damage;

   c. Paraplegic or quadriplegic impairment;

   d. Amputation or serious functional impairment of any major limb;

   e. Severe burns involving more than 25% of the body or causing serious disfigurement;

   f. Sensory impairment (sight, hearing, taste or smell);

   g. Severe internal body organ damage or loss;

   h. Multiple fractures involving more than one body part;

   i. Permanent and total disability;

   j. Sexual abuse or molestation; or

   k. Significant psychological / neurological involvement; or

STEADFAST 008923

Where exposure, loss reserve or potential judgment initiates or changes or where suit is filed per the following:

l. Potential exposure equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies;  or

m. Loss reserve established equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies;  or

n. Potential judgment, if the claim prevails, without regard to liability, equals or exceeds 25% of the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies;  or

o. A suit is filed. We shall have the right to appoint defense counsel, even if the amount claimed in the suit is unspecified or less than the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies.

F. **Reporting - Self Insured Retention**

You must report claims or suits to our Claim Department per the following:

1. You or the authorized claim service provider must monitor the cumulative losses and "defense costs" sustained during the policy period and  report those total amounts to us in accordance with  the frequency of report indicated in the Periodic Reporting Requirement of  the Schedule of this endorsement.  However, if the total of all incurred losses and "defense costs" should at any time during the policy period attain a total amount equal to 75% of the Self Insured Retention Aggregate Amount, if indicated in the Schedule of this endorsement, you are required in  that event to make  an  immediate report to us as to total  incurred losses  and "defense costs" sustained at that time.

The Periodic Report that you send to us  must be in a format that is acceptable to us, and include an accounting of  all individual losses and "defense costs" incurred as of the date of the Report.

2. Within forty-five (45) days after  the end of the policy term, you must  give us a listing of all existing claims  or suits within  the "self insured retention" amounts. At a minimum, such  listing will include the following for each claim or suit:

i. a description of each claim or suit;

ii the date of the "occurrence";

iii. the amounts paid and reserved for future payments for loss and "defense costs"; and

iv. the current status of the claim or suit.

3. Quarterly thereafter, you are required to give us an  updated listing of the status of all claims or suits, both  paid and reserved, until all claims or suits for the reporting period are closed or settled.

G. **Representations**

By acceptance of this policy you agree that you will not procure insurance for all or any part of the "self insured retention" amounts shown in the Schedule of this endorsement.  If such insurance is procured, there will be no coverage under this policy.

H. **Compliance**

Compliance with the requirements  set forth in this endorsement is a condition precedent to coverage.  You acknowledge that in the event of non-compliance, we shall  not  be required to establish prejudice resulting from the non-compliance, but shall be automatically relieved of liability with respect to any claim.

II. **Our Rights and Obligations Excess of the Self Insured Retention**

A. **Self Insured Retention/Defense Costs – Your Failure To Respond**

In the event of your refusal to respond to your obligations for the payment of "self insured retention" amounts or "defense costs" for any reason, we shall not make payments for you, nor in any event shall we be required to substitute  for you as respects your responsibility for payment of these    "self insured retention" amounts or "defense costs".

B. **Damages Excess of Self Insured Retention – Per Occurrence or Per Claim**

We shall be liable only for the amount of damages and "defense costs" in excess of the "self insured retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy.

C. **Damages Excess of Self Insured Retention - Aggregate**

1. If the Self Insured Retention Aggregate Amount (if selected) shown in the Schedule of this endorsement is exceeded in

your payment of damages or "defense costs", we will at that time assume your obligations for payment of all subsequent damages and "defense costs" subject to the Limits of Insurance provisions of this policy.

2. In the event of a midterm cancellation of this policy, the Self Insured Retention Aggregate Amount shown in the Schedule of this endorsement is not subject to any pro rata reduction. Such Aggregate Amount will apply as if the policy term had not been shortened.

D. **Settlement of Claims**

1. **Within Self Insured Retention**

   We shall have, at our option, the right but not the obligation or duty to negotiate the settlement of any claim within the applicable "self insured retention" amount, which in our opinion is deemed expedient. But we shall obtain your consent prior to entering into any settlement of any claim which is equal to or less than the "self insured retention" amount. If, however, you shall refuse to consent to any settlement recommended by us within the "self insured retention" amount and shall elect to contest the claim or continue with any legal proceedings in connection with such claim, our liability for that claim shall not exceed the amount determined by subtracting the "self insured retention" amount from the amount for which the claim could have been settled, including "defense costs" incurred with our consent to the date of such refusal. And we shall have no liability with respect to such claim if that difference is zero or negative.

2. **Excess of Self Insured Retention**

   With respect to any claim under this insurance which has been tendered to us and which may exceed the "self insured retention" amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies, we have the right and duty to negotiate the settlement of such claim and may pay any or all damages and "defense costs" on your behalf, both within and excess of the applicable "self insured retention" amount. Any such payments made by us within the "self insured retention" amount shall be reimbursed promptly by you.

3. **Excess of Self Insured Retention Aggregate**

   If during the policy period we assume responsibility for your obligations after you have exceeded the policy Self Insured Retention Aggregate Amount (if selected) in your payment of damages and "defense costs", we shall at that time have the right and duty to defend "suits" and settle existing and new losses and claims as we deem expedient and without your consent for the remainder of the policy period.

III. **Definitions**

A. "Self insured retention" means:

   the amount or amounts which you or any insured must pay for all compensatory damages and "defense costs" which you or any insured shall become legally obligated to pay because of damages arising from any coverage included in the policy.

B. "Defense costs" means:

   expenses directly allocable to specific claims and shall include but not be limited to all Supplementary payments as defined under the policy(ies); all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical costs containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy(ies).

C. "Occurrence" for purposes of this endorsement only, means an "occurrence", offense, accident, act, error or omission or any other such similar event, as defined or used in our policy, that must occur in order to initiate payment of covered losses under the policy terms and conditions.

STEADFAST 008925

**Policy Number**
**GLO 4887714-04**

**ENDORSEMENT**

# STEADFAST INSURANCE COMPANY

Named Insured  THE HOME DEPOT, INC.

Effective Date:  03-01-14
12:01 A.M., Standard Time

Agent Name  MARSH USA,INC.

Agent No.  18418-000

## AMENDMENT — CANCELLATION BY US

THIS ENDORSEMENT AMENDS SECTION A "CANCELLATION" OF THE COMMON POLICY CONDITIONS TO READ:

A.: CANCELLATION — TO SATISFY THE CONTRACTUAL OBLIGATIONS OF THE INSURED, THIS POLICY MAY NOT BE CANCELLED FOR ANY REASON, INCLUDING NON-PAYMENT OF PREMIUM.

**U-GL-1114-A CW (10/02)**

STEADFAST 008926


**ZURICH**

**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA.  That portion of premium attributable is shown in the Schedule above.  The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention.  The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA.  TRIA is scheduled to expire on December 31, 2014.

**C.  Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D.  Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E.   Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
  1.  to be an act of terrorism;
  2.  to be a violent act or an act that is dangerous to human life, property or infrastructure;
  3.  to have resulted in damage within the United States, or outside of the United States in the case of  an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
  4.  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2007 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

STEADFAST 008927

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**The Limits of Insurance shown in the Declarations is the most available to pay any combination of damages, medical expenses and "allocated loss adjustment expenses" covered by this policy. Various other provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.**

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages and "allocated loss adjustment expenses" is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of:

            **(a)** judgments or settlements under Coverages **A** or **B**;

            **(b)** medical expenses under Coverage **C**; or

            **(c)** "allocated loss adjustment expenses."

    No other obligation or liability to pay sums or perform acts or services is covered.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

STEADFAST 008928

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

STEADFAST 008929

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

STEADFAST 008930

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer

STEADFAST 008931

consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

STEADFAST 008932

**(1)** The amount we will pay for damages and "allocated loss adjustment expenses" is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of:

**(a)** judgments or settlements under coverages **A** or **B**;

**(b)** medical expenses under Coverage **C**; or

**(c)** "allocated loss adjustment expenses".

No other obligation or liability to pay sums or perform acts or services is covered.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

STEADFAST 008933

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

STEADFAST 008934

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f.** **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.** **Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

STEADFAST 008935

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" but will reduce the limits of insurance as "allocated loss adjustment expenses".

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments, settlements or "allocated loss adjustment expenses"; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

STEADFAST 008936

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   **c.** Damages under Coverage **B**; and

   **d.** "Allocated loss adjustment expenses" arising from **a.**, **b.**, or **c.** above.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" and "allocated loss adjustment expenses" arising from claims or "suits" for damages under coverage **A** because of "bodily injury" or "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization and "allocated loss adjustment expenses" arising from claims or "suits" for damages under Coverage **B**.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**;

   **b.** "Allocated loss adjustment expenses" arising from damages under Coverage **A**; and

   **c.** Medical expenses under Coverage **C**

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner and related "allocated loss adjustment expenses".

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

STEADFAST 008937

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

STEADFAST 008938

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Duties — Claim Settlement and Allocated Loss Adjustment Expenses**

As soon as our right and duty to defend the insured against any "suit" seeking damages end, you will promptly assume control of the settlement of claims and defense of "suits". A list of outstanding claims and "suits" will be made available to the First Named Insured upon request.

STEADFAST 008939

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Allocated loss adjustment expense" is an expense directly allocable to a specific claim and includes but is not limited to all Supplementary Payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

3. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

STEADFAST 008940

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**11.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

 includes copyrighted material of Insurance Services Offices, Inc. with its permission

STEADFAST 008941

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

  **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**17.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**18.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

STEADFAST 008942

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

20. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

23. "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

    includes copyrighted material of Insurance Services Offices, Inc. with its permission    U-GL-1287-A CW (09/06)

STEADFAST 008943



# Important Notice
**Service of Suit and In Witness Clause**

**Service of Suit**

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                  Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email**: info.source@zurichna.com

---

STEADFAST 008944

# Additional Insured – Automatic – Owners, Lessees Or Contractors



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Named Insured:** ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 008945

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV — Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV — Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV — Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III — Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 008946

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured**: THE HOME DEPOT, INC.

**Address (including ZIP Code)**:

2455 PACES FERRY RD. SE BLDG C-20

ATLANTA, GA 30339

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| THE CITY OF EL CAJON, CALIFORNIA | ATTN: CITY CLERK |
|  | 200 EAST MAIN |
|  | EL CAJON, CA 92020 (US) |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of  your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 008947

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV — Commercial General Liability Conditions:**

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity. This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purpose of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV — Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV — Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III — Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 008948

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos**

**A.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.** Any sums that any insured or other entity must pay, repay or reimburse because of any:

   1. Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

   2. Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.** Any other loss, cost or expense arising out of or relating in any way to asbestos.

U-GL-1178-A CW (07/03)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

STEADFAST 008949



# First Named Insured Indemnification Endorsement

| Policy No. | Exp. Date of Pol. | Eff. Date of End. | Agency No. | Addl. Prem. | Return Prem. |
|---|---|---|---|---|---|
| | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Named Insured:**
**Address (including ZIP Code):**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**

**THIS ENDORSEMENT APPLIES SOLELY WITH RESPECT TO ENTITIES REGISTERED, DOMICILED OR HAVE ONGOING OPERATIONS IN "NON-ADMITTED JURISDICTIONS".**

I.    **SECTION I. Coverages A, B** and **C** , **1. Insuring agreement**, are amended as follows; these endorsement provisions supercede any policy provisions which may be contrary to these provisions:

     A.   With respect to a "qualified entity", we will indemnify the first Named Insured for sums that the first Named Insured has agreed to indemnify or reimburse a "qualified entity" for its:

         (1)   legal liability because of "bodily injury" , "property damage" or "personal and advertising injury";

         (2)   payment of medical expenses for "bodily injury", and

         (3)   reasonable defense costs incurred with our consent,

       those sums to which this insurance would apply if the "qualified entity" were an insured under this policy**.**

     B.   **Coverages A, B** and **C** do not apply to a "qualified entity". We will not assume any duty with respect to the investigation, settlement or defense of any claim made, "suit" brought or proceeding instituted against any insured in "non-admitted jurisdictions".

II.   **SECTION IV., COMMERICAL GENERAL LIABILITY CONDITIONS,** is amended to include the following additional condition:

     **Duties as respects claims or suits in non-admitted jurisdictions**

     The duties and requirements imposed upon any insured under this Policy shall not apply in any "non-admitted jurisdiction". However, with respect to any claim made or "suit" brought in a "non-admitted jurisdiction", it shall be the duty of the first Named Insured to do or to cause the applicable "qualified entity" to do such things as would be required of such insured if **Coverage A**, **Coverage B** or **Coverage C** applied directly to such claim or "suit", as the case may be.

     When the amount of damages is determined by an agreed settlement or on a final judgment against a "qualified entity" obtained after an actual trial, we will promptly indemnify the first Named Insured, at the mailing address listed in item 2. of the Declarations, the amount of damages covered under the terms of this policy.

STEADFAST 008950

If the first Named Insured or any "qualified entity" recovers from any third party all or part of any amount that we have paid pursuant to this endorsement, the first Named Insured shall promptly reimburse the amount of any such recovery to us.

**III.** **SECTION V. DEFINITIONS,** is amended to include the following additional definition:

"Non-admitted jurisdiction" means any country or political subdivision in which we are not authorized to insure risks and where doing so would violate the insurance laws and regulations of such jurisdiction.

"Qualified entity" means an entity, person or organization that would qualify as an insured under this policy, but for the fact that the entity is registered, domiciled or has ongoing operations in "non-admitted jurisdictions".

**All other terms and conditions of the policy not affected by this endorsement continue to apply as currently written.**

Countersigned
_____
      Authorized Representative                         Date

STEADFAST 008951

# Deductible



| Policy No. | Eff. Date of Pol. | Eff. Date of End. |
|---|---|---|
| GLO-4887714-04 | 03/01/14 | 03/01/15 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Employee Benefits Liability Coverage Part**
**Liquor Liability Coverage Part**
**Stop Gap Employers Liability Coverage Part**

**DEDUCTIBLE SCHEDULE**

| Coverage | | | Deductible Amount | Basis |
|---|---|---|---|---|
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability All persons or organizations | 9,000,000 XS $ 1,000,000 SIR | Each "Occurrence" |
| | | "Bodily Injury" Liability Only All persons or organizations | $ | Each "Occurrence" |
| | | "Property Damage" Liability Only All persons or organizations | $ | Each "Occurrence" |
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability | $ | Each Claim |
| | | "Bodily Injury" Liability Only | $ | Each Claim |
| | | "Property Damage" Liability Only | $ | Each Claim |
| Coverage | B. | "Personal and Advertising Injury" Liability By offense – Any one person or organization | 9,000,000 XS $ 1,000,000 SIR | Each Claim |
| Coverage | C. | Medical Payments | 9,000,000 XS $ 1,000,000 SIR | Any One Person |
| Additional Coverage | | Employee Benefits Liability | 9,000,000 XS $ 1,000,000 SIR | Each Act, Error or Omission |
| Additional Coverage | | Liquor Liability | $ | Each Common Cause |
| Additional Coverage | | Stop Gap Employers Liability Stop Gap Employers Liability - disease | $ $ | Each Accident Each "Employee" |
| Aggregate Deductible Amount | | | $ $ | ☐ Adjustable at a rate of _____ per_____ of _____. ☐ Flat |
| Initial Exposure | | | | _____ |
| Minimum Aggregate Deductible Amount | | | $ | |

STEADFAST 008952

**ALLOCATED LOSS ADJUSTMENT EXPENSE SELECTION SCHEDULE**

| | Select One | |
|---|---|---|
| Option 1 | ☐ | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will contribute toward your Deductible Amount and your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 2 | ☐ | As respects each Deductible Amount, you will reimburse us for "allocated loss adjustment expense" as follows: |
| | (a) | If the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "allocated loss adjustment expense", then you will reimburse us for all "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**; or |
| | (b) | If the total amount payable for other than "allocated loss adjustment expense" exceeds the Deductible Amount, you will reimburse us a pro-rata share of total "allocated loss adjustment expense" based on the ratio of the Deductible Amount divided by the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount. "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 3 | ☒ | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |

**If no option is selected, Option 3 will apply.**

**A. How the Deductible Amount Applies**

You will reimburse us for the Deductible Amount(s) shown in the **Deductible Schedule** and for "allocated loss adjustment expenses" incurred based on the **Allocated Loss Adjustment Expense Selection Schedule**. The Deductible Amount(s) applies as follows:

1. If an Each Occurrence Deductible is shown, the Deductible Amount applies to all sums payable because of any one "Occurrence", regardless of the number of persons or organizations who sustain damages because of that "Occurrence".

2. If an Each Claim Deductible is shown, the Deductible Amount applies to all sums payable for each claim, sustained by any one person or organization.

   a. For Other than Coverage B, to all sums payable for each claim, sustained by any one person or organization, and

   b. For Coverage B, to all damages sustained by any one person or organization as the result of an offense.

3. Medical Payments - If an Any One Person limit is shown, the Deductible Amount applies to all sums payable to any one person as a result of an accident sustained by that person.

STEADFAST 008953

4. Employee Benefits Liability - If an Each Act, Error or Omission Deductible is shown, the Deductible Amount applies to all sums payable for all damages sustained by any one "Employee", including the "Employee's" dependents and beneficiaries, because of acts, errors or omissions committed in the administration of employee benefit programs.

5. Liquor Liability - If a Common Cause Deductible is shown, the Deductible Amount applies to all sums payable for all injury sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

6. Stop Gap Employers Liability - If an Each Accident Deductible is shown, the Deductible Amount applies to all sums payable as the result of an accident, regardless of the number of people who sustain damages because of that accident.

7. Stop Gap Employers Liability - disease - If an Each Employee Deductible is shown, the Deductible Amount applies to all sums payable because of any one disease, and applies separately to each affected "Employee".

**B.  Deductible Provisions**

1. If more than one Deductible Amount applies to sums payable arising from the same "incident" because more than one Coverage applies, you will be responsible for each and every applicable Deductible Amount.

2. Deductible Amount(s) apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

3. Your obligation to pay the Deductible Amount(s) shown on this policy is not fulfilled by:

   a. The payment of a Deductible Amount under any other policy; or

   b. Any payment made by us or another insurance company;

   even if 3.a. or 3.b. above applies to the same "incident" as the Deductible Amount due under this policy.

4. If more than one policy issued by us applies to sums payable because of a single continuous "incident", the Deductible Amount(s) applies separately to each policy that we issue to which this endorsement or a similar Deductible Endorsement applies. Deductible Amounts also apply separately to each annual period and any remaining period of less than 12 months as described in **B.2**. above.

5. If a Coverage Part or Additional Coverage of this policy specifically applies a separate deductible(s):

   a. the separate additional deductible amount applies to any loss separately and before the Deductible Amount(s) shown on the Schedule of this endorsement; and

   b. the Deductible Amount(s) shown on the Schedule of this endorsement applies only if the loss exceeds the separate additional deductible amount described in 5.a. above, subject to the other terms and conditions of this endorsement.

**C.  Aggregate Deductible Amount**

1. The Aggregate Deductible Amount shown in the **Deductible Schedule** is the most you must reimburse us for the sum of:

   a. all applicable Deductible Amount(s) as shown in the **Deductible Schedule**; and

   b. all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule**, above.

STEADFAST 008954

This single Aggregate Deductible Amount applies to the entire policy period and to any remaining extension period.

2. If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as adjustable, the final Aggregate Deductible Amount will be determined at the end of the policy period by an audit of your records, and will be based upon the Rate shown in the **Deductible Schedule** multiplied by the final audited Exposure. The amount shown in the **Deductible Schedule** as the Aggregate Deductible Amount is an estimated amount, and is based on an estimate of what the audit of your records will develop.

In no event will the final audited Aggregate Deductible Amount be less than the Aggregate Deductible Amount shown in the **Deductible Schedule**, unless a Minimum Aggregate Deductible Amount is shown in the **Deductible Schedule**. If a Minimum Aggregate Deductible Amount is shown, the final audited Aggregate Deductible Amount will not be less than the Minimum Aggregate Deductible Amount.

3. If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as Flat, the Aggregate Deductible Amount will not be adjusted. In no event will the Flat Aggregate Deductible Amount be less than or more than the Aggregate Deductible Amount shown in the **Deductible Schedule**.

4. If no Aggregate Deductible Amount is stated in the **Deductible Schedule**, then your obligation to reimburse us for the sum of all applicable Deductible Amount(s) as shown in the **Deductible Schedule** and all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, is unlimited.

**D. Allocated Loss Adjustment Expense Reimbursement**

In accordance with the **Allocated Loss Adjustment Expense Selection Schedule**:

1. If Option 1 is selected, "allocated loss adjustment expense" reimbursements made by you contribute to your Deductible Amount and Aggregate Deductible Amount.

2. If Option 2 or Option 3 is selected, then you will reimburse us for all or pro-rata "allocated loss adjustment expense", as may apply, in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, even if the Deductible Amount or the Aggregate Deductible Amount, if applicable, is exceeded.

**E. Application of the Deductible Amount to Payable Amounts**

1. You will reimburse us for "allocated loss adjustment expense" according to the option selected in the **Allocated Loss Adjustment Expense Selection Schedule**.

2. Upon settlement or final adjudication of a claim, we will apply the Deductible Amount against payable amounts as follows:

   a. Sums other than those attributable to "allocated loss adjustment expense"; then

   b. "Allocated loss adjustment expense" already reimbursed by you; then

   c. "Allocated loss adjustment expense" yet to be reimbursed by you, if applicable.

**F. Effect of Deductible Amount on Limits of Insurance**

The applicable limits of insurance for the coverage part to which a Deductible Amount applies will be reduced only by that portion of the Deductible Amount that is not attributable to "allocated loss adjustment expenses".

**G. Conditions**

   **1. Voluntary Payments**

STEADFAST 008955

If you voluntarily make any payment, assume any obligation or incur any expense, without our consent, then you do so at your own cost. Any such voluntary payment, assumed obligation or incurred expense does not contribute towards any applicable Deductible Amount(s) or Aggregate Deductible Amount under this policy.

**2. Application of Recovered Amounts**

We have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the Deductible Amount. The remainder of the recovery, if any, will then be applied to reduce the Deductible Amount reimbursed or reimbursable by you as respects that injury or damages.

**3. Payment of Amounts Owed Under This Endorsement**

a. We may pay any part or all of any Deductible Amount(s) or "allocated loss adjustment expense" to effect settlement of any claim and, upon notification of the action taken you will reimburse us for such part of any Deductible Amount(s) or "allocated loss adjustment expense" as shown on the billing from us. You must pay us for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.

b. If you fail to reimburse us for any amounts as required by this endorsement or policy, we may cancel this policy for nonpayment in accordance with the applicable law. Cancellation of this policy does not relieve you from any deductible obligations reimbursable by you.

c. The first Named Insured shown in the Declarations is authorized to and will reimburse us for all amounts paid by us on behalf of all "insureds".

d. Each Named Insured is jointly and severally liable for all reimbursements due to us under this endorsement, whether or not that Named Insured is involved in the claim, proceeding or "suit" causing any such amount to be due to us.

**H. Definitions**

1. "Allocated loss adjustment expense" is an expense directly allocable to a specific claim including but not limited to: all supplementary payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2. "Incident", for purposes of this endorsement only, means an "occurrence", offense, claim, accident, act, error or omission, common cause, disease or any other event, as defined or used in our policy, to which a Deductible Amount(s) applies.

**I. Other Terms**

1. The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to:

a. Our right and duty to investigate or defend the insured against any "suits" seeking those damages; and

U-GL-1326-B CW (10/2007)
Page 5 of 6

STEADFAST 008956

     b.   Your duties in the event of a claim or circumstances likely to result in a claim.

2.   You understand that your duties under this endorsement may continue after this policy expires or is cancelled.

STEADFAST 008957



# Newly Formed Organizations
# Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** Part 3. of Section II - WHO IS AN INSURED is deleted and replaced by the following:

**3.** Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

**c.** Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization;

**d.** If the organization is a joint venture or partnership, coverage is afforded only to the extent of the percentage of ownership interest of any insured in the organization.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

STEADFAST 008958

**ZURICH**

**NONOWNED WATERCRAFT COVERAGE ENDORSEMENT**

| POLICY NO. | EFF. DATE OF POL. | EXP. DATE OF POL. | EFF. DATE OF END. | AGENCY NO. | ADD'L PREM. | RETURN PREM. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**This endorsement changes the policy. Please read it carefully.**

**Named Insured:**

**Address: (including ZIP Code)**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is understood and agreed that exclusion g. of Coverage A (Section I) does not apply to "bodily injury" or "property damage" arising out of the maintenance, operation or use, including "loading or unloading" of any watercraft that is less than 50 feet in length provided that such watercraft is not owned by you and is not being used to carry persons for a charge.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc. 1997

U-GL-920-A CW (12/97)

Page 1 of 1

STEADFAST 008959

# Amendment of Representations
# Condition Endorsement


**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the Representations Condition of Section IV - Commercial General Liability Conditions:

Coverage will continue to apply if you:

- unintentionally fail to disclose all hazards existing at the inception of this policy, or

- unintentionally make an error, omission, or improper description of premises or other statement of information stated in this policy.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to the acceptance of this policy.

STEADFAST 008960

# Notice of Error In Claim Reporting Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to **Duties In The Event Of Occurrence, Offense, Claim or Suit** of **Section IV - Commercial General Liability Conditions**:

**e.** In the event that an insured reports an "occurrence" to the workers compensation carrier of the named insured, and this "occurrence" later develops into a General Liability claim covered by this policy, the failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed in violation of this condition. You must, however, give us notice as soon as practicable after being made aware that the particular claim is a General Liability rather than a Workers Compensation claim.

STEADFAST 008961

U-GL-928-B CW (12/01)
Page 1 of 1

# Waiver Of Subrogation (Blanket) Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery.  This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

STEADFAST 008962

U-GL-825-B CW (12/01)
Page 1 of 1

# Knowledge by Position or Department



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Business Auto Coverage Part**
**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products / Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Part**

**SCHEDULE**

| **Position or Department:** | RISK MANAGEMENT DEPARTMENT |
|---|---|
| | LAW DEPARTMENT |
| | ANY EXECUTIVE THAT IS RESPONSIBLE FOR RECEIVING OR ACTING UPON SUCH INFORMATION |
| | |

The following Condition is added:

**Knowledge By Your Employee**

1. Knowledge of an "accident", "occurrence", offense, "injury", claim, "suit" or loss by your employee will not in and of itself be considered your knowledge of the "accident", "occurrence", offense, "injury", claim, "suit" or loss unless an employee who:

   **a.** Holds a position; or

   **b.** Is a member of a department;

   shown in the Schedule of this endorsement receives such knowledge.

2. This endorsement does not apply unless the Schedule of this endorsement indicates at least one Position or Department.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 008963

**COMMERCIAL GENERAL LIABILITY**
**CG 01 44 10 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOUTH DAKOTA CHANGES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCT WITHDRAWAL COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section **IV** – Conditions) is replaced by the following:

**Legal Action Against Us**

No person or organization has a right under this Coverage Part to join us as a party or otherwise bring us into a "suit" asking for damages from an insured.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

STEADFAST 008964

**COMMERCIAL GENERAL LIABILITY**
**CG 01 79 07 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **f.(1)(a)(i)** under Paragraph **2. Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

**(i)** "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

CG 01 79 07 10                    © Insurance Services Office, Inc., 2010                    **Page 1 of 1**

STEADFAST 008965

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

© Insurance Services Office, Inc., 2011

STEADFAST 008966

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

    If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

    **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

    **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011

**CG 02 20 03 12**

STEADFAST 008967

COMMERCIAL GENERAL LIABILITY
CG 02 37 05 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – TERMINATION PROVISION – DRIVER EDUCATION PROVIDERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following condition is added and supersedes any provision to the contrary:

**Termination**

If we cancel or decide not to renew this policy, we will give written notice to the Chief Administrator of the New Jersey Motor Vehicle Commission 30 days before:

    **a.**  The effective date of the cancellation; or

    **b.**  The expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

© Insurance Services Office, Inc., 2012

STEADFAST 008968

POLICY NUMBER: GLO 4887714-04          **COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

STEADFAST 008969

POLICY NUMBER: GLO 4887714-04           **COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| CONSOLIDATED CITY OF INDIANAPOLIS DEPARTMENT OF CODE ENFORCEMENT | 1200 MADISON AVENUE SUITE 100 INDIANAPOLIS, IN 46225 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

     © Insurance Services Office, Inc., 2012     

STEADFAST 008970

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 **CG 20 10 04 13**

STEADFAST 008971

POLICY NUMBER:
**COMMERCIAL GENERAL LIABILITY
CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| THE CITY OF MANTECA, ITS OFFICERS, AGENTS, AND VOLUNTEERS. | ALL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© Insurance Services Office, Inc., 2012
Wolters Kluwer Financial Services | Uniform Forms™

STEADFAST 000872

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

STEADFAST 008973

POLICY NUMBER:GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designation Of Premises (Part Leased To You): |
| :--- |
| |
| **Name Of Person(s) Or Organization(s) (Additional Insured):**<br>RD MANAGEMENT LLC |
| **Additional Premium:** ▮▮▮▮▮▮ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

STEADFAST 008974

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
| CITY OF HAWTHORNE, OFFICERS, AGENTS, AND EMPLOYEES. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

STEADFAST 008975

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| State Or Governmental Agency Or Subdivision Or Political Subdivision: |
|---|
| CITY OF PHILADELPHIA, OFFICERS, AGENTS, AND EMPLOYEES. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

STEADFAST 008976

POLICY NUMBER: GLO 4887714-04

COMMERCIAL GENERAL LIABILITY
CG 20 15 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| HANDY HARDWARE LLC<br>ATTN: SAVANNAH CASHI<br>P.O. BOX 12847<br>HOUSTON, TX 77217-2847 | ALL |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

1. The insurance afforded to such vendor only applies to the extent permitted by law; and

2. If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

1. The insurance afforded the vendor does not apply to:

   **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   **b.** Any express warranty unauthorized by you;

   **c.** Any physical or chemical change in the product made intentionally by the vendor;

   **d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

CG 20 15 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 2

STEADFAST 008977

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

    **(1)** The exceptions contained in Sub-paragraphs **d.** or **f.**; or

    **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III — Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

STEADFAST 008978

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
| --- |
| ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

STEADFAST 008979

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

STEADFAST 008980

POLICY NUMBER:  GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 22 74 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Designated Contract Or Agreement:

ONLY THOSE PERSONS OR ORGANIZATIONS WHERE REQUIRED BY WRITTEN CONTRACT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

 **2. Exclusions**

 This insurance does not apply to:

 **e. Contractual Liability**

 "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

 This exclusion does not apply to:

 **(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

 **(2)** Liability for "personal and advertising injury" if:

 **(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

 **(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

 **(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

© ISO Properties, Inc.,  2001

STEADFAST 000081

□

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

    **(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

    **(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I - Supplementary Payments - Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

    **a.** Agrees in writing to:

      **(1)** Cooperate with us in the investigation, settlement or defense of the "suit";

      **(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      **(3)** Notify any other insurer whose coverage is available to the indemnitee; and

      **(4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    **b.** Provides us with written authorization to:

      **(1)** Obtain records and other information related to the "suit"; and

      **(2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

     © ISO Properties, Inc., 2001      <span style="color:red">STEADFAST</span> CG 24 26 07 01

POLICY NUMBER:  GLO 4887714-04

COMMERCIAL GENERAL LIABILITY
CG 24 17 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY - RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | |

 (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

 **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

 **b.** A sidetrack agreement;

 **c.** Any easement or license agreement;

 **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

 **e.** An elevator maintenance agreement;

 **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

 **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

 **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

STEADFAST 000083

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

STEADFAST 008984

**IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

STEADFAST 008985

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

STEADFAST 008986

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

STEADFAST 008987

IL 01 38 11 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

   **a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will send written notice by registered or certified mail or deliver written notice to the first Named Insured's last mailing address known to us.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

   **a.** We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

   **(1)** At our request;

   **(2)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

   **(3)** And rewritten by us or a member of our company group; or

   **(4)** After the first year, if it is a prepaid policy written for a term of more than one year.

   **b.** When this policy is cancelled at your request (except when Paragraph **a.(2), a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**B.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this policy, we will mail or deliver a notice of nonrenewal to the first Named Insured shown in the Declarations, stating the reason for nonrenewal, at least:

   **a.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

   **b.** 45 days before the expiration date if the nonrenewal is for any other reason.

**2.** We will send written notice by registered or certified mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us.

 © Insurance Services Office, Inc., 2011

STEADFAST 008988

IL 02 34 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH DAKOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by Paragraphs **2.** and **3.** below, except to the extent that Item **B.** of this endorsement applies.

**2. Policies In Effect:**

**a. For Less Than 90 Days**

If this policy has been in effect for less than 90 days, we may cancel the policy for any reason by mailing to the first Named Insured, and agent, if any, written notice of cancellation at least:

(1) 10 days before the effective date of cancellation; or

(2) Five days before the effective date of cancellation for any condition stated in Paragraph **B.** of this endorsement.

**b. For 90 Days Or More Or Policies With Terms Longer Than One Year Or Continuous Policies**

If this policy has been in effect for 90 days or more, is a renewal of a policy we issued, is a policy issued for a term longer than one year or is a continuous policy, we may cancel the policy only for one or more of the following reasons:

(1) Nonpayment of premiums;

(2) Misrepresentation or fraud made by the "insured" or with the "insured's" knowledge in obtaining the policy or in pursuing a claim under the policy;

(3) The "insured's" actions that have substantially increased or substantially changed the risk insured;

(4) The "insured's" refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

(7) A determination by the insurance commissioner that the continuation of the policy could place us in violation of North Dakota insurance laws;

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at 62 years of age or older or to any person who is disabled according to social security standards;

---

IL 02 34 09 08      © ISO Properties, Inc., 2007      Page 1 of 2    □

STEADFAST 008989

**(9)** A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to Covered Property or the occupancy thereof which substantially increases any hazard insured against; or

**(10)** Certain conditions exist, as stated in Paragraph **B.** of this endorsement.

We will mail written notice of cancellation to the first Named Insured, and agent, if any, at least:

**(a)** Five days before the effective date of cancellation for any condition stated in Paragraph **B.** of this endorsement;

**(b)** 10 days before the effective date of cancellation for nonpayment of premium; or

**(c)** 30 days before the effective date of cancellation for any reason stated in Paragraphs **2.b.(2)** through **(9)** above.

However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in Paragraphs **2.b.(1)** through **(9)** above.

If we cancel for a reason listed in Paragraphs **2.b.(1)** through **(9)** above, the notice of cancellation will state our reasons for cancellation.

**3.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**B.** We may also cancel the policy if one or more of the following conditions exist:

**1.** Buildings with at least 65% of the rental units in the building unoccupied.

**2.** Buildings that have been damaged by a covered cause of loss and the "insured" has stated or such time has elapsed as clearly indicates that the damage will not be repaired.

**3.** Buildings to which, following a fire, permanent repairs have not commenced within 60 days following satisfactory adjustment of loss.

**4.** Buildings that have been unoccupied 60 or more consecutive days, except buildings that have a seasonal occupancy, and buildings actually in the course of construction or repair and reconstruction which are properly secured against unauthorized entry.

**5.** Buildings that are in danger of collapse because of serious structural conditions or those buildings subject to extremely hazardous conditions not contemplated in filed rating plans such as those buildings that are in a state of disrepair as to be dilapidated.

**6.** Buildings on which, because of their physical condition, there is an outstanding order to vacate or an outstanding demolition order, or which have been declared unsafe in accordance with applicable law.

**7.** Buildings from which fixed and salvageable items have been or are being removed and the "insured" can give no reasonable explanation for the removal.

**8.** Buildings on which there is reasonable knowledge and belief that the property is endangered and is not reasonably protected from possible arson for the purpose of defrauding an insurer.

**9.** Buildings with any of the following conditions:

**a.** Failure to furnish heat, water, sewer service, or public lighting for 30 consecutive days or more.

**b.** Failure to correct conditions dangerous to life, health, or safety.

**c.** Failure to maintain the building in accordance with applicable law.

**d.** Failure to pay property taxes for more than one year.

**10.** Buildings that have characteristics of ownership condition, occupancy, or maintenance, which are violative of law or public policy.

**C.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail to the last known address of the first Named Insured shown in the Declarations, and agent, if any, a notice of intention not to renew at least:

**a.** 60 days prior to the expiration date of the policy, except as provided in Paragraph **b.**; or

**b.** 90 days prior to the expiration date of the policy when the policy provides professional liability coverage for legal and medical services.

The notice of nonrenewal will state our reason for nonrenewal.

**2.** We will mail our notice, by first-class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**3.** We need not mail or deliver this notice if you have:

**a.** Insured elsewhere;

**b.** Accepted replacement coverage; or

**c.** Requested or agreed to nonrenewal.

© ISO Properties, Inc., 2007

IL 02 34 09 08    □

STEADFAST 008990

IL 02 37 04 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DELAWARE CHANGES – TERMINATION PROVISIONS

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to the:

Farm Property – Farm Dwellings, Appurtenant Structures and Household Personal Property Coverage Form;
Commercial Property Coverage Part; and
Capital Assets Program (Output Policy) Coverage Part;

If the policy covers a building that contains no more than four dwelling units, one of which is the insured's principal place of residence, or covers the insured's household personal property in a residential building, the following applies:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation along with the reasons for cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 60 days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Discovery of willful or reckless acts or omissions on your part that increase any hazard insured against;

**(4)** The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

**(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

**(6)** A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the Delaware insurance laws; or

**(7)** Real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued.

STEADFAST 008991

**2.** The following Condition is added:

**Nonrenewal**

    **a.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 30 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

    **b.** Any notice of nonrenewal will include the reason(s) for nonrenewal and will be mailed or delivered to the first Named Insured at the last mailing address known to us.

    **c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** If Cancellation Changes **CP 02 99** is attached to the Commercial Property Coverage Part, Paragraph **E.2.** of that form is replaced by the following:

    **2.** Pay property taxes that are owing and have been outstanding for more than two years following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**B.** With respect to the:

Commercial General Liability Coverage Part;
Commercial Property – Legal Liability Coverage Form;
Commercial Property – Mortgageholders Errors And Omissions Coverage Form;
Employment-Related Practices Liability Coverage Form;
Farm Liability Coverage Form;
Liquor Liability Coverage Part;
Medical Professional Liability Coverage Part;
Pollution Liability Coverage Part; and
Products / Completed Operations Liability Coverage Part:

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **b.** 60, but not more than 120, days before the effective date of cancellation if we cancel for any other permissible reason.

**2.** The following Condition is added and supersedes any other condition to the contrary:

**Nonrenewal**

    **a.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60, but not more than 120, days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

    **b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

 © Insurance Services Office, Inc., 2011 IL 02 37 04 12

STEADFAST 008992

IL 02 62 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   **a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

   Our notice will state the effective date of cancellation, which will be the later of the following:

   **(1)** 10 days from the date of mailing or delivering our notice, or

   **(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

5. **Premium Refund**

   **a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

   **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

   **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   **d.** If the first Named Insured cancels, the refund may be less than pro rata.

   **e.** The cancellation will be effective even if we have not made or offered a refund.

© ISO Properties, Inc., 2007

STEADFAST 008993

**C.** The following is added to the **Cancellation** Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** below, we will mail or deliver notice at least:

**1.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**2.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**3.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

If the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary:

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium, whether payable to us or to our agent;

**b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

- 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

- 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

© ISO Properties, Inc., 2007 **IL 02 62 09 08** ☐

STEADFAST 008994

IL 02 77 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies unless Paragraph **B.** of this endorsement applies:

**2. Notice Of Cancellation**

**a. Cancellation Of Policies In Effect For Fewer Than 60 Days Which Are Not Renewals**

If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

**(1)** Cancellation for nonpayment of premium:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

**(2)** Cancellation for any other reason:

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

**b. Cancellation Of Renewal Policies And New Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation made by you or with your knowledge with the intent to deceive in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

**(3)** Activities or omissions by you which change or increase any hazard insured against;

**(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy, including an increase in exposure due to regulation, legislation, or court decision;

**(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

© Insurance Services Office, Inc., 2011

STEADFAST 008995

**(6)** The insured's violation or breach of any policy terms or conditions; or

**(7)** Any other reasons that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under Paragraph **A.2.b.** to the first Named Insured at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **A.2.b.(2)** through **(7)** above.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following, which applies with respect to premium payments due on new and renewal policies, including installment payments:

**2. Notice Of Cancellation**

**a.** If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **B.2.b.** and **B.2.c.**

**b.** We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**C.** With respect to the Coverage Parts and Policies to which this endorsement applies, except the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **C.5.a., C.5.b., C.5.c., C.5.d., C.5.e.** and **C.5.f.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund will not be less than 90% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **C.5.d.** or **C.5.e.** applies.

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** With respect to any cancellation of the Commercial Auto Coverage Part, we will send the return premium, if any, to the premium finance company if the premium was financed by such company.

**f.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**D.** With respect to the Equipment Breakdown Coverage Part, Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **D.5.a., D.5.b., D.5.c., D.5.d.** and **D.5.e.** The cancellation will be effective even if we have not made or offered a refund.

**a.** If we cancel, the refund will be pro rata.

**b.** If the first Named Insured cancels, the refund will not be less than 75% of the pro rata unearned premium, rounded to the next higher whole dollar. The refund will be returned within 30 days after the effective date of cancellation.

**c.** We will send the refund to the first Named Insured unless Paragraph **D.5.d.** applies.

© Insurance Services Office, Inc., 2011

**IL 02 77 03 12** ☐

STEADFAST 008996

**d.** If we cancel based on Paragraph **B.2.** of this endorsement, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **B.2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**e.** When return premium payment is sent to the premium finance company or the agent of the insured, we will provide notice to you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

**E.** The **Premiums** Common Policy Condition is replaced by the following:

**Premiums**

**1.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums.

**2.** We will pay return premiums, if any, to the first Named Insured, unless another person or entity is entitled to be the payee in accordance with Paragraph **C.** or **D.** of this endorsement.

**F.** Paragraph **f.** of the **Mortgageholders** Condition in the Commercial Property Coverage Part, Standard Property Policy and the Capital Assets Program (Output Policy) Coverage Part, and Paragraph **4.f.** of the **Mortgageholders** Condition in the Farm Coverage Part are replaced by the following:

If we cancel a policy that has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation, if we cancel for any other reason.

If we cancel a policy that has been in effect for 60 days or more, or is a renewal of a policy we issued, we will give written notice to the mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**G.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**2.** We need not mail or deliver this notice if:

**a.** We or another company within our insurance group have offered to issue a renewal policy; or

**b.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**3.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured, mortgageholder, pledgee or other known person shown in the policy to have an insurable interest in any loss, at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.** Such notice to the insured shall include the insured's loss run information for the period the policy has been in force within, but not to exceed, the last three years of coverage.

© Insurance Services Office, Inc., 2011

STEADFAST 008997



**THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

# FLORIDA - DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| **Please see form U-GU-630-C.** |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the insurer retention. The insurer retention equals 20% of the insurer's prior calendar year direct earned premium associated with lines of insurance subject to TRIA. TRIA is scheduled to expire on December 31, 2014.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31): (1) the Federal Government shall not make any payment for any portion of the amount of such losses that exceeds $100 billion; and (2) no insurer that has met its deductible under the program shall be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. If insured losses exceed $100 billion, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Definition of Act of Terrorism under TRIA**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of ISO Properties, Inc. with its permission

STEADFAST 008998



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| | | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

This endorsement applies to all Coverage Parts included in this policy.

**A.**    **Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA").  The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1.    to be an act of terrorism;

2.    to be a violent act or an act that is dangerous to human life, property or infrastructure;

3.    to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4.    to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B.**    **Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 008999

COMMERCIAL GENERAL LIABILITY
CG 01 02 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definitions of "auto" and "mobile equipment" in the **Definitions** section are replaced by the following:

1. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

2. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment, such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

 © Insurance Services Office, Inc., 2012

STEADFAST 009000



# Colorado Civil Union Act
# Policyholder Notice

On January 1, 2014, the Civil Union Act ("the Act") becomes effective.   Under the Act, two persons of the same sex may enter into a civil union.  A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Colorado to a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law.

The Act further provides that a party to a civil union shall be included in any definition or use of the term "dependent", "family", "heir", "immediate family", "next of kin", "spouse", and other terms that denote a familial or spousal relationship.

A marriage between persons of the same sex, a civil union, domestic partnerships or a substantially similar legal relationship, legally entered into in another jurisdiction, shall be legally recognized in Colorado as a civil union.

STEADFAST 009001

Endorsement #

# Fungi and Bacteria Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**Named Insured and Mailing Address:**
THE HOME DEPOT, INC.
2455 PACES FERRY RD
BUILDING C, SUITE 20
ATLANTA GA 30339-4024

**Producer:**
MARSH USA,INC.
3560 LENOX RD NE STE 2400
ALLIANCE CENTER TWO
ATLANTA GA 30326-4266

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal Injury And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A. "Bodily injury", "property damage", "personal injury " or "advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

   1. "Fungi" or "bacteria"; or

   2. Substance, vapor or gas produced by or arising out of any "fungi" or bacteria.

B. Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. For the purposes of this exclusion, the following definitions are added:

   1. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

   2. "Spores" means reproductive bodies produced by or arising out of "fungi".

   3. "Bacteria" means any type or form of bacteria and any materials or sunstances that are produced or released by bacteria.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

Signed by:_____          Date:
     Authorized Representative

STF-SC-113-A CW (04/04)
Page 1 of 1

STEADFAST 009002

**ZURICH**

# Advisory notice to policyholders regarding the
# U.S. Treasury Department's Office of Foreign Assets Control
# ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons." This list can be located on the United States Treasury's web site - http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on premiums and payments also apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 009003



## Notice to Indiana Policyholders
## Regarding Filing Complaints with the Department of Insurance

**Questions regarding your policy or coverage should be directed to:**

**Customer Inquiry Center
Zurich North America
1400 American Lane
Schaumburg, IL 60196
800-382-2150**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.
.

U-GU-102-C (09/09)
Page 1 of 1

STEADFAST 009004



# Important Notice to Arkansas Policyholders

Inquiries concerning your policy should be directed to your insurance agent, if one is involved, at the name, address and telephone number shown on the policy and/or in the material accompanying the policy. If you have additional questions, you may contact Zurich North America Commercial at the following address and telephone number:

Customer Inquiry Center
Zurich North America Commercial
1400 American Lane
Schaumburg, IL 60196
1-800-382-2150

If you require additional information you may contact the Arkansas Insurance Department at either the following address or phone number:

Arkansas Insurance Department
1200 West Third Street
Little Rock, Arkansas 72201-1904
Telephone: 501-371-2640 or 800-852-5494

STEADFAST 009005



# Important Notice to Florida Policyholders

In the event you need to contact someone about this policy, for any reason, please contact your agent. If you have additional questions, you may contact the Zurich U.S. office at the following address and telephone number:

Customer Inquiry Center
Zurich North America
1400 American Lane
Schaumburg, IL 60196
800-382-2150

If you have been unable to contact or obtain satisfaction from your agent or company, you may contact the Florida Office of Insurance Regulation at:

Office of Insurance Regulation
200 East Gaines Street
Tallahassee, Florida 32399
850-413-3140

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

STEADFAST 009006



# Florida Hurricane Catastrophe Fund (FHCF)
# Emergency Assessment - 2005 Hurricanes

The Florida legislature created the FHCF in order to provide capacity to the personal and commercial residential property insurance market. In accordance with Florida law, deficits of the FHCF are funded through emergency assessments on direct premiums for certain property and casualty lines of business in the state of Florida.

The current FHCF emergency assessment is for the purpose of financing the FHCF's shortfall from the 2005 hurricane season. In order to fund this deficit, policies effective on or after January 1, 2011 are subject to an emergency assessment of 1.30% of premium for the following lines of business:

Fire, Allied Lines, Multi-Peril Crop, Farmowners Multi-Peril, Homeowners Multi-Peril, Commercial Multi-Peril (liability and non-liability), Mortgage Guaranty, Ocean Marine, Inland Marine, Financial Guaranty, Earthquake, Other Liability, Products Liability, Private Passenger Auto No-Fault, Other Private Passenger Auto Liability, Commercial Auto No-Fault, Other Commercial Auto Liability, Private Passenger Auto Physical Damage, Commercial Auto Physical Damage, Aircraft, Fidelity, Surety, Burglary and Theft, Boiler and Machinery, Credit, Warranty, and Aggregate Write Ins for Other Lines of Insurance.

The FHCF emergency assessment applicable to this policy is not subject to premium taxes, fees, or commissions.

STEADFAST 009007



**Important Notice**
# Texas Safety Consultation Services

Zurich in North America has loss control services available at no additional charge.

If you would like additional information regarding these services, please contact us or visit our website.  If you would like to request services, please complete the information on this form and mail it to the address listed below.

Zurich Services Corporation
Risk Engineering
1400 American Lane
Schaumburg, Illinois 60196-1056
1-800-982-5964
http://www.zurichna.com/riskengineering

☐  I request additional safety and health services

Company name

Contact name

Address

City                                                   State                            Zip code

Telephone number                                       Policy number

STEADFAST 009008

## NOTICE TO POLICYHOLDER

### Asbestos Exclusion Endorsement

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE, NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGE YOU ARE PROVIDED.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE IMPLEMENTATION OF CHANGES TO YOUR POLICY.

THIS NOTICE PROVIDES INFORMATION CONCERNING YOUR INSURANCE COVERAGE WITH RESPECT TO CLAIMS ARISING OUT OF ASBESTOS ADDED TO YOUR POLICY BY SEPARATE ENDORSEMENT.

PLEASE READ THIS NOTICE CAREFULLY.

Your policy will include a change at renewal or at the next anniversary date as follows:

The following endorsement will be attached to your policy:

> **Asbestos Exclusion Endorsement**,  form U-GL-1178-A  (for use with Commercial General Liability Coverage Part)

> **Asbestos Exclusion Endorsement**,  form U-GL-1179-A  (for use with Products-Completed Operations Liability Coverage Part, Owners and  Contractors Protective Liability Coverage Part and Railroad Protective Liability Coverage Part)

The **Asbestos Exclusion Endorsements** - forms U-GL-1178-A and U-GL-1179-A exclude any injury or damage arising out of or related in any way to asbestos or because of the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos.  These endorsements also exclude any loss, costs or expenses, claims or suits relating to any demand, requirement, order, direction, determination or request that the named insured or any other entity pay sums or be required to test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos.

U-GL-1197-A CW (1/04)

STEADFAST 009009

## NOTICE TO POLICYHOLDER

### Fungi Or Bacteria Exclusion Endorsements

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE, NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGE YOU ARE PROVIDED.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL</u>.

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE IMPLEMENTATION OF CHANGES TO YOUR POLICY.

THIS NOTICE PROVIDES INFORMATION CONCERNING YOUR INSURANCE COVERAGE WITH RESPECT TO CLAIMS ARISING OUT OF FUNGI OR BACTERIA ADDED TO YOUR POLICY BY SEPARATE ENDORSEMENT.

PLEASE READ THIS NOTICE CAREFULLY.

Your policy will include a change at renewal or at the next anniversary date as follows:

One of the following endorsements will be attached to your policy:

**Fungi Or Bacteria Exclusion Endorsement**, form U-GL-1171-A

**Fungi Or Bacteria Exclusion Endorsement,** form U-GL-1181-A

The **Fungi or Bacteria Exclusion Endorsements** - forms U-GL-1171-A and U-GL-1181-A, are a complete exclusion of any injury or damage that may arise from exposure to fungi or bacteria, other than fungi or bacteria contained in edible goods or products intended for human or animal consumption. Further, these endorsements also exclude any loss, costs or expenses that may arise out of the cleaning up, abatement, remediating, testing for, monitoring, treating, detoxifying, removing, disposing or containing  of fungi or bacteria, or otherwise assessing the effects of or responding to fungi or bacteria.

U-GL-1191-A CW (11/03)

STEADFAST 009010

# COVERAGE CHANGE ENDORSEMENT



Endorsement #1 typed 4/25/2014 mjr

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 03/01/2014 | 03/01/2015 | 03/01/2014 | 18418-000 | $ | $ |

The Insured:           The Home Depot, Inc.

Mailing Address (including Zip Code)          2455 Paces Ferry Road
Atlanta, GA 30339-4024

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following form is being added to the policy as per attached:

<u>Form</u>
U-GL-1114-A CW (10/02)

<u>Description</u>
Miscellaneous Professional Liability Coverage

**Countersigned** _____
            Authorized          Representative

U-GL-1114-A CW (10-02)

STEADFAST 009011

# Amended Definitions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 03/01/2014 | 03/01/2015 | 03/01/2014 | 18418-000 | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A. Occurrence Definition Amendment**

The "occurrence" definition under the **Definitions** Section is replaced by the following:

"Occurrence" means:

**a.** an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** any actual or alleged act, error, or omission committed in the performance of, or failure to perform "Miscellaneous Professional Services"

**B. Section V – DEFINITIONS** is amended to include:

"Miscellaneous Professional Services" means advice, instructions, recommendations, suggestions or opinions provided by or on behalf of the insured, not for a fee (other than consideration paid by a customer for product), in connection with home improvement retailing.

All other terms and conditions of this policy remain unchanged.

U-GL-1114-A CW (10/02)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STEADFAST 009012

# COVERAGE CHANGE ENDORSEMENT


**ZURICH**

Endorsement #2 typed 5/16/2014

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 03/01/2014 | 03/01/2015 | 05/14/2014 | 18418-000 | $ | $ |

The Insured:          The Home Depot, Inc.

Mailing Address (including Zip Code)      2455 Paces Ferry Road
Atlanta, GA 30339-4024

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following form is being added to the policy as per attached:

| Form | Description |
|---|---|
| CG 20 26 (04/13) | Additional Insured – Designated Person Or Organization |

**Countersigned** _____
        Authorized       Representative

U-GL-1114-A CW (10-02)

STEADFAST 009013

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| **Charlotte County BBC, Charlotte County, a political subdivision of the State of Florida, it's elected officials, officers, employees, agents and representatives and volunteers.** |
| **18500 Murdock Circle** |
| **Port Charlotte, FL 33917** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 26 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

Wolters Kluwer Financial Services | Uniform Forms™

# COVERAGE CHANGE ENDORSEMENT



Endorsement #1 typed 6/12/14 mjr

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 03/01/2014 | 03/01/2015 | 03/01/2014 | 1814-000 | $ | $ |

The Insured:  The Home Depot, Inc.

Mailing Address (including Zip Code)  2455 Paces Ferry Road, NW
Atlanta, GA 30339-4024

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

1.  The following form is being amended as per attached:

Form | Description
U-GL-1326-B CW (10/07) | Deductible Endorsement

2.  The following form is being added to the policy:

Form | Description
U-GU-1000-A PR (06/09) | Amendatory Endorsement – Puerto Rico

**Countersigned** _____
Authorized  Representative

U-GL-1114-A CW (10-02)

STEADFAST 009015

# Deductible



| Policy No. | Eff. Date of Pol. | Eff. Date of End. |
|---|---|---|
| GLO-4887714-04 | 03/01/14 | 03/01/15 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Employee Benefits Liability Coverage Part**
**Liquor Liability Coverage Part**
**Stop Gap Employers Liability Coverage Part**

## DEDUCTIBLE SCHEDULE

| Coverage | | | Deductible Amount | Basis |
|---|---|---|---|---|
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability<br>All persons or organizations | 9,000,000 XS<br>$ 1,000,000 SIR | Each "Occurrence" |
| | | "Bodily Injury" Liability Only<br>All persons or organizations | $ | Each "Occurrence" |
| | | "Property Damage" Liability Only<br>All persons or organizations | $ | Each "Occurrence" |
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability | $ | Each Claim |
| | | "Bodily Injury" Liability Only | $ | Each Claim |
| | | "Property Damage" Liability Only | $ | Each Claim |
| Coverage | B. | "Personal and Advertising Injury" Liability<br>By offense – Any one person or organization | 9,000,000 XS<br>$ 1,000,000 SIR | Each Claim |
| Coverage | C. | Medical Payments | 9,000,000 XS<br>$ 1,000,000 SIR | Any One Person |
| Additional Coverage | | Employee Benefits Liability | 9,000,000 XS<br>$ 1,000,000 SIR | Each Act, Error or Omission |
| Additional Coverage | | Liquor Liability | $ | Each Common Cause |
| Additional Coverage | | Stop Gap Employers Liability<br>Stop Gap Employers Liability - disease | $<br>$ | Each Accident<br>Each "Employee" |
| Aggregate Deductible Amount | | | $<br><br>$ | ☐ Adjustable at a rate of _____ per_____ of _____.<br>☐ Flat |
| Initial Exposure | | | | _____ |
| Minimum Aggregate Deductible Amount | | | $ | |

STEADFAST 009016

**ALLOCATED LOSS ADJUSTMENT EXPENSE SELECTION SCHEDULE**

| Select One | | |
|---|---|---|
| Option 1    ☒ | | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will contribute toward your Deductible Amount and your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 2    ☐ | | As respects each Deductible Amount, you will reimburse us for "allocated loss adjustment expense" as follows: |
| | (a) | If the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "allocated loss adjustment expense", then you will reimburse us for all "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**; or |
| | (b) | If the total amount payable for other than "allocated loss adjustment expense" exceeds the Deductible Amount, you will reimburse us a pro-rata share of total "allocated loss adjustment expense" based on the ratio of the Deductible Amount divided by the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount. "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 3    ☐ | | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |

**If no option is selected, Option 3 will apply.**

**A. How the Deductible Amount Applies**

You will reimburse us for the Deductible Amount(s) shown in the **Deductible Schedule** and for "allocated loss adjustment expenses" incurred based on the **Allocated Loss Adjustment Expense Selection Schedule**. The Deductible Amount(s) applies as follows:

1. If an Each Occurrence Deductible is shown, the Deductible Amount applies to all sums payable because of any one "Occurrence", regardless of the number of persons or organizations who sustain damages because of that "Occurrence".

2. If an Each Claim Deductible is shown, the Deductible Amount applies to all sums payable for each claim, sustained by any one person or organization.

   a. For Other than Coverage B, to all sums payable for each claim, sustained by any one person or organization, and

   b. For Coverage B, to all damages sustained by any one person or organization as the result of an offense.

3. Medical Payments - If an Any One Person limit is shown, the Deductible Amount applies to all sums payable to any one person as a result of an accident sustained by that person.

STEADFAST 009017

4.  Employee Benefits Liability - If an Each Act, Error or Omission Deductible is shown, the Deductible Amount applies to all sums payable for all damages sustained by any one "Employee", including the "Employee's" dependents and beneficiaries, because of acts, errors or omissions committed in the administration of employee benefit programs.

5.  Liquor Liability - If a Common Cause Deductible is shown, the Deductible Amount applies to all sums payable for all injury sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

6.  Stop Gap Employers Liability - If an Each Accident Deductible is shown, the Deductible Amount applies to all sums payable as the result of an accident, regardless of the number of people who sustain damages because of that accident.

7.  Stop Gap Employers Liability - disease - If an Each Employee Deductible is shown, the Deductible Amount applies to all sums payable because of any one disease, and applies separately to each affected "Employee".

**B.  Deductible Provisions**

1.  If more than one Deductible Amount applies to sums payable arising from the same "incident" because more than one Coverage applies, you will be responsible for each and every applicable Deductible Amount.

2.  Deductible Amount(s) apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

3.  Your obligation to pay the Deductible Amount(s) shown on this policy is not fulfilled by:

    a.  The payment of a Deductible Amount under any other policy; or

    b.  Any payment made by us or another insurance company;

    even if 3.a. or 3.b. above applies to the same "incident" as the Deductible Amount due under this policy.

4.  If more than one policy issued by us applies to sums payable because of a single continuous "incident", the Deductible Amount(s) applies separately to each policy that we issue to which this endorsement or a similar Deductible Endorsement applies. Deductible Amounts also apply separately to each annual period and any remaining period of less than 12 months as described in **B.**2. above.

5.  If a Coverage Part or Additional Coverage of this policy specifically applies a separate deductible(s):

    a.  the separate additional deductible amount applies to any loss separately and before the Deductible Amount(s) shown on the Schedule of this endorsement; and

    b.  the Deductible Amount(s) shown on the Schedule of this endorsement applies only if the loss exceeds the separate additional deductible amount described in 5.a. above, subject to the other terms and conditions of this endorsement.

**C.  Aggregate Deductible Amount**

1.  The Aggregate Deductible Amount shown in the **Deductible Schedule** is the most you must reimburse us for the sum of:

    a.  all applicable Deductible Amount(s) as shown in the **Deductible Schedule**; and

    b.  all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule**, above.

STEADFAST 009018

This single Aggregate Deductible Amount applies to the entire policy period and to any remaining extension period.

2.  If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as adjustable, the final Aggregate Deductible Amount will be determined at the end of the policy period by an audit of your records, and will be based upon the Rate shown in the **Deductible Schedule** multiplied by the final audited Exposure. The amount shown in the **Deductible Schedule** as the Aggregate Deductible Amount is an estimated amount, and is based on an estimate of what the audit of your records will develop.

    In no event will the final audited Aggregate Deductible Amount be less than the Aggregate Deductible Amount shown in the **Deductible Schedule**, unless a Minimum Aggregate Deductible Amount is shown in the **Deductible Schedule**. If a Minimum Aggregate Deductible Amount is shown, the final audited Aggregate Deductible Amount will not be less than the Minimum Aggregate Deductible Amount.

3.  If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as Flat, the Aggregate Deductible Amount will not be adjusted. In no event will the Flat Aggregate Deductible Amount be less than or more than the Aggregate Deductible Amount shown in the **Deductible Schedule**.

4.  If no Aggregate Deductible Amount is stated in the **Deductible Schedule**, then your obligation to reimburse us for the sum of all applicable Deductible Amount(s) as shown in the **Deductible Schedule** and all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, is unlimited.

**D.  Allocated Loss Adjustment Expense Reimbursement**

In accordance with the **Allocated Loss Adjustment Expense Selection Schedule**:

1.  If Option 1 is selected, "allocated loss adjustment expense" reimbursements made by you contribute to your Deductible Amount and Aggregate Deductible Amount.

2.  If Option 2 or Option 3 is selected, then you will reimburse us for all or pro-rata "allocated loss adjustment expense", as may apply, in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, even if the Deductible Amount or the Aggregate Deductible Amount, if applicable, is exceeded.

**E.  Application of the Deductible Amount to Payable Amounts**

1.  You will reimburse us for "allocated loss adjustment expense" according to the option selected in the **Allocated Loss Adjustment Expense Selection Schedule**.

2.  Upon settlement or final adjudication of a claim, we will apply the Deductible Amount against payable amounts as follows:

    a.  Sums other than those attributable to "allocated loss adjustment expense"; then

    b.  "Allocated loss adjustment expense" already reimbursed by you; then

    c.  "Allocated loss adjustment expense" yet to be reimbursed by you, if applicable.

**F.  Effect of Deductible Amount on Limits of Insurance**

The applicable limits of insurance for the coverage part to which a Deductible Amount applies will be reduced only by that portion of the Deductible Amount that is not attributable to "allocated loss adjustment expenses".

**G.  Conditions**

**1.  Voluntary Payments**

STEADFAST 009019

If you voluntarily make any payment, assume any obligation or incur any expense, without our consent, then you do so at your own cost. Any such voluntary payment, assumed obligation or incurred expense does not contribute towards any applicable Deductible Amount(s) or Aggregate Deductible Amount under this policy.

**2. Application of Recovered Amounts**

We have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the Deductible Amount. The remainder of the recovery, if any, will then be applied to reduce the Deductible Amount reimbursed or reimbursable by you as respects that injury or damages.

**3. Payment of Amounts Owed Under This Endorsement**

a. We may pay any part or all of any Deductible Amount(s) or "allocated loss adjustment expense" to effect settlement of any claim and, upon notification of the action taken you will reimburse us for such part of any Deductible Amount(s) or "allocated loss adjustment expense" as shown on the billing from us. You must pay us for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.

b. If you fail to reimburse us for any amounts as required by this endorsement or policy, we may cancel this policy for nonpayment in accordance with the applicable law. Cancellation of this policy does not relieve you from any deductible obligations reimbursable by you.

c. The first Named Insured shown in the Declarations is authorized to and will reimburse us for all amounts paid by us on behalf of all "insureds".

d. Each Named Insured is jointly and severally liable for all reimbursements due to us under this endorsement, whether or not that Named Insured is involved in the claim, proceeding or "suit" causing any such amount to be due to us.

**H. Definitions**

1. "Allocated loss adjustment expense" is an expense directly allocable to a specific claim including but not limited to: all supplementary payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2. "Incident", for purposes of this endorsement only, means an "occurrence", offense, claim, accident, act, error or omission, common cause, disease or any other event, as defined or used in our policy, to which a Deductible Amount(s) applies.

**I. Other Terms**

1. The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to:

a. Our right and duty to investigate or defend the insured against any "suits" seeking those damages; and

U-GL-1326-B CW (10/2007)
Page 5 of 6

STEADFAST 009020

b.  Your duties in the event of a claim or circumstances likely to result in a claim.

2.  You understand that your duties under this endorsement may continue after this policy expires or is cancelled.

STEADFAST 009021

# Amendatory Endorsement - Puerto Rico



**ZURICH**®

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| The Home Depot, Inc. | GLO 4887714-04 | 03/01/2014 | |

| | NO CHANGE IN PREMIUM | ADDITIONAL PREMIUM | RETURN PREMIUM | |
|---|---|---|---|---|
| ☐ | | $ | $ | |
| ☐ | TO ADJUST PREMIUM AT AUDIT | | | |

### THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

The modification(s) may result in a change in the premium as indicated above.

For all coverages under this policy that apply in Puerto Rico:

The Producer on the declarations page is amended to include:

Broker: MARSH USA, INC.

The Agent for Puerto Rico is:

Eastern America Insurance

San Juan Puerto Rico 00919-3900 Street #1-Lot 10

Authorize Representative: Jose Robles Ortiz

**All other terms, conditions and limitations of this Policy remain unchanged.**

Signature of Authorized Representative

Eastern America Insurance Agency, Inc.

UGU 1000-A (PR) 6/09

STEADFAST 009022

# COVERAGE CHANGE ENDORSEMENT



Endorsement #4 typed 11/5/2014 mjr

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 3/1/2014 | 3/1/2015 | 3/1/2014 | 18418-000 | $ | $ |

The Insured:          The Home Depot, Inc.

Mailing Address (including Zip Code)          2455 Paces Ferry Road NW
Atlanta, GA 30339-4024

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following endorsement is being added to the policy as per attached:

Form                        Description
CG 20 10 (04/13)          Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization

**Countersigned** _____
          Authorized          Representative

U-GL-1114-A CW (10-02)

STEADFAST 009023

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| City of Oxnard | 1833 Portola Road<br>Suite H<br>Ventura, CA 93001 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 04 13**

© Insurance Services Office, Inc., 2012

**Page 1 of 2**

Wolters Kluwer Financial Services | Uniform Forms™
STEADFAST 000024

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**CG 20 10 04 13**

STEADFAST 009025

# COVERAGE CHANGE ENDORSEMENT



ZURICH

Endorsement #5 typed 11/18/14 mjr

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 3/1/2014 | 3/1/2015 | 11/14/2014 | 18418-000 | $ | $ |

The Insured:        The Home Depot, Inc.

Mailing Address (including Zip Code)        2455 Paces Ferry Road NW
Atlanta, GA 30339-4024

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following form is being added to the policy as per attached:

CG 20 15 (04/13)        Additional Insured - Vendor

**Countersigned** _____
Authorized        Representative

U-GL-1114-A CW (10-02)

STEADFAST 009026

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| **Southern California Edison Company**<br>**2244 Walnut Grove Avenue**<br>**P.O. Box 800**<br>**Rosemead, California 91770** | **All** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

© Insurance Services Office, Inc., 2012

Wolters Kluwer Financial Services | Uniform Forms™

STEADFAST 000027

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

  **(1)** The exceptions contained in Sub-paragraphs **d.** or **f.;** or

  **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these vendors, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012
**CG 20 15 04 13**

STEADFAST 009028

# COVERAGE CHANGE ENDORSEMENT



Endorsement #6 typed 11/21/14 mjr

| Policy  No. | Eff.  Date  of  Pol. | Exp.  Date  of  Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| GLO 4887714-04 | 3/1/2014 | 3/1/2015 | 11/20/2014 | 18418-000 | $ | $ |

The Insured:                    The Home Depot, Inc.

Mailing Address (including Zip Code)          2455 Paces Ferry Road NW
                                              Atlanta, GA 30339-4024

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following form is being added to the policy as per attached:

      CG 20 10 (4/13)          Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization

**Countersigned** _____
          Authorized          Representative

U-GL-1114-A CW (10-02)

STEADFAST 009029

POLICY NUMBER: GLO 4887714-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| CBRE\|FAMECO and SCI ITC South Fund, LLC | 625 W. Ridge Pike Building A, Suite 100 Conshohocken, PA 19428 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© Insurance Services Office, Inc., 2012

Wolters Kluwer Financial Services | Uniform Forms™

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

   **1.** Required by the contract or agreement; or

   **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**CG 20 10 04 13**

STEADFAST 009031