# EXHIBIT G

# SETTLEMENT AGREEMENT

Dated 11/30/15

by and among

MASTERCARD INTERNATIONAL INCORPORATED

and

HOME DEPOT U.S.A., INC.

and

THE BANCORP BANK

# SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT dated as of Nov 30, 2015 (together with the attached Exhibit A the "Settlement Agreement"), by and among MASTERCARD INTERNATIONAL INCORPORATED, a Delaware corporation, on behalf of itself and its Affiliates (collectively "MasterCard"), and HOME DEPOT U.S.A., INC., a Delaware corporation, on behalf of itself and its Affiliates (collectively "Home Depot"), and THE BANCORP BANK, a Delaware corporation, on behalf of itself and its Affiliates (collectively "Issuer"). MasterCard, Home Depot and Issuer are each referred to herein as a "Party" and collectively as the "Parties."

In consideration of the representations, warranties and covenants set forth in this Settlement Agreement, and subject to all the terms and conditions set forth in this Settlement Agreement, MasterCard, Home Depot, and the Issuer agree as follows:

1. DEFINITIONS. For purposes of this Settlement Agreement only, the following capitalized terms and non-capitalized words and phrases have the meanings respectively assigned to them below, which meanings are applicable equally to the singular and plural forms of the terms so defined. All other capitalized terms have the meanings respectively assigned to them herein, including in the form of release attached as Exhibit A ("Issuer Release").

1.1. The term "Alerted-On Account" means any MasterCard account with respect to which MasterCard or any of its Affiliated Persons issued an alert in connection with the Home Depot Intrusion.

1.2. The term "Affiliate Customer" has the meaning set forth in the Definitions Section of the *MasterCard Rules*.

1.3. The term "Affiliate Issuer" means any MasterCard Issuer that controls, is controlled by, or is under common control with, another MasterCard Issuer.

1.4. The term "Affiliated Persons" as applied to an entity includes the entity's past, present, and future representatives, administrators, agents, attorneys, accountants, directors, officers, employees, insurers, Affiliates, and trustees, all in their capacities as such, related to the Home Depot Intrusion.

1.5. The term "Affiliates" as applied to an entity includes all other entities that either control, are controlled by, or are under common control with, such entity, including parents of such entity and each of their predecessors, successors, and assigns.

1.6. The term "Covered Issuer" means each MasterCard Issuer that was the issuer of one or more Qualified Accounts.

1.7. The term "Covered Sponsored Issuer" means (A) in general, a Covered Issuer that is a Sponsored Issuer of a MasterCard issuer; and (B) with respect to Issuer, any Covered Issuer that is a Sponsored Issuer of Issuer.

Corrected on 12-11-2015
The Bancorp Bank

1.8. The term "Eligible Issuer" means a Covered Issuer that is not an Affiliate Customer; provided, however, that in the event two or more Covered Issuers that are Affiliate Issuers of one another would be Eligible Issuers under the foregoing definition, then one and only one of such Covered Issuers (to be designated by MasterCard) shall be an Eligible Issuer.

1.9. The term "Home Depot Acquirers" means Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd and Wells Fargo Financial Corporation Canada in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network.

1.10. The term "Qualified Accounts" means the accounts that MasterCard has determined to be eligible for issuer fraud recovery and/or issuer operating expense recovery under MasterCard's Account Data Compromise ("ADC") program relative to the Home Depot computer system intrusion(s) referenced in MasterCard alerts issued under case ~~number ADC3848~~, including all of their subparts (the "Home Depot Intrusion").
numbers ADC 3868, 3869, 3870, 3871, and 3872,

1.11. The term "Sponsored Issuer" means (A) in general, any MasterCard issuer that is (i) an Affiliate Issuer of an Eligible Issuer or (ii) an Affiliate Customer of an Eligible Issuer or one of its Affiliate Issuers; and (B) with respect to Issuer, any MasterCard issuer that is (i) an Affiliate Issuer of Issuer or (ii) an Affiliate Customer of Issuer or one of its Affiliate Issuers.

2. RELEASES; COVENANT NOT TO SUE.

2.1. Contemporaneously with the execution of this Agreement, the Issuer shall duly execute, and deliver to Home Depot and MasterCard the Issuer Release attached hereto as Exhibit A. The Issuer Release shall take effect on the Consummation Date. Upon the Consummation Date, Home Depot, MasterCard and their Affiliates (the "Home Depot and MasterCard Releasing Entities") hereby fully and finally release Issuer and each and every one of Issuer's Affiliated Persons from any claim or right the Home Depot and MasterCard Releasing Entities might be entitled to assert and any monetary recovery or other relief that Home Depot or MasterCard (or their Affiliated Persons) might be entitled to seek or receive from Issuer or any of its Affiliated Persons, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, MDL No. 14-2583-TWT pending in the United States District Court for the Northern District of Georgia, (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm Home Depot or MasterCard (or their Affiliated Persons) may have incurred or may in the future incur with respect to MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to Home Depot or MasterCard (or their Affiliated Persons) as of this date) (the "Released Claims"). Notwithstanding anything to the contrary in the preceding sentence, the Released Claims shall not include (i) any claim or right any of the Home Depot and MasterCard Releasing Entities might be entitled to assert against, or any monetary recovery or other relief that any of the Home Depot and MasterCard Releasing Entities might be entitled to seek or receive

from, Issuer and its Affiliated Persons in their capacities as an issuer of payment cards other than MasterCard-branded payment cards; or (ii) any claim or right relating to or arising under this Settlement Agreement or the accompanying Issuer Release.

2.2. Upon the Consummation Date, Home Depot and its past, present and future representatives, attorneys, associates, parents, subsidiaries, affiliates, agents, assigns, insurers, administrators, trustees, officers, directors, employees, retained contractors, predecessors, successors, and any other person or entity claiming on behalf of any of them (the "Home Depot Releasors"), shall release MasterCard, its Affiliates, and its and their past, present, and future representatives, attorneys, agents, accountants, assigns, insurers, administrators, officers, directors, trustees, employees, retained contractors, parents, affiliates, subsidiaries, predecessors, successors, and any other person or entity acting on behalf of any of them (the "Released MasterCard Parties") from any and all claims, causes of action, suits at law or in equity, assertions of wrongdoing or fault, liabilities, awards, judgments, demands, debts, defenses, losses and expenses, damages, obligations, attorney fees, costs and/or sanctions, of whatever kind or nature, whether now known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured (collectively, "Claims"), by reason of any act, omission or occurrence before the date hereof on the part of MasterCard relating to any (i) claim or right of recovery MasterCard might otherwise have had in respect of any of the Issuer's Alerted-On Accounts under the MasterCard Operating Regulations and/or MasterCard Security Rules by reason of any matter, occurrence, or event pertaining to the Home Depot Intrusion or (ii) dispute or objection Home Depot might otherwise be entitled to raise or make with respect to the amount or the calculation of the Issuer's Maximum Aggregate ADC Liability Amount (the "Released Home Depot Claims"). Notwithstanding anything to the contrary in the foregoing, the Released Home Depot Claims do not include (i) any objection, dispute, or Claim that Home Depot or the Home Depot Releasors might otherwise be entitled to assert with respect to non-compliance assessments or case management fees based upon or in connection with the Home Depot Intrusion; (ii) any ADC Fraud Recovery and/or ADC Operational Reimbursement with respect to the Home Depot Intrusion relating to any other MasterCard Issuer other than the Issuer; (iii) any right Home Depot or the Home Depot Acquirers otherwise would have to assert or seek to establish, as a defense to any claim asserted against it by a MasterCard Issuer in litigation or otherwise, the facts or results of any actions or inactions involving MasterCard; (iv) any objection, dispute, or Claim that Home Depot or the Home Depot Releasors might otherwise be entitled to assert with respect to ADC Fraud Recovery and/or ADC Operational Reimbursement with respect to the Home Depot Intrusion for the Issuer where the ADC Fraud Recovery or ADC Operational Reimbursement was assessed *after the date of the Settlement Agreement*; or (v) any of the rights and obligations created by or under the Settlement Agreement or any Claim arising under or based upon any such rights and obligations.

2.3. Upon the Consummation Date, the Home Depot covenants and agrees that neither it nor any of the Home Depot Releasors will assert against the Released MasterCard Parties any of the Released Home Depot Claims, whether upon a theory of equitable subrogation or any other legal theory.

2.4. Upon the Consummation Date, Home Depot agrees to indemnify MasterCard against and shall hold MasterCard harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable attorneys' fees and expenses) incurred or

suffered by MasterCard arising from a Claim related to the Home Depot Intrusion that may be asserted by or on behalf of one or more of the Home Depot Acquirers against MasterCard (an "Acquirer Claim") only to the extent the Acquirer Claim in question arises out a Claim, regardless of whether actual or threatened, related to the Home Depot Intrusion by Home Depot against the Home Depot Acquirer(s) in question involving the Issuer's Qualified Accounts.

2.5. Upon the Consummation Date, MasterCard and its past, present and future representatives, attorneys, associates, parents, subsidiaries, affiliates, agents, assigns, insurers, administrators, trustees, officers, directors, employees, retained contractors, predecessors, successors, and any other person or entity claiming on behalf of any of them (the "MasterCard Releasors"), shall release and agree that neither it nor any of the MasterCard Releasors shall assert against Home Depot, its Affiliates, and its and their past, present, and future representatives, attorneys, agents, accountants, assigns, insurers, administrators, officers, directors, trustees, employees, retained contractors, parents, affiliates, subsidiaries, predecessors, successors, and any other person or entity acting on behalf of any of them (the "Released Home Depot Parties") any claim, demand, cause of action, amount, or assessment seeking to recover any amount that MasterCard or any of its Affiliated Persons may award or allow on, or otherwise asserting any rights or obligations or demanding any payment in connection with or by reason of, any claim heretofore or hereafter asserted under the MasterCard Operating Regulations by or on behalf of the Issuer with respect to the Home Depot Intrusion. This release shall not be interpreted to extend to any claim or assessment for any alleged non-compliance by Home Depot or the Home Depot Acquirers or any of its or their Affiliated Persons with any of the data security requirements of the MasterCard Operating Regulations.

3. DELIVERY OF PRE-ACCEPTED ISSUERS REPORT BY MASTERCARD. The "Pre-Accepted Issuers Event Condition" shall be deemed to have been satisfied when Eligible Issuers that, together with their Covered Sponsored Issuers, issued an aggregate number of [redacted] Qualified Accounts in total shall have executed settlement agreements and releases substantially equivalent to this Settlement Agreement and the Issuer Release, except that the methodology for calculating the Settlement Amount will be identical. Not later than 5:00 p.m., Eastern time, two (2) business days after December 10, 2015 (the "Acceptance Deadline"), MasterCard shall deliver to the Issuer and Home Depot a report certifying whether or not the Pre-Accepted Issuers Event Condition has been satisfied (the "Pre-Accepted Issuers Report").

4. PAYMENT BY THE HOME DEPOT.

4.1. Subject to all the conditions of consummation set forth in Section 5, on the Consummation Date, Home Depot shall pay to the Issuer in same day funds (by federal wire transfer to Issuer's account identified below) an amount equal to the Maximum Settlement Amount set forth in Section 7.1 (the "Settlement Amount").

4.2. Issuer's routing number and account number for wire transfer are: [ISSUER TO INSERT WIRE INSTRUCTIONS] RTN 031101169 Act# Acct #
Bank name: The Bancorp Bank, Account Name: "Other Misc Income"

5. CONDITIONS TO CONSUMMATION. It is a condition to the consummation of this Settlement Agreement (a) that this Settlement Agreement has not been terminated pursuant to Section 6, and (b) that the Pre-Accepted Issuers Event Condition shall have been met or waived in

writing by Home Depot delivered to MasterCard and Issuer. Provided that this Settlement Agreement has not earlier been terminated pursuant to Section 6, the "Consummation Date" shall be the date that is five (5) business days from the date on which MasterCard delivers the Pre-Accepted Issuers Report to Home Depot and the Issuer.

6. TERMINATION. In the event that the Pre-Accepted Issuers Report is not delivered to Home Depot and the Issuer by December 3, 2015, Home Depot may terminate this Settlement Agreement by providing written notice of such termination to MasterCard and the Issuer. In the event the Pre-Accepting Issuers Event Condition has not been satisfied or waived in writing by Home Depot on or before December 18, 2015, this Settlement Agreement, including any Issuer Release, shall immediately terminate and be void and shall be of no further force or effect, except as provided in this Section 6. If this Settlement Agreement is terminated as provided by or pursuant to the provisions of this Section 6, such termination shall be effective as against all Parties to this Settlement Agreement and shall be without liability of any Party to any other Party to this Settlement Agreement, except for liabilities arising in respect of breaches of representations and warranties and covenants under this Settlement Agreement by any party on or prior to the date of termination. In the event of such termination, it is agreed by the Parties that neither the obligation of Home Depot to pay to the Issuer the Settlement Amount nor any other provision of this Settlement Agreement shall be cited in any way by MasterCard, Home Depot, or the Issuer, or be deemed evidence of an admission on the part of any of the Parties, in any subsequent dispute other than a dispute relative to the enforcement of this Settlement Agreement.

7. REPRESENTATIONS, WARRANTIES, AND INDEMNITIES.

7.1. Representations and Warranties of MasterCard. MasterCard hereby represents and warrants that (a) [redacted] of the Alerted-On Accounts were issued by Issuer and its Sponsored Issuers (collectively, "Issuer's Alerted-On Accounts"), (b) [redacted] of the Qualified Accounts were issued by Issuer and its Sponsored Issuers (collectively, "Issuer's Qualified Accounts"), (c) MasterCard has accurately determined in accordance with MasterCard's customary practices and procedures that the maximum aggregate recovery that MasterCard could award the Issuer under MasterCard's Account Data Compromise ("ADC") program as applied to the Home Depot Intrusion is [redacted] (the Issuer's "Maximum Aggregate ADC Liability Amount"), and (d) based on the foregoing, the Issuer's "Maximum Settlement Amount" for the Issuer is [redacted] which is an amount equal to 110% of the Maximum Aggregate ADC Liability Amount.

7.2. MasterCard Indemnification. MasterCard agrees to indemnify Issuer against and shall hold it harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between or among the Parties) incurred or suffered by Issuer arising out of any misrepresentation or breach of warranty or breach of covenant or agreement made or to be performed by MasterCard pursuant to this Settlement Agreement.

7.3. Home Depot Indemnification. Home Depot agrees to indemnify Issuer against and shall hold it harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and

expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between or among the Parties) incurred or suffered by Issuer arising out of any misrepresentation or breach of warranty or breach of covenant or agreement made or to be performed by Home Depot pursuant to this Settlement Agreement.

7.4. Authority. The execution, delivery and performance of this Settlement Agreement are within its corporate powers and have been duly authorized by all necessary corporate action, including that Home Depot has authority to enter into the release set forth in Section 2.2 hereof on behalf of the Home Depot Acquirers.

8. CONFIDENTIALITY. The Parties agree the terms and conditions of this Settlement Agreement and the Issuer Release are confidential and that the Parties shall not disclose such terms to any person, except as provided in this section. Each Party may disclose the terms to its regulators, accountants, insurers, attorneys, persons for whom such information is necessary to effectuate the provisions of this Settlement Agreement or the Issuer Release (and who shall be advised of the confidentiality restriction and agree to be bound thereby). Further, disclosure is permitted to the extent such disclosure is required for enforcement of this Settlement Agreement or the Issuer Release, or as otherwise required by federal, state, or foreign law, or any applicable regulations, including pursuant to any discovery procedures authorized by such laws or regulations, or as may be determined by Issuer, in its reasonable discretion, to be required with respect to its public filings with the Securities and Exchange Commission, or required by law or any listing agreement with a national securities exchange. Except where disclosure is pursuant to regulatory requirements, (a) any such disclosure shall be pursuant to an order protecting this Settlement Agreement's and the Issuer Release's confidentiality, (b) it shall be the disclosing Party's obligation to obtain such a confidentiality order, (c) such disclosure shall be only to the persons and/or agencies authorized to receive such information, and (d) the disclosing Party shall provide notice to any other Party at least ten (10) days in advance of any such disclosure. Nothing in this section shall preclude any Party from disclosing that it has entered into a settlement agreement with the other Parties on the terms set forth herein as long as such disclosure does not include the Settlement Amount or any of the numerical information used to derive the Settlement Amount.

IN WITNESS WHEREOF, each of the undersigned has executed this Settlement Agreement as an agreement under seal as of the date first above written.

MASTERCARD INTERNATIONAL INCORPORATED

By: Eileen Simon
Name: Eileen Simon
Title: Chief Franchise Integrity Officer

HOME DEPOT U.S.A., INC.

By:
Name: Dwaine Kimmet
Title: SVP Payments + Treasurer

THE BANCORP BANK

By:
Name: Paul Landry
Title: SVP Payment Solutions Group

EXHIBIT A

Issuer Release

The Bancorp Bank (the "Issuer"), on its own behalf, on behalf of each of the Covered Sponsored Issuers listed on Schedule I attached to this Issuer Release, and on behalf of its and their Affiliates (collectively with Issuer and its Covered Sponsored Issuers, the "Issuer Releasing Entities") irrevocably waives any right of any of the Issuer Releasing Entities to assert against Home Depot; Bank of America N.A., Banc of America Merchant Services LLC, First Data Canada Ltd. and Wells Fargo Financial Corporation Canada in their capacities as acquiring banks or providers of transaction processing services for Home Depot in the MasterCard payment card network (the "Home Depot Acquirers"); MasterCard; and the Affiliated Persons of each of them (each, a "Releasee"), and fully and finally releases each and every Releasee from, any claim or right any of the Issuer Releasing Entities might be entitled to assert and any monetary recovery or other relief that any of the Issuer Releasing Entities might be entitled to seek or receive, by reason of the Home Depot Intrusion: (i) in any litigation or other proceeding, whether currently pending, hereafter commenced, or hereafter amended (including without limitation the pending putative class action proceedings consolidated under the caption entitled *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, MDL No. 14-2583-TWT pending in the United States District Court for the Northern District of Georgia), (ii) under any applicable laws, rules or regulations, or (iii) pursuant to any other contractual or legal theory, in connection with any injury or harm the Issuer Releasing Entities may have incurred or may in the future incur in its capacity as an issuer of MasterCard-branded payment cards (whether or not the matter, occurrence, or event that forms the basis for such claim or right is known to the Issuer Releasing Entity in question as of this date) (collectively, the "Released Issuer Claims").

Notwithstanding anything to the contrary in the preceding paragraph, the Released Issuer Claims shall not include (i) any claim or right any of the Issuer Releasing Entities might be entitled to assert, or any monetary recovery or other relief that any of the Issuer Releasing Entities might be entitled to seek or receive, in its capacity as an issuer of payment cards other than MasterCard-branded payment cards; (ii) any claim or right relating to or arising under this Release or the accompanying Settlement Agreement; or (iii) any claim or right of recovery that any Accepting Sponsored Issuer of the Issuer may have with respect to Qualified Accounts, if any, that the Accepting Sponsored Issuer in question issued under the MasterCard ICA of an Eligible Issuer other than the Issuer.

The Issuer represents and warrants that (i) this Release has been duly authorized, executed and delivered by the Issuer; (ii) no assignment to another person or entity has been made of, and no other person or entity has become subrogated to or otherwise acquired any interest in any right or claim that is, was, or otherwise would be a Released Issuer Claim; (iii) Schedule I hereto contains a complete and accurate list of the Issuer's Sponsored Issuers, and the Issuer has accurately identified on Schedule I hereto which of its Sponsored Issuers are Covered Sponsored Issuers; (iv) the Issuer is authorized to execute and deliver this acceptance on behalf of its Covered Sponsored Issuers; (v) none of Issuer's Qualified Accounts were issued by any of the Issuer's Sponsored Issuers other than the Issuer's Covered Sponsored Issuers; and (vi) the Issuer has received and reviewed the information attached hereto as Schedule II.

The Issuer agrees to indemnify each Releasee against and shall hold each of them harmless from any and all damage, loss, liability, fines, penalties and expense (including reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding whether involving a third-party claim or a claim solely between or among the Parties hereto) incurred or suffered by such Releasee arising out of any misrepresentation or breach of warranty made by the Issuer in this Issuer Release or any breach of any covenant or agreement made or to be performed by the Issuer Releasing Entities pursuant to this Issuer Release.

This Issuer Release, the rights of any person or entity hereunder, and any action arising hereunder, will be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to any choice or conflict of law provision that would cause the application of the laws of any other jurisdiction.

Dated: 11/30/, 2015

THE BANCORP BANK,

By: [signature]

Paul Landry
SVP Payment Solutions Group

Schedule I

| | |
|---|---|
| [redacted] | |
| The Bancorp Bank | |
| [redacted] | [redacted] |
| | Keesler Federal Credit Union |
| | Geo. D. Warthen Bank, The |

Schedule II

Information Regarding Putative Class Action Proceeding

On December 11, 2014, the United States Judicial Panel on Multidistrict Litigation entered an Order in MDL No. 14-2583, *In re: The Home Depot, Inc. Customer Data Security Breach Litigation*, to transfer all actions related to the Home Depot Intrusion, pending in various different federal district courts, to the United States District Court for the Northern District of Georgia for coordinated or consolidated pretrial proceedings. On January 16, 2015, the transferee District Court in the Northern District of Georgia (the "Court") entered a case management order separating the cases into two groups: the consumer cases and the financial institution cases (the "Financial Institution Track"). The Financial Institution Track includes all those cases brought by banks, credit unions, and other financial institutions seeking to recover damages allegedly caused by the Home Depot Intrusion. The Court appointed Kenneth S. Canfield of Doffermyre Shields Canfield & Knowles, LLC, Joseph P. Guglielmo of Scott + Scott, Attorneys at Law LLP, and Gary Lynch of Carlson Lynch Sweet and Kilpela, LLP, as Co-Lead Counsel for the Financial Institution Track.

The Consolidated Class Action Complaint for the Financial Institution Track, which incorporated claims from various of the transferred cases, was filed on May 27, 2015 ("FI Complaint"). The named plaintiffs in the FI Complaint purport to represent a nationwide class of "[a]ll banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued payment cards (including debit or credit cards) used by customers to make purchases from Home Depot during the period from April 1, 2014 to the present."

The FI Complaint asserts counts for negligence, negligence per se, and violations of the Alaska Unfair Trade Practices and Consumer Protection Act, California Unfair Competition Law and Customer Records Act, Connecticut Unfair Trade Practices Act, Florida Deceptive and Unfair Trade Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Massachusetts Consumer Protection Act, Minnesota Plastic Card Security Act, and various Washington state statutes governing breaches of security that compromise personal information. The FI Complaint seeks to obtain 1) a money judgment in favor of the members of the class to compensate them for injuries they have suffered together with pre-judgment and post-judgment interest, including treble damages and penalties where appropriate; 2) declaratory judgment that Home Depot owes a legal duty to secure its customers' personal and financial information and to notify financial institutions of a data breach, that Home Depot breached this legal duty by failing to employ reasonable measures to secure its customers' personal and financial information, that this breach of its legal duty proximately caused the data breach, and that class members that reissued payment cards and were forced to pay for fraudulent transactions as a result of the Home Depot data breach are legally entitled to recover the costs they incurred from Home Depot; 3) an injunction requiring Home Depot to employ security protocols consistent with industry standards to protect its customers' personal and financial information; 4) an award of reasonable attorneys' fees and costs of suit, including fees and expenses on the ground that Home Depot has acted in bad faith, has been stubbornly litigious, and caused unnecessary trouble and expense; and 5) an award of any further relief that the court deems just and proper.

On July 1, 2015, after the FI Complaint was filed, Home Depot filed a motion to dismiss the FI Complaint in its entirety with prejudice. Briefing on the motion to dismiss was complete on September 25, 2015, and a motions hearing was held on October 22, 2015, after which the Court took the motion to dismiss under advisement. Discovery in the case will not commence until the Court rules on Home Depot's motion. Home Depot has stated that it intends to defend the action vigorously.

This document contains an Alternative Recovery Offer that allows issuers to recover certain of the losses that they may have incurred as a result of the Home Depot Intrusion. Any issuer that accepts the optional Alternative Recovery Offer will sign and release any rights such issuer would otherwise have had to obtain any recovery from Home Depot (as well as the Home Depot Acquirers and MasterCard) by reason of the Home Depot Intrusion from or in either the putative Financial Institution Track class action litigation described above or any other litigation or other proceeding, with respect to the Released Issuer Claims as expressly defined and limited in the Issuer Release. However, issuers will preserve all claims other than Released Issuer Claims. Issuers are not required to accept this offer and may continue to remain a part of the class pursuing the case against Home Depot in federal court. In determining whether to accept this offer, note that the offer represents a lesser recovery than an issuer may potentially recover if it remains a party to the class action and are successful in that litigation.

As provided for in the Issuer Release, any issuer that executed this Settlement Agreement and Issuer Release will waive and release any right such issuer would otherwise have had to obtain any recovery from Home Depot (as well as the Home Depot Acquirers and MasterCard) by reason of the Home Depot Intrusion from or in either the putative

Financial Institution Track class action litigation described above or any other litigation or other proceeding, with respect to the Released Issuer Claims as expressly defined and limited in the Issuer Release. However, issuers will preserve all claims other than Released Issuer Claims.